**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

COLT & JOE TRUCKING LLC,

    *Plaintiff,*

    v.

U.S. DEPARTMENT OF LABOR, et al.,

    *Defendants.*

No. 1:24-cv-391-KWR-GBW

Judge Kea W. Riggs

Chief Magistrate Judge Gregory B. Wormuth

**DEFENDANTS' ANSWERING BRIEF IN SUPPORT OF CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

JOHN T. LEWIS (D.C. Bar No. 1033826)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Background............................................................................................................. 3

I.      The Fair Labor Standards Act ..................................................................... 3

II.     The Department's Prior Guidance................................................................ 5

III.    The 2024 Rule ............................................................................................ 6

IV.    This Lawsuit................................................................................................ 7

Legal Standard ...................................................................................................... 7

Argument .............................................................................................................. 8

I.      The Court should dismiss this case for lack of subject-matter jurisdiction. ..................... 8

II.     In the alternative, the Court should enter judgment for the Department. ......................... 11

        A.     Plaintiff has failed to show that the 2024 Rule is arbitrary, capricious, contrary to law, or in excess of the Department's authority under the FLSA. ...................... 12

               1.    The 2024 Rule's multifactor test is consistent with the text of the FLSA as it has been interpreted by federal courts for decades. .............................. 13

               2.    The 2024 Rule's explanation of the individual factors is consistent with the FLSA and relevant precedent. ........................................................... 18

               3.    The Department reasonably concluded that the 2024 Rule would, by implementing a multifactor test drawn directly from precedent, ameliorate regulatory confusion............................................................................. 22

               4.    The Department reasonably concluded that the 2024 Rule would not result in substantial costs................................................................................. 25

        B.     Plaintiff has failed to show that the 2024 Rule is unconstitutionally vague. ........ 29

        C.     Plaintiff has failed to show that any purported defect in Acting Secretary Su's appointment affected the 2024 Rule. ................................................... 30

               1.    The 2024 Rule was lawfully promulgated under Administrator Looman's authority. ................................................................................................. 31

               2.    Acting Secretary Su's appointment is lawful............................................ 32

III.    To the extent Plaintiff is entitled to any relief, the Court should either remand the matter to the Department without vacatur or enter a limited injunction. .................... 34

Conclusion ............................................................................................................ 35

## TABLE OF AUTHORITIES

**Cases**

*Alenco Commc'ns, Inc. v. FCC,*
 201 F.3d 608 (5th Cir. 2000) ................................................................... 25, 26, 28

*Am. Chemistry Council v. Dep't of Transp.,*
 468 F.3d 810 (D.C. Cir. 2006) ................................................................................ 11

*Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin.,*
 724 F.3d 243 (D.C. Cir. 2013) ......................................................................... 25, 29

*Associated Fisheries, Inc. v. Daley,*
 127 F.3d 104 (1st Cir. 1997) .................................................................................. 26

*Baker v. Flint Eng'g & Const. Co.,*
 137 F.3d 1436 (10th Cir. 1998) ....................................................................... *passim*

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
 591 U.S. 610 (2020) ............................................................................................... 35

*Bartels v. Birmingham,*
 332 U.S. 126 (1947) ................................................................................................. 4

*Bostock v. Clayton Cnty.,*
 590 U.S. 644 (2020) ............................................................................................... 16

*Brock v. Superior Care, Inc.,*
 840 F.2d 1054 (2d Cir. 1988) .......................................................................... 19, 30

*Bullock v. U.S. Bureau of Land Mgmt.,*
 489 F. Supp. 3d 1112 (D. Mont. 2020) ................................................................. 33

*Bushco v. Shurtleff,*
 729 F.3d 1294 (10th Cir. 2013) ............................................................................ 30

*Chamber of Commerce Com. v. NLRB,*
 118 F. Supp. 3d 171 (D.D.C. 2015) ...................................................................... 29

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013) ..................................................................................... 8, 10, 11

*Coalition for Workforce Innovation v. Walsh,*
 No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ...................... 6, 24

*Consumers' Research Rsch. v. Consumer Prod. Safety Comm'n,*
 91 F.4th 342 (5th Cir. 2024) ................................................................................... 9

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.,*
 779 F.3d 258 (5th Cir. 2015) ................................................................................... 9

*Ctr. for Auto Safety v. Peck*,
  751 F.2d 1336 (D.C. Cir. 1985) ....................................................................25, 29

*Dias v. Denver*,
  567 F.3d 1169 (10th Cir. 2009) ............................................................................29

*Encino Motorcars, LLC v. Navarro*,
  584 U.S. 79 (2018) ...............................................................................................18

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .............................................................................................12

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ......................................................................................12, 22

*Gill v. Whitford*,
  585 U.S. 48 (2018) ...............................................................................................35

*Goldberg v. Whitaker House Co-op., Inc.*,
  366 U.S. 28 (1961) ...............................................................................................16

*Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*,
  No. H-06-2354, 2007 WL 2872876 (S.D. Tex. Sept. 27, 2007)............................26

*Guedes v. ATF*,
  356 F. Supp. 3d 109 (D.D.C. 2019) ......................................................................33

*Heartland Reg'l Med. Ctr. v. Sebelius*,
  566 F.3d 193 (D.C. Cir. 2009) .............................................................................35

*Hopkins v. Cornerstone Am.*,
  545 F.3d 338 (5th Cir. 2008) ...............................................................................20

*Kane Cnty. v. Salazar*,
  562 F.3d 1077 (10th Cir. 2009) ..............................................................................7

*Kenney v. Helix TCS, Inc.*,
  939 F.3d 1106 (10th Cir. 2019) ............................................................................18

*Kobach v. U.S. Election Assistance Comm'n*,
  772 F.3d 1183 (10th Cir. 2014) ...........................................................12, 25, 29

*Little Sisters of the Poor v. Pennsylvania*,
  591 U.S. 657 (2020) ......................................................................................12, 13

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) .........................................................................................15

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................8, 9

*McFeeley v. Jackson Street St. Ent., LLC*,
  825 F.3d 235 (4th Cir. 2016) ...............................................................................23

*Metro. Sch. Dist. of Wayne Twp. v. Davila*,
  969 F.2d 485 (7th Cir. 1992) ......................................................................31

*Montoya v. Chao*,
  296 F.3d 952 (10th Cir. 2002) ...............................................................8, 11

*N.M. Health Connections v. HHS*,
  340 F. Supp. 3d 1112 (D.N.M. 2018) ......................................................34

*N.M. Health Connections v. U.S. Dep't of HHS*,
  946 F.3d 1138 (10th Cir. 2019) ............................................................3, 8

*N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*,
  494 F. Supp. 3d 850 (D.N.M. 2020) ........................................................34

*Nationwide Mut. Ins. Co. v. Darden*,
  503 U.S. 318 (1992) ..............................................................................1, 14

*NLRB v. Hearst Publ'ns, Inc.*,
  322 U.S. 111 (1944) ....................................................................................4

*NRDC v. EPA*,
  822 F.2d 104 (D.C. Cir. 1987) ..................................................................25

*Olenhouse v. Commodity Credit Corp.*,
  42 F.3d 1560 (10th Cir. 1994) ...........................................................3, 7, 8

*Razak v. Uber Techs., Inc.*,
  951 F.3d 137 (3d Cir.) ...............................................................................17

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947) ...........................................................................*passim*

*Sackett v. EPA*,
  598 U.S. 651 (2023) ...................................................................................30

*Saleem v. Corp. Transp. Grp., Ltd.*,
  854 F.3d 131 (2d Cir. 2017) ......................................................................17

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308 (11th Cir. 2013) ..........................................................20, 30

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ...................................................................................31

*Sorenson Commc'ns, Inc. v. FCC*,
  567 F.3d 1215 (10th Cir. 2009) ................................................................26

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .............................................................................8, 11

*Su v. Starbucks Corp.*,
  697 F. Supp. 3d 1078 (W.D. Wash. 2023) ...............................................33

*Su v. WiCare Home Care Agency, LLC,*
  No. 1:22-cv-00224, 2024 WL 3598826 (M.D. Pa. July 31, 2024) ........................................33

*Tennessee v. EEOC,*
  --- F.Supp.3d ---, 2024 WL 3012823 (E.D. Ark. June 14, 2024) ............................................9

*Thibault v. Bellsouth Telecomm., Inc.,*
  612 F.3d 843 (5th Cir. 2010) ..............................................................................................23

*Twin Rivers Paper Co. LLC v. SEC,*
  934 F.3d 607 (D.C. Cir. 2019) ............................................................................................11

*U.S. Cellular Corp. v. FCC,*
  254 F.3d 78 (D.C. Cir. 2001) ..............................................................................................25

*U.S. v. Rosenwasser,*
  323 U.S. 360 (1945) .................................................................................................... 14, 16

*U.S. v. Silk,*
  331 U.S. 704 (1947) ..............................................................................................*passim*

*United States v. Gomez,*
  No. 3:21-cr-0001, 2024 WL 1620392 (D.V.I. Apr. 15, 2024) ...............................................32

*United States v. Mead Corp.,*
  533 U.S. 218 (2001) ............................................................................................................15

*United States v. Smith,*
  962 F.3d 755 (4th Cir. 2020) ..............................................................................................32

*United States v. Texas,*
  599 U.S. 670 (2023) ...................................................................................................... 34, 35

*Usery v. Pilgrim Equip. Co.,*
  527 F.2d 1308 (5th Cir. 1976) ...................................................................................... 24, 31

*Wallen v. v. TendoNova Corp.,*
  No. 20-CV-790-SE, 2022 WL 17128983 (D.N.H. Nov. 22, 2022) ........................................24

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.,*
  870 F.3d 1222 (10th Cir. 2017) ..........................................................................................34

*Wyoming Gun Owners v. Gray,*
  83 F.4th 1224 (10th Cir. 2023) ..........................................................................................29

**Statutes, Rules, and Regulations**

5 U.S.C.
  § 601 ..................................................................................................................................25
  § 3346 ................................................................................................................................33
  § 3347(a)(1) .......................................................................................................................33

29 U.S.C.

§ 202 .................................................................................................................. 1, 3
§ 203(d) ............................................................................................................... 3, 13
§ 203(e)(1) ........................................................................................................... 3, 13
§ 203(g) .......................................................................................................... 3, 13, 18
§ 204 ......................................................................................................................... 31
§ 206(a) ...................................................................................................................... 3
§ 207(a) ...................................................................................................................... 3
§ 216(a) .................................................................................................................... 30
§ 552 ................................................................................................................. *passim*

29 C.F.R.

Part 795 ...................................................................................................................... 7
§ 795.100 .................................................................................................................. 26
§ 795.110(a)(2) ........................................................................................................ 16
§ 795.110(b) ....................................................................................................... 14, 23
§ 795.110(b)(2) ........................................................................................................ 21
§ 795.110(b)(3) ........................................................................................................ 21
§ 795.110(b)(4) .................................................................................................. 18, 20
§ 795.110(b)(5) ........................................................................................................ 20
§ 795.115 .................................................................................................................. 35

86 Fed. Reg. 1168 ............................................................................................. *passim*

87 Fed. Reg. 62218 .................................................................................................... 6

89 Fed. Reg. 1638-01 ........................................................................................ *passim*

**Other Authorities**

167 Cong. Rec. S4843 (daily ed. July 13, 2021). .................................................. 32

169 Cong. Rec. S5163 (daily ed. Oct. 25, 2023) ................................................... 31

170 Cong. Rec. S1011 (daily ed. Feb. 27, 2024) ................................................... 33

# INTRODUCTION

The Fair Labor Standards Act, 29 U.S.C. §§ 201-19 ("FLSA"), was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. The "striking breadth" of its definition of "employ" has long been interpreted by courts to include as an employee any worker who is, in light of the totality of the circumstances, economically dependent on their employer for work. *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). On January 10, 2024, the Department of Labor (collectively with the other Defendants, the "Department") promulgated interpretive guidance—rooted in the FLSA's text as interpreted by decades of Supreme Court and federal circuit precedent, including in the Tenth Circuit—for determining whether a worker is an employee or an independent contractor. *See* 89 Fed. Reg. 1638-01 (codified at 29 C.F.R. pts. 780, 788, & 795) (the "2024 Rule"). The 2024 Rule also rescinded the guidance that the Department published in January 2021, 86 Fed. Reg. 1168 (the "2021 Rule"). *See* 89 Fed. Reg. at 1639.

Plaintiff Colt & Joe Trucking LLC now seeks to invalidate the 2024 Rule and thereby sweep away an analysis that has, since the 1940s, generally guided the Department in the exercise of its enforcement authority under the FLSA as well as the broader public. *See* Pl.'s Mot. for Summ. J., ECF No. 22 ("PMSJ"). But Plaintiff, which alleges that it has been in business since 1999, cannot plausibly assert that the Department's restatement of these decades-old principles will harm it. Rather than present specific facts about how the 2024 Rule has affected Plaintiff's business, Plaintiff presents only general and conclusory averments about the

overall effect of the Rule. Because Plaintiff fails to demonstrate that it has standing to challenge the 2024 Rule, this case should be dismissed for lack of subject-matter jurisdiction.

In the alternative, the Court should enter judgment for the Department. Notwithstanding Plaintiff's everything-but-the-kitchen-sink approach, the 2024 Rule fully complies with the Administrative Procedure Act ("APA"). The Department reasonably explained why it elected to rescind the 2021 Rule and return to an analysis that faithfully adheres to the FLSA's text as interpreted by courts for decades, including in the Tenth Circuit, and addressed each of Plaintiff's concerns about the proper interpretation of the economic reality factors, regulatory confusion, and potential costs. Plaintiff's repeated, mistaken insistence that the 2021 Rule is essentially a two-factor "control-and-opportunity" test, *e.g.*, PMSJ 1, only underscores the confusion that the 2021 Rule would have engendered, and that the Department sought to dispel with the 2024 Rule. Unlike the 2021 Rule, the 2024 Rule properly permits a decisionmaker to assign weight to the various factors in the context of a specific case, rather than assigning the factors predetermined and invariable weight at the outset.

Plaintiff's remaining claims are similarly meritless. The 2024 Rule is not unconstitutionally vague; to the contrary, the Rule lays out a framework that courts have used for decades and supplies ample explanation about how each of the economic reality factors should be applied. As to Plaintiff's excess-of-authority claim, Plaintiff overlooks the fact that the 2024 Rule was promulgated by Wage and Hour Division Administrator Jessica Looman, who had independent, lawful authority to promulgate the Rule.

For these reasons, the Court should deny Plaintiff's motion for summary judgment and dismiss this case or, in the alternative, enter judgment for the Department.

## BACKGROUND

The district court's review in an APA case "is limited to the administrative record." *N.M. Health Conns. v. HHS*, 946 F.3d 1138, 1161-62 (10th Cir. 2019); *see also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1576, 1579-80 (10th Cir. 1994) (disapproving of the filing of separate statements of material fact in APA cases). *Contra* PMSJ 3-10 & n.1. This opposition and cross-motion therefore rests solely on the administrative record rather than a separate presentation of material facts; the Department provides this summary of the relevant statutes, cases, and administrative actions solely for purposes of background.

## I.     The Fair Labor Standards Act

Congress enacted the FLSA in 1938 to eliminate "low wages and long hours" and "free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *see also* 29 U.S.C. § 202. To that end, the FLSA requires covered employers to pay nonexempt employees at least the federal minimum wage and, for hours worked over 40 hours in a workweek, 1.5 times the employee's regular rate, 29 U.S.C. §§ 206(a), 207(a), and to keep certain records regarding employees, *id.* § 211(c).

The FLSA generally defines employees as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and employers to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d). To "employ" is defined to include "to suffer or permit to work." *Id.* § 203(g). The FLSA does not define independent contractors, who are not covered as employees by the Act. 89 Fed. Reg. at 1638.

Since the 1940s, courts have applied an "economic reality" test, grounded in the FLSA's

broad understanding of employment, to determine whether a worker is an employee or an independent contractor under the Act. 89 Fed. Reg. at 1638, 1641-42 (citing *Rutherford*, 331 U.S. 722 and discussing *U.S. v. Silk*, 331 U.S. 704 (1947); *Bartels v. Birmingham*, 332 U.S. 126 (1947); *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111 (1944)). The ultimate inquiry is whether, as a matter of economic reality, the worker is economically dependent on the employer for work (and is thus an employee) or is in business for themself (and is thus an independent contractor), rather than whether the employer would be considered to have control over the worker under the narrower standards of the common law. *Id.* at 1638, 1641. In assessing economic dependence, courts have historically conducted a totality-of-the-circumstances analysis, considering multiple factors with no one factor or factors having predetermined weight. *Id.* at 1638, 1641-44.

Specifically, in *Silk*, the Supreme Court identified five factors as "important" for distinguishing between employees and independent contractors: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation." *Id.* at 1641 (quoting *Silk*, 331 U.S. at 716). The Court added that "[n]o one [factor] is controlling nor is the list complete." *Id.* On the same day that the Supreme Court decided *Silk*, it also decided *Rutherford*, in which it considered several of the *Silk* factors and noted that the workers in question were best characterized as "part of the integrated unit of production under such circumstances that the workers performing the task were employees." *Id.* (quoting *Rutherford*, 331 U.S. at 729-30). One week later, the Court decided *Bartels*, again considering several *Silk* factors and reiterating that courts must consider whether, in light of the "total situation," workers are, as a "matter of economic reality[,] … dependent upon the business to which they render service." *Id.* (quoting *Bartels*, 332 U.S. at 130).

4

Consistent with *Silk*, *Rutherford*, and their progeny, all of the federal courts of appeals apply the totality-of-the-circumstances economic reality analysis, using the factors articulated in *Silk* while acknowledging that they are not exhaustive and should not be applied mechanically or given arbitrary weights. *Id.* at 1642 nn.52-53 (listing cases). The Tenth Circuit, for example, considers six non-exclusive factors: "(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business." *Baker*, 137 F.3d at 1440. "None of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach." *Id.* at 1441.

## II.    The Department's Prior Guidance

In 1949, the Department first issued an opinion letter "distilling six 'primary factors which the Court considered significant' in *Rutherford* and *Silk*," emphasizing that "no single factor is controlling" in determining whether an employment relationship exists under the FLSA. 89 Fed. Reg. at 1643. In the decades since, the Department has generally applied a similar multifactor economic reality analysis, following precedent by declining to apply factors mechanically or to assign any factor a predetermined weight. *See id.* at 1642-44.

On January 7, 2021, the Department published the 2021 Rule with an effective date of March 8, 2021. *See* 89 Fed. Reg. at 1639; 86 Fed. Reg. at 1168. The 2021 Rule intended to add a new part to Title 29 of the Code of Federal Regulations (Part 795), introducing a new generally applicable analysis for determining whether a worker is an employee or an independent contractor—one that neither the Department nor any court had ever applied. *Id.* at 1638-39,

1727. Specifically, the 2021 Rule created a novel five-factor analysis for determining whether a worker is economically dependent on an employer. In contrast to prior guidance and contrary to case law, the 2021 Rule designated two of the five factors as "core factors" that should carry greater weight in the analysis, *id.* at 1638: (1) the nature and degree of control over the work and (2) the worker's opportunity for profit or loss (which included the worker's initiative and investments), *id.* at 1644. The three remaining factors were (3) the amount of skill required for the work, (4) the degree of permanence of the working relationship, and (5) whether the work is part of an integrated unit of production. *Id.* at 1645; 86 Fed. Reg. at 1171. Under the 2021 Rule, factors (3) through (5) were "less probative and, in some cases, may not be probative at all" of economic dependence and were "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 89 Fed. Reg. at 1645.

After the change in Administration in 2021, the Department first delayed and then withdrew the 2021 Rule. *Id.* at 1639. Both actions were challenged in *Coalition for Workforce Innovation v. Walsh*, in which a district court held that the actions violated the APA. *See* 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ("*CWI*"). On May 13, 2022, the Department appealed the decision in *CWI*. That decision was vacated as moot after the Department promulgated the 2024 Rule. *See* Order, *CWI*, No. 22-40316 (5th Cir. Feb. 19, 2024), Dkt. No. 82.

### III.    The 2024 Rule

On October 13, 2022, the Department published a new proposed rule. 87 Fed. Reg. 62218. After considering over 55,000 comments, the Department promulgated the 2024 Rule on January 10, 2024, and it became effective on March 11, 2024. 89 Fed. Reg. 1638-01.

The 2024 Rule rescinded the 2021 Rule and replaced it with guidance embodying "an

analysis that is more consistent with judicial precedent and the Act's text and purpose" as interpreted by courts. *Id.* at 1638; *see* 29 C.F.R. Part 795. Specifically, the 2024 Rule embodies a totality-of-the-circumstances analysis in which the six longstanding factors do not have predetermined weight. 89 Fed. Reg. at 1645. Those factors include: (1) the worker's opportunity for profit or loss depending on managerial skill; (2) investments by the worker and the potential employer; (3) the degree of permanence of the work relationship; (4) nature and degree of control; (5) extent to which the work performed is an integral part of the potential employer's business; and (6) the worker's skill and initiative. 29 C.F.R. §§ 795.110(b)(1)-(6). The preamble to the 2024 Rule also provides a detailed analysis about the application of each factor to serve as a guide for determining whether a worker is an employee. *See* 89 Fed. Reg. at 1671-1725.

## IV.   This Lawsuit

Plaintiff Colt & Joe Trucking LLC filed its complaint on April 25, 2024. *See* ECF No. 1. On August 2, 2024, Plaintiff moved for summary judgment. *See* ECF No. 22.[1]

## LEGAL STANDARD

In *Olenhouse*, the Tenth Circuit instructed district courts reviewing agency action under the APA to "act as an appellate court," and process such cases "*as appeals.*" 42 F.3d at 1580. However, "nothing in *Olenhouse* … precludes an APA-based complaint from being summarily dismissed pursuant to Federal Rule of Civil Procedure 12(b)." *Kane Cnty. v. Salazar*, 562 F.3d 1077, 1086 (10th Cir. 2009). "[T]he burden of establishing subject-matter jurisdiction is on the

---

[1]    This lawsuit is one of five challenging the 2024 Rule. *See Frisard's Transp., LLC v. U.S. Dep't of Labor*, No. 24-cv-347 (E.D. La.) (denying plaintiffs' motion for a preliminary injunction), *on appeal*, No. 24-30223 (5th Cir.); *CWI*, No. 21-cv-130; *Littman v. Dep't of Labor*, No. 24-cv-194 (M.D. Tenn.); *Warren v. U.S. Dep't of Labor*, No. 24-cv-007 (N.D. Ga.).

party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

Although the Tenth Circuit has described ordinary civil "motions for summary judgment" as "conceptually incompatible with the very nature and purpose of an appeal," *Olenhouse*, 42 F.3d at 1580, it has approved of using summary judgment "to 'decid[e], as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *N.M. Health Conns.*, 946 F.3d at 1161 (quotation omitted). The agency's "actions are entitled to a presumption of regularity, and [plaintiff] bears the burden of persuasion to show [the agency] acted arbitrarily and capriciously." *Id.* at 1162.

## ARGUMENT

**I.     The Court should dismiss this case for lack of subject-matter jurisdiction.**

The Court lacks jurisdiction because Plaintiff does not have standing to advance its claims or to pursue its requested remedies. "Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies,'" and thereby requires plaintiffs to "establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotation omitted). Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Plaintiff's conclusory and speculative averments do not meet these requirements, particularly given that the 2024 Rule incorporates standards that courts have applied for decades. Plaintiff's standing theory is founded upon the assertion that it has standing simply because it is a

"regulated employer." PMSJ 10. That is incorrect. "[E]very American is subject to a great many regulations … [b]ut merely being subject to those regulations, in the abstract, does not create injury." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 350 (5th Cir. 2024). Although the "'object of the action' theory of standing is the norm[,] … it is not a hardline rule," and Plaintiff must still adduce facts that "establish[] Article III's 'irreducible constitutional minimum'—injury in fact, causation, and redressability." *Tennessee v. EEOC*, --- F. Supp. 3d ---, 2024 WL 3012823, at *6 (E.D. Ark. June 14, 2024) (rejecting standing claim) (quoting *Lujan*, 504 U.S. at 560); *cf. Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (holding that plaintiffs had standing because "they have *independently* satisfied the three prongs of constitutional standing") (emphasis added) (cited at PMSJ 10).

The only evidence Plaintiff provides to demonstrate that it has Article III standing—a declaration by its owner, Stanley Pettingill—does not suffice. *See* Decl. of Stanley Pettingil, ECF No. 22-1 ("Pettingil Decl."). Mr. Pettingil asserts that the "2021 Rule provided a clear, understandable standard" that gave Plaintiff "assur[ance] that owner-operators it hires are independent contractors if they control the key aspects of the work and have an opportunity for profit," while the "2024 Rule is unclear" and imposes a "six factor[]" test. *See id.* ¶¶ 8-9. But the 2021 Rule, while designating two "core factors," in fact identified *five* factors for consideration, also treated "no one factor [as] dispositive", and similarly allowed decisionmakers to consider "additional" factors. 89 Fed. Reg. at 1644. Leaving aside that the 2024 Rule is intended to ameliorate confusion, *see infra* Section II.A.3., Mr. Pettingil also does not provide any facts to connect any marginal increase in uncertainty to any specific, documented, or quantifiable costs in "time and resources" to his business. *See* Pettingil Decl. ¶ 10; *see also id.* ¶¶ 11-13. He

suggests that Plaintiff has been chilled from hiring a new driver because of concerns about the 2024 Rule, *id.* ¶ 11, but "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper*, 568 U.S. at 418 (quotation omitted) These conclusory statements fail to meet Plaintiff's burden.

Plaintiff's assertions are particularly implausible given that Plaintiff claims to have been in business since 1999—*i.e.*, for over two decades prior to the promulgation of the 2021 Rule. Pettingil Decl. ¶ 4. But the 2024 Rule simply adopts "guidance derived from the same analysis that courts have applied for decades," 89 Fed. Reg. at 1,658, under which Plaintiff apparently operated without incident. If Plaintiff was able to retain the services of independent contractors *before* the 2021 Rule, then the 2024 Rule should not change those circumstances. Nor does Plaintiff allege that it changed its practices *after* the 2021 Rule was promulgated or will now need to change them *again* in response to the 2024 Rule. Plaintiff does not concretely identify any way in which these regulatory developments have harmed its business at all. For these reasons, Plaintiff has failed to show any cognizable injury from the 2024 Rule, let alone that any such injury was caused by the 2024 Rule or could be redressed by enjoining the 2024 Rule.

Rather than present facts to demonstrate its standing, Plaintiff mischaracterizes certain statements in the 2024 Rule. PMSJ 10-11. The Department in no way "admit[ted]" that the purpose of the 2024 Rule was "to compel regulated companies to hire fewer independent contractors," *id.* at 11; instead, the Department expected that the 2024 Rule would ameliorate the "confusion and uncertainty" produced by the 2021 Rule's decision to jettison the standards long applied by federal courts, 89 Fed. Reg. at 1653, 1656. Specifically, the Department was concerned that the 2021 Rule "could have resulted in misapplication of the economic reality test

and may have conveyed to employers that more workers could be classified as independent contractors than prior to the 2021 IC Rule." *Id.* at 1656. The Department expressly rejected any suggestion that "independent contractors … who are correctly classified as independent contractors under current circuit case law would be reclassified," *id.* at 1659, or that the 2024 Rule would lead to "widespread reclassification," *id.* at 1669. For the same reason, the Department disagreed with the SBA's cost estimates. *Id.* at 1740. As for "familiarization costs," the Department ultimately estimated that businesses would spend an average of *an hour* reading the 2024 Rule. *Id.* at 1734. Simply reading a rule does not confer standing to challenge it.

Even if Plaintiff's characterizations of the Rule were correct, however, costs to the regulated community *in general* still do not demonstrate that the 2024 Rule has injured Plaintiff *in particular*. *Cf., e.g.*, *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 614 (D.C. Cir. 2019) ("[N]one of the comments tied these harms to any identified members [of the plaintiffs]."); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006) (declining to "assum[e] a link between the petitioners' comments in the administrative record" and their assertions of "imminent dangers"). Plaintiff must identify how it specifically has been harmed by the Rule, not simply assert that regulated parties in general have been affected by the Rule. Because Plaintiff has not done so, it has failed to meet its burden to demonstrate that the Court has subject-matter jurisdiction, and this case must be dismissed. *See, e.g.*, *Spokeo*, 578 U.S. at 338; *Clapper*, 568 U.S. at 408; *Montoya*, 296 F.3d at 955.

## II.     In the alternative, the Court should enter judgment for the Department.

To the extent the Court concludes that it has jurisdiction, the Court should enter judgment for the Department on all of Plaintiff's claims. Specifically, Plaintiff has failed to demonstrate

that the 2024 Rule violates the FLSA, the APA, or the RFA, *see* Section II.A; that it is

unconstitutionally vague, *see* Section II.B; or that it was unlawfully issued, *see* Section II.C.

A.     **Plaintiff has failed to show that the 2024 Rule is arbitrary, capricious, contrary to law, or in excess of the Department's authority under the FLSA.**

The majority of Plaintiff's claims sound in arbitrary-and-capricious review, under which

the agency need only "articulate a satisfactory explanation for [the] action including a rational

connection between the facts found and the choice made." *Little Sisters of the Poor v.*

*Pennsylvania*, 591 U.S. 657, 682 (2020). Under this "deferential" standard, a court "simply

ensures that the agency has acted within a zone of reasonableness," and "may not substitute its

own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414,

423 (2021). When an agency changes a policy, it need not demonstrate "that the reasons for the

new policy are better than the reasons for the old one," but only that "the new policy is

permissible under the statute, that there are good reasons for it, and that the agency *believes* it to

be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Thus, the arbitrary-

and-capricious standard is "'very deferential' to the agency's determination, and a presumption

of validity attaches to the agency action such that the burden of proof rests with the party

challenging it." *Kobach v. U.S. Election Assist. Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014).

The Department provided an exhaustive account of its reasons for rescinding the 2021

Rule and replacing it with the 2024 Rule's interpretive regulations. As the Department explained,

the 2024 Rule is better "aligned with the Department's decades-long approach (prior to the 2021

[] Rule) as well as with federal appellate case law, and is more consistent with the Act's text and

purpose as interpreted by the courts." 89 Fed. Reg. at 1640. In contrast, "leaving the 2021 [] Rule

in place would have a confusing and disruptive effect on workers and businesses alike due to its

departure from decades of case law." *Id.* at 1647. Specifically, the Department believed that the 2021 Rule's "novel narrowing of the test under which certain factors are always elevated and other facts are essentially precluded from consideration may result in misapplication of the economic reality test and an increased risk of FLSA-covered employees being misclassified as independent contractors." *Id.*[2] In sum, the Department provided a "satisfactory explanation" for its decisions, and those decisions should be upheld. *Little Sisters of the Poor*, 591 U.S. at 682.

Plaintiff identifies no basis for setting aside the Department's considered judgments. The 2024 Rule is properly based upon the correct reading of the FLSA's text, as that text has been interpreted *by courts* for over fifty years. *See* Section II.A.1. The Department's interpretations of the individual economic reality factors are also adequately explained and consistent with precedent. *See* Section II.A.2. It was reasonable for the Department to conclude that the 2024 Rule would ameliorate the confusion created by the 2021 Rule, *see* Section II.A.3, and the Department sufficiently considered all of Plaintiff's concerns about costs, *see* Section II.A.4. The Department is therefore entitled to judgment on Plaintiff's APA claims.

**1.      The 2024 Rule's multifactor test is consistent with the text of the FLSA as it has been interpreted by federal courts for decades.**

To start, the 2024 Rule reflects the correct interpretation of the FLSA's expansive definition of employee. The FLSA defines "employ" to "include[] to suffer or permit to work," 89 Fed. Reg. at 1667; *see* 29 U.S.C. § 203(d), (e)(1), (g)—language that demonstrates Congress's intent for the FLSA to apply broadly and inclusively. *See, e.g.*, 89 Fed. Reg. at 1667

---

[2]     The Department also determined that, in the event the 2024 Rule's interpretive regulations were set aside, it would still intend to rescind the 2021 Rule for the same reasons. *Id.* at 1724-25. In that event, "case law and the Department's subregulatory guidance … would provide a familiar and longstanding standard for businesses and workers." *Id.* at 1725.

n.216 (citing *Darden*, 503 U.S. at 326 (noting that "employ" is defined with "striking breadth"));

*U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945) ("A broader or more comprehensive coverage of

employees … would be difficult to frame.")); *Baker*, 137 F.3d at 1440. The 2024 Rule is

consistent with binding judicial precedent interpreting this statutory language, as courts have

long considered the totality of the circumstances and have not assigned any factor a

predetermined weight in assessing whether a worker is an employee or an independent

contractor. 89 Fed. Reg. at 1639, 1641.

In particular, the Supreme Court has repeatedly emphasized that employment status under

the economic reality test turns upon the "circumstances of the whole activity," rather than

"isolated factors." *Id.* at 1651 n.125 (quoting *Rutherford*, 331 U.S. at 730; citing *Silk*, 331 U.S. at

716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-

employee relationship" and determining employment status based on "the total situation")).

Similarly, the Tenth Circuit has explained that "[n]one of the factors alone is dispositive; instead,

the court must employ a totality-of-the-circumstances approach." *Baker*, 137 F.3d at 1441. The

Tenth Circuit therefore applies a six-factor test materially indistinguishable from that provided in

the 2024 Rule. *Compare id.* at 1440 *with* 29 C.F.R. § 795.110(b); *see also* 89 Fed. Reg. at 1651

& nn.126-33 (collecting other cases). That the 2024 Rule brings the Department's interpretation

into alignment with precedent alone should resolve this case in favor of the Department.

Not to be deterred, Plaintiff insists that the Department's desire to harmonize its

interpretation with longstanding FLSA precedent is the *reason* that the 2024 Rule is purportedly

unlawful. PMSJ 14. Plaintiff claims that the 2024 Rule is based on the "faulty legal premise" that

the FLSA "does not permit a test" that emphasizes two factors. *Id.* But the Department correctly

concluded that a test that does not assign predetermined weight to two of the factors represents the most faithful interpretation of the FLSA's text, as articulated by courts for over seventy years. 89 Fed. Reg. at 1638. Plaintiff's objections to that conclusion are unfounded.[3]

**a.**     Plaintiff begins by incorrectly asserting that the Department "does not dispute" the 2021 Rule's premise that control and opportunity are the "'most probative' factors." PMSJ 14; *see also id.* at 17. To the contrary, the Department explained, at length, why the 2021 Rule's method of extrapolating two "core" factors from certain cases was flawed. Among other problems, the cases the 2021 Rule relied upon "do not, themselves, elevate these two factors— rather, the 2021 [] Rule made assumptions about the reasoning behind the courts' decisions that are not clear from the decisions themselves and in some cases are contrary to the decisions' instructions that the test should not be applied in a mechanical fashion." 89 Fed. Reg. at 1651. Moreover, the mere fact that control and opportunity pointed toward the ultimate result when they aligned does not demonstrate that those two factors will always be the most important in every case. *Id.* at 1652. The 2021 Rule did not even address whether a different combination of two factors would yield similar results. *Id.*

In any event, Plaintiff misunderstands the 2024 Rule's approach. Under the 2024 Rule, a decisionmaker may give certain factors greater weight in the context of a *specific case*, including factors like whether a worker "is compensated through profit based on his own initiative or

---

3     The Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), has no bearing on the 2024 Rule: the Department did not invoke *Chevron* deference, and as an interpretive rule, the Rule would not have been entitled to *Chevron* deference anyway. *See United States v. Mead Corp.*, 533 U.S. 218, 232 (2001).

investment" or has "control over his or her work." PMSJ 15 (quoting 86 Fed. Reg. at 1199).[4] The 2024 Rule simply does not put a thumb on the scale in favor of those factors or any factors before the weighing even begins, as the 2021 Rule did by giving greater weight to the two "core" factors in *all* cases. The 2024 Rule emphasizes that, "[c]onsistent with a totality-of-the-circumstances analysis, no one factor or subset of factors is necessarily dispositive, and the weight to give each factor may depend on the facts and circumstances of the particular relationship." 29 C.F.R. § 795.110(a)(2). That approach, unlike the approach in the 2021 Rule, is consistent with *Silk* and *Rutherford*, which considered all the factors in their analysis and did not suggest that any were predetermined to have greater weight. *See* 89 Fed. Reg. at 1641.

Indeed, Plaintiff's brief strongly suggests that its objection is to the FLSA itself and to the Supreme Court's cases interpreting it. PMSJ 14-15. Plaintiff criticizes the FLSA's "circular and unhelpful definitions of 'employ' and 'employee,'" *id.* at 14; downplays the fact that it "did not adopt the common-law test," *id.* at 15; and characterizes as mere "dicta," *id.* at 18, the totality-of-the-circumstances test, which it elsewhere describes as "unpredictable," "arbitrary," and "freewheeling," *id.* at 24. But agencies are not at liberty to "add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and [their] own imaginations," and thereby "risk amending statutes outside the legislative process reserved for the people's representatives." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 655 (2020).

---

[4]    Plaintiff's focus on whether the worker profits from "wages or salary," however, is contrary to the Supreme Court's instructions that "'economic reality' rather than 'technical concepts' is to be the test of employment," *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961), and that the "mode of compensation … does not control the determination of whether one is an employee within the meaning of the Act," *Rosenwasser*, 323 U.S. at 363.

**b.**     Appellate precedent undermines, rather than supports, Plaintiff's arguments. Plaintiff relies on the Tenth Circuit's decision in *Baker*, PMSJ 17, but that case emphasized the "striking breadth" of the FLSA's definition of employment, which sweeps beyond "contractual terminology" and "traditional common law concepts"; utilized the same six-factor test as the approach in the 2024 Rule; and reiterated that "[n]one of the factors alone is dispositive," so "the court must employ a totality-of-the-circumstances approach." 137 F.3d at 1440-44. *Baker* never suggested that any of the factors were automatically entitled to greater weight, and to the extent *Baker* deemphasized the workers' skill, it did so based on the facts before it in that case, not on the grounds that the skill factor is somehow categorically less probative than the other factors.

Plaintiff's reliance on out-of-circuit cases is similarly unavailing. Both *Saleem* and *Razak* recited the *Silk* factors and emphasized that employer classification is "determined by reference not to 'isolated factors but rather upon the circumstances of the whole activity.'" *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139-40 & n.19 (2d Cir. 2017); *see also Razak v. Uber Techs., Inc.*, 951 F.3d 137, 143 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020) (explaining that "neither the presence nor absence of any particular factor is dispositive") (quotation omitted)). Both cases noted every factor; that some factors merited more extended discussion based on the facts presented is unsurprising. Again, although the 2024 Rule declines to give any particular factor or factors greater weight categorically, nothing precludes a decisionmaker applying the 2024 Rule from choosing to give some factors greater weight *in any particular case*.

**c.**     Finally, the 2024 Rule does not conflict with *Encino Motorcars, LLC v. Navarro*, which did not deal with the distinction between employees and independent contractors at all, let alone disturb the precedent analyzing that distinction. *See* PMSJ 18-19. *Encino*, which dealt with

whether service advisors should be included within the FLSA's overtime-pay exemption for certain automobile dealership workers, rejected the approach to statutory interpretation "that *exemptions* to the FLSA should be construed narrowly" as lacking any "textual indication" in the statute, and instead directed courts to give the FLSA's exemptions a "fair reading." 584 U.S. 79, 88 (2018) (emphasis added). In contrast, as the 2024 Rule explained, "[t]here is a clear textual indication in the Act's definitions, by the inclusion of the 'suffer or permit' language, that broad coverage under the Act was intended." 89 Fed. Reg. at 1668 n.221 (quoting 29 U.S.C. § 203(g)).

"Moreover, *Encino* did not hold that the FLSA's remedial purpose may never be considered," and other courts, including the Tenth Circuit, "have appropriately continued to consider the purpose of the Act." 89 Fed. Reg. at 1668 n.221; *see, e.g.*, *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1111 (10th Cir. 2019) (reiterating that the FLSA's definition of employee is "purposefully expansive to maximize the full reach of the Act"). To the extent the Department mentioned the FLSA's purpose, it referenced that "purpose as interpreted by [the] courts." 89 Fed. Reg. at 1639, 1640, 1647, 1649, 1661, 1663, 1725, 1726, 1739. *Encino*'s limited holding did not disturb the longstanding Supreme Court and circuit precedent elucidating the economic reality analysis upon which the 2024 Rule relies, and so it does not undermine the Rule.

### 2.   The 2024 Rule's explanation of the individual factors is consistent with the FLSA and relevant precedent.

Plaintiff also lobs numerous objections to the 2024 Rule's analysis of certain economic reality factors, but none stick. *See* PMSJ 19-23.

**a.   Control.** The Department correctly explained that the control factor "considers the potential employer's control, including reserved control, over the performance of the work and the economic aspects of the working relationship." 29 C.F.R. § 795.110(b)(4); *see also* 89

Fed. Reg. at 1690-1707. None of Plaintiff's rebuttals hold up to scrutiny.

Plaintiff first argues that the 2024 Rule's recognition that reserved control can be indicative of an employment relationship is somehow in tension with the Supreme Court's emphasis on "economic reality." PMSJ 19. Not so. It is the 2021 Rule that broke with precedent by establishing "a novel bright line rule that assign[ed] a predetermined and immutable weight or level of importance to reserved rights" through the "primacy of actual practice" provision. 89 Fed. Reg. at 1719. As the Department explained, precedent does not support "the adoption of a generally applicable rule that in all circumstances reserved or unexercised rights, such as the right to control, are in every instance less indicative of the economic reality than the actual practices of the parties." *Id.* at 1720. In *Brock v. Superior Care, Inc.*, for example, the Second Circuit concluded that a nurse staffing agency exercised control where it reserved the right to supervise the nurses' work even though "visits to the job sites occurred only once or twice a month"; after all, "[a]n employer does not need to look over his workers' shoulders every day in order to exercise control." 840 F.2d 1054, 1060 (2d Cir. 1988). That approach does not exalt "theoretical possibilities"—it simply recognizes that the "economic reality" of the working relationship may be affected by an establishment's reserved rights over the worker.

Plaintiff also asserts that the 2024 Rule "inappropriately expands the object of an employer's control" to the economic aspects of the working relationship. PMSJ 20. But the concept of the "economic aspects of the working relationship" is a common formulation throughout the case law, 89 Fed. Reg. at 1693 (collecting cases), because whether the employer controls "meaningful," as opposed to "day-to-day," economic aspects of the work relationship is probative of whether the worker stands apart as having their own business, *id.* (citing *Hopkins v.*

19

*Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)).

Finally, Plaintiff misrepresents the 2024 Rule as stating that "a business requiring workers to follow legal and safety obligations may indicate employee classification." PMSJ 20. Quite the opposite: the 2024 Rule explains that actions taken by the potential employer "for the sole purpose" of complying with legal requirements "are not indicative of control." 89 Fed. Reg. at 1694, 1743; 29 C.F.R. § 795.110(b)(4). On the other hand, the imposition of obligations beyond what is legally required may be relevant to analyzing the potential employer's control if it is probative of a worker's economic dependence. 89 Fed. Reg. 1693-94. Plaintiff complains that this framework "invites a fact-intensive inquiry," PMSJ 21, but the economic reality test's focus on the totality of the circumstances necessarily "depends on the facts of the case." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 n.2 (11th Cir. 2013).

**b.**     **Integral part.** Similarly, the Department's explanation that the integral part factor "weighs in favor of the worker being an employee when the work they perform is critical, necessary, or central to the potential employer's principal business" is consistent with precedent. 29 C.F.R. § 795.110(b)(5); *see also* 89 Fed. Reg. at 1707-11. Although Plaintiff claims that the "integral part" factor as stated in the 2024 Rule is inconsistent with *Rutherford*, PMSJ 21, it is the 2021 Rule's formulation that deviates from how courts, including the Supreme Court, have understood the "integral part" factor. The Supreme Court's decision in *Silk*, issued contemporaneously with *Rutherford*, concluded that coal "unloaders" were employees of a retail coal company in part because they were 'an integral part of the business[] of retailing coal." 331 U.S. at 716. Moreover, none of the circuits listing integral as an enumerated factor, including the Tenth Circuit, *see Baker*, 137 F.3d at 1440, 1443, uses the term "integrated unit." 89 Fed. Reg. at

1707. That is not simply "loose language," but a recognition by courts that the centrality of a worker's work to the employer's business, and not simply their integration into the business itself, is one factor that bears on whether there is an employment relationship. *Id.*

      **c.**     **Investment.** Next, Plaintiff takes issue with the Department's decisions to break "investments" and "opportunity for profit or loss" into separate factors and to consider a worker's investments "on a relative basis with the potential employer's investments in its overall business." 29 C.F.R. § 795.110(b)(2); *see also* 89 Fed. Reg. at 1676-85. On both fronts, however, the Department is aligned with the Tenth Circuit (not to mention other federal courts), which identifies those factors separately and has held that, "[i]n making a finding on [the investment] factor, it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Baker*, 137 F.3d at 1441-42. The Department also addressed Plaintiff's concern that businesses typically invest more capital than workers, noting that "the focus should be on comparing the investments to determine whether the worker is making *similar types* of investments as the potential employer (even if on a smaller scale)." 29 C.F.R. § 795.110(b)(2) (emphasis added).

      **d.**     **Permanence.** Finally, the Department properly concluded that a worker is more likely to be an employee "when the work relationship is indefinite in duration, continuous, or exclusive of work for other employers," but that impermanence "is not necessarily indicative of independent contractor status" where "a lack of permanence is due to operational characteristics that are unique or intrinsic to particular businesses or industries and the workers they employ." 29 C.F.R. § 795.110(b)(3); *see also* 89 Fed. Reg. at 1685-90. Plaintiff objects that the Department's approach is "logically flawed," PMSJ 22, but the seasonal employee hired to work

at a Halloween store surely would not think so. Nor would the Tenth Circuit, which concluded that oil rig welders were employees even though they worked for short periods of time throughout the year given "the intrinsic nature of oil and gas pipeline construction work." 137 F.3d at 1442. Contrary to Plaintiff's assertions, the Department sufficiently articulated both why it diverged from the 2021 Rule's analysis of the permanence factor and how the 2024 Rule's approach was consistent with applicable case law. *See* 89 Fed. Reg. at 1686-88.

> **3.   The Department reasonably concluded that the 2024 Rule would, by implementing a multifactor test drawn directly from precedent, ameliorate regulatory confusion.**

Plaintiff's arbitrary-and-capricious argument is otherwise predicated largely on their assertion that the 2024 Rule exacerbates regulatory confusion. PMSJ 23-25. But the 2024 Rule offers a comprehensive interpretation, based on case law and the Department's enforcement expertise, for determining whether a worker is an employee. 89 Fed. Reg. at 1669. It does so in easily accessible interpretive regulatory text that can be applied to workers in any industry and that is clearer and more robust than the Department's earlier subregulatory guidance. *Id.* at 1659-60. To be sure, the Department did not provide mechanistic instructions for analyzing the factors, because to do so would be directly contrary to case law and would limit the test's intended flexibility. *Id.* at 1669-70. Rather, the factors are tools that help determine whether a worker is economically dependent on their employer for work or is in business for themself. *Id.* at 1670.

Plaintiff cannot show that the 2024 Rule is more likely to cause confusion than the 2021 Rule—let alone that the agency's contrary conclusion fell outside the "zone of reasonableness," as they must to prevail under the "deferential" arbitrary-and-capricious standard. *Prometheus Radio Project*, 592 U.S. at 423. Plaintiff's supposition is belied by the fact that the 2024 Rule

sets forth, in detailed interpretive regulations, the multifactor economic reality test that the Supreme Court and other courts have applied for decades, while the 2021 Rule deviated from that settled approach with a novel alternative. *Id.* at 1649-53. Again, the Tenth Circuit itself applies a six-factor test substantively identical to the test enumerated in the 2024 Rule. *Compare Baker*, 137 F.3d at 1440 *with* 29 C.F.R. § 795.110(b).[5]

Plaintiff's insistence that totality-of-the-circumstances tests—common in many areas of the law—are always inappropriate is unfounded. PMSJ 24. In this instance, the Supreme Court has instructed courts to examine "the circumstances of the whole activity." *Rutherford*, 331 U.S. at 730. While such a test may not always provide "definitive guidance to those affected, it allows for flexible application to the myriad different working relationships that exist in the national economy." *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016), *cited in* 89 Fed. Reg. at 1642 nn.51-52 (also citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976) ("[T]he lesson taught by the Supreme Court's 1947 trilogy is that any formalistic or simplistic approach … must be rejected.")). The Department reasonably determined that the nuanced analysis that accompanies each factor in the 2024 Rule is both consistent with precedent and provides clearer guidance than rote instructions for weighing. 89 Fed. Reg. at 1670.

Nor can Plaintiff seriously claim that the 2021 Rule provided greater clarity. *See* PMSJ 24. Much like the 2024 Rule, the 2021 Rule in fact identified *five* factors for consideration, also treated "no one factor [as] dispositive", and similarly included consideration of other,

---

[5]  Plaintiff elsewhere alludes to inconsistencies in how courts have applied the economic reality test, *see* PMSJ 5 & n.3, but the Fifth Circuit distinguished its decision in *Thibault* from its decision in *Cromwell* based on the facts before it, *see Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 849 (5th Cir. 2010), and the minor distinctions Plaintiff highlights between how circuits enumerate the various factors, like consolidating two factors in one, are not significant.

"additional" factors. *Id.* at 1644. The difference is that, to apply the 2021 Rule, courts would have needed to discern what its new interpretation meant (including how it weighed and narrowed certain factors) and then to decide whether to apply it or their own standards from precedent (or some combination). *Id.* at 1654. These questions could have taken years of litigation in different circuits to sort out, and businesses would have faced the prospect of familiarizing themselves with multiple standards for determining who is an employee under the FLSA, resulting in more confusion and uncertainty. *Id.*

Perhaps that is why the 2021 Rule's "novel analysis has not been applied by any court." *Id.* at 1656.  To the contrary, several have rejected it, *see* 89 Fed. Reg. at 1655 n.150 (collecting cases), and still others have relied on existing circuit precedent without referencing the 2021 Rule at all, *id.* at 1655 n.151. Plaintiff addresses only one of these cases, *Wallen v. v. TendoNova Corp.*, but what Plaintiff has to say is inaccurate. The court in *Wallen* rejected the 2021 Rule because the court viewed it as a "minority view" in contrast to the "commonly used six-factor test," 2022 WL 17128983, at *4 (D.N.H. Nov. 22, 2022), and not simply because the Department "was in the process of rescinding it," PMSJ 25. Plaintiff also relies on the district court's since-vacated decision in *CWI*. *See supra* page 6. But that case did not involve the lawfulness of the 2021 Rule, and the court's statement that the 2021 Rule was "consistent with the existing case law" referred specifically to the fact that the 2021 Rule properly did not treat the factors as "exhaustive" or any single factor as "dispositive." *CWI*, 2022 WL 1073346, at *16-17.

The public comments identified by Plaintiff also provide no basis for invalidating the Department's conclusions. *See* PMSJ 24. To the extent some commenters voiced a preference for the 2021 Rule, their comments sometimes evinced the very confusion that the Department sought

to correct: e.g., construing the 2021 Rule as a "two-factor test" that only considers other factors when the two "core" factors do not align, or as "essentially the same as a common law control test." 89 Fed. Reg. at 1656. Those comments simply reinforced the Department's assessment that "the 2021 [] Rule could have resulted in misapplication of the economic reality test." *Id.* And although rulemaking is not "a democratic process by which the majority of commenters prevail by sheer weight of numbers," *NRDC v. EPA*, 822 F.2d 104, 122 n.17 (D.C. Cir. 1987), many commenters in fact supported the 2024 Rule. *See, e.g.*, 89 Fed. Reg. at 1647.

### 4. The Department reasonably concluded that the 2024 Rule would not result in substantial costs.

Finally, the Department did not "ignore" concerns about the potential costs of the 2024 Rule, PMSJ 26-31—it considered those concerns and rejected them. Under the "very deferential" arbitrary-and-capricious standard, the Court's review is limited to determining "whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Kobach*, 772 F.3d at 1197. "This is especially true when the agency is called upon to weigh the costs and benefits of alternative policies, since [s]uch cost-benefit analyses epitomize the types of decisions that are most appropriately entrusted to the expertise of an agency." *Ctr. for Auto Safety v. Peck*, 751 F.2d 1336, 1342 (D.C. Cir. 1985) (cleaned up); *see Am. Trucking Ass'ns, Inc. v. FMCSA*, 724 F.3d 243, 254 (D.C. Cir. 2013) ("It is not for us to undertake our own economic study and substitute the Court's views for those of the agency.").

The Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.*, does not license more intensive scrutiny of the Department's policy decisions. "The RFA is a procedural rather than substantive agency mandate." *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000); *see U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88-89 (D.C. Cir. 2001) (explaining that the RFA's

requirements are "[p]urely procedural"). As such, "[o]nly a limited judicial review of agency compliance with the RFA is allowed." *Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*, 2007 WL 2872876, at \*10 (S.D. Tex. Sept. 27, 2007). "The proper question for [the reviewing] Court is not whether the [agency] reached the 'correct' determination, but whether the agency followed the procedural steps set out in the RFA." *Id.* Thus, courts review a final regulatory flexibility analysis "only to determine whether an agency has made a 'reasonable, good-faith effort' to carry out the mandate of the RFA." *Alenco Commc'ns*, 201 F.3d at 625 (quoting *Associated Fisheries, Inc. v. Daley*, 127 F.3d 104, 114 (1st Cir. 1997)).

Regardless, the Department's consideration of the costs of the 2024 Rule passes muster under any standard. *See* 89 Fed. Reg. at 1725-41.

a.     **Small Businesses.** With respect to costs to small businesses, Plaintiff's argument—and that of its amicus, Dr. Liya Palagashvili—boils down to the assertion that the 2024 Rule will force businesses to reclassify workers as employees and therefore impose compliance costs. PMSJ 27-29. But that assertion misunderstands the nature of the Rule. The Rule is an interpretive rule, which simply "advise[s] the public of the agency's construction of the statutes and rules which it administers"; it does not "create[] new law or impose[] new rights or duties." *Sorenson Commc'ns, Inc. v. FCC*, 567 F.3d 1215, 1222 (10th Cir. 2009) (quotations omitted); *see* 29 C.F.R. § 795.100 (stating that the Rule contains the Department's "general interpretations" of the FLSA). The 2024 Rule does not *force* businesses to do anything; it is not "the law," nor does it change "the law." PMSJ 28. The *FLSA* is the law, and the 2024 Rule merely provides guidance to the Department's staff, employers and workers, and the public in determining whether a worker is properly classified under the FLSA.

The Department reasonably concluded that the interpretive guidance in the 2024 Rule would not induce "widespread reclassification." 89 Fed. Reg. at 1740. To the contrary, the Rule's interpretations are intended to "help prevent … misclassification by providing employers with guidance that is more consistent with longstanding precedent." *Id.* at 1727. Because the 2021 Rule confusingly departed from that precedent, the Department feared that it "could place workers at greater risk of misclassification as independent contractors due to the new analysis being applied improperly." *Id.* at 1639. Because the 2021 Rule was susceptible to misapplication and because the 2024 Rule realigned the Department's analysis with longstanding and always-applicable precedent, the Department concluded that "most workers who were properly classified as independent contractors before the 2021 IC Rule will continue to retain their status as independent contractors." *Id.* at 1740. Indeed, Plaintiff has conspicuously failed to allege that the 2024 Rule would actually require it to change the classification of any of its current or future independent owner-operators. *See* Pettingil Decl. ¶¶ 5, 10-11.

Plaintiff complains that the Department did not consider the expenses of coming into compliance with the law as "costs" of the 2024 Rule. PMSJ 28 (citing 89 Fed. Reg. at 1,740). Again, however, that mischaracterizes the 2024 Rule as establishing a "law" that requires employers to reclassify workers. The *FLSA* is the law that places obligations on employers, and it is therefore the *FLSA* that imposes any costs (leaving aside that the Department did not believe the 2024 Rule will result in widespread reclassification). By analogy, if an employer mistakenly believed that truckers were somehow categorically exempt from the FLSA, and the Department advised the employer otherwise, any costs suffered by the employer could not fairly be attributed to the Department's advice. The same is true of each of the categories of costs identified by

Plaintiff, including the costs of employee benefits and higher taxes, recordkeeping costs, and other compliance costs. *See* PMSJ 28-29.

Plaintiff's remaining arguments about costs to small businesses are off-base. Plaintiff objects that the 2024 Rule labeled "'health insurance and other benefits' and 'higher taxes'" as "'transfers'" from employers to workers or the government rather than "costs," PMSJ 28, but provides no reason why that difference in nomenclature is either inaccurate or material. If Plaintiff means to argue that the RFA—a strictly "procedural" statute, *Alenco Commc'ns*, 201 F.3d at 625—requires the agency to prioritize purported costs to small businesses over other impacts, Plaintiff is simply incorrect. In addition, the Department explained in detail that the 2021 Rule would not actually provide increased clarity (quite the contrary, *see supra* Section II.A.3), meaning that the purported cost savings from clarity that Plaintiff references, *see* PMSJ 28-29 (citing 86 Fed. Reg. at 1211), would never be realized.

**b.        Independent Contractors.** Plaintiff's assertions about costs to independent contractors rest on similar errors. *See* PMSJ 29-31. The 2024 Rule does not "reclassify" anyone as an employee or "force" workers to change their behavior. *Id.* at 29. If an establishment decides that one of their workers should actually be classified as an employee under the FLSA or elects not to hire a particular worker, that is the business's decision. By the same token, the 2024 Rule does not somehow thrust the FLSA's unwaivable protections on unwilling workers, *see* PMSJ 30; it simply assists all parties in determining to whom the FLSA's protections run.

In any event, the Department considered and rejected the prediction that the 2024 Rule would "lead to job losses," concluding that "most workers who were properly classified as independent contractors before the 2021 IC Rule will continue to retain their status as

independent contractors." 89 Fed. Reg. at 1740. In fact, the Department aimed to "provide[] a consistent approach for those businesses that engage (or wish to engage) independent contractors as well as for those who wish to work as independent contractors," *id.* at 1640, and thereby to facilitate "legitimate independent contracting arrangements," *id.* at 1658. While Plaintiff may disagree with the Department's conclusions and approach, simply "disagree[ing] with the choice the [agency] made … is not enough to mount a successful APA challenge." *Chamber of Com. v. NLRB*, 118 F. Supp. 3d 171, 214 (D.D.C. 2015); *see also, e.g.*, *Kobach*, 772 F.3d at 1197; *Am. Trucking Ass'ns*, 724 F.3d at 254; *Ctr. for Auto Safety*, 751 F.2d at 1342.

**B.      Plaintiff has failed to show that the 2024 Rule is unconstitutionally vague.**

For the same reasons that the 2024 Rule is likely to reduce confusion, it is plainly not so "amorphous" that it is "incompatible with the due process of law." PMSJ 25-26. A regulation is only void for vagueness "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wyoming Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023) (quotation omitted). Because Plaintiff "seeks pre-enforcement review" on the grounds that the 2024 Rule is "incapable of valid application," it bears the "heavy burden" to "demonstrate that the law is impermissibly vague in all of its applications." *Dias v. Denver*, 567 F.3d 1169, 1180 (10th Cir. 2009) (quotation omitted).

Plaintiff cannot carry that burden. As explained above, the 2024 Rule adopts clear and detailed guidance derived from the analysis that courts, including the Tenth Circuit, have applied for decades and are continuing to apply. 89 Fed. Reg. at 1658-59, 1668. These courts have acknowledged that there can be no "simple resolution," *Pilgrim Equip.*, 527 F.2d at 1311, or

"mechanical application," *Superior Care*, 840 F.2d at 1059, of the economic reality test because economic dependence "depends on the facts of the case," *Scantland*, 721 F.3d at 1312 n.2. Thus, much like how Plaintiff's statutory arguments would require the Court to conclude that the Supreme Court's (and Tenth Circuit's) interpretations of the FLSA are incorrect, *see infra* Section II.A.1., Plaintiff's vagueness argument would require the Court to conclude that the test established by the Supreme Court (and the Tenth Circuit) is unconstitutionally imprecise. Moreover, the Rule provides still further clarity by offering "detailed analysis about the application of each factor based on case law and the Department's enforcement experience as a guide for employers and workers." 89 Fed. Reg. at 1671; *see id.* at 1671-1715.

Plaintiff's reliance on *Sackett v. EPA* is therefore unavailing. PMSJ 25-26. Unlike in *Sackett*, the 2024 Rule and the more than seventy years of precedent upon which it draws furnish sufficient guidance to provide fair notice. The Court in *Sackett* also relied on the fact that the Clean Water Act imposes "severe criminal sanctions for even negligent violations." 598 U.S. 651, 681 (2023). As Plaintiff notes, however, to impose criminal penalties under the FLSA, which are exceedingly rare, the prosecution would be required to show that an employer *willfully* and *repeatedly* violated the statute. PMSJ 26 (citing 29 U.S.C. § 216(a)). Even if the 2024 Rule were unclear, that scienter requirement "mitigates any vagueness and makes the [regulation] constitutional." *Bushco v. Shurtleff*, 729 F.3d 1294, 1307 (10th Cir. 2013) (quotation omitted).

### C.    Plaintiff has failed to show that any purported defect in Acting Secretary Su's appointment affected the 2024 Rule.

Finally, Plaintiff's argument that the 2024 Rule was unlawfully promulgated is premised on errors of fact and law. Plaintiff incorrectly asserts that Acting Secretary Su, who, as Deputy Secretary, is performing the duties of the Secretary pursuant to 29 U.S.C. § 552, promulgated the

2024 Rule, PMSJ 31-33, when the Rule was in fact promulgated pursuant to the independent

authority of Wage and Hour Division Administrator Looman, 89 Fed. Reg. at 1743. Regardless,

Acting Secretary Su properly exercises the Secretary's authority under § 552.

> **1.     The 2024 Rule was lawfully promulgated under Administrator Looman's authority.**

Plaintiff's challenge to Acting Secretary Su's authority is a red herring because

Administrator Looman signed and thereby duly promulgated the 2024 Rule. *See* 89 Fed. Reg. at

1743. Plaintiff does not challenge Administrator Looman's authority to issue the 2024 Rule, nor

could it. Administrator Looman was nominated by the President and confirmed by the Senate,

*see* 29 U.S.C. § 204(a); 169 Cong. Rec. S5163 (daily ed. Oct. 25, 2023), and the FLSA expressly

authorizes the Administrator to administer and enforce the FLSA, which includes the inherent

authority to issue interpretive rules. *See, e.g.*, 29 U.S.C. § 204 (creation of the Division "under

the direction of an Administrator"); *id.* § 209 (subpoena authority); *id.* § 211 (investigative

authority); *see, e.g.*, *Metro. Sch. Dist. of Wayne Twp. v. Davila*, 969 F.2d 485, 490 (7th Cir.

1992) (noting "inherent authority to issue interpretive rules" announcing "standards [agency]

intends to apply in exercising its discretion") (quotation omitted). The FLSA further reflects the

Administrator's power to issue interpretive rules by creating a defense for an employer that acts

"in good faith in conformity with and in reliance" on a "*regulation*, order, ruling, approval, or

*interpretation*" of "the Administrator." 29 U.S.C. § 259 (emphasis added). The Supreme Court

has recognized that, given the Administrator's role in administering and enforcing the FLSA, her

"rulings, interpretations and opinions … constitute a body of experience and informed

judgment." *Skidmore*, 323 U.S. at 140. Administrator Looman's promulgation of the 2024 Rule

was therefore a lawful exercise of her authority to issue interpretive rules.

Plaintiff fails to recognize that Administrator Looman lawfully promulgated the 2024 Rule and instead asserts that Acting Secretary Su "could not properly exercise authority" to do so. PMSJ 33. That assertion is irrelevant. To the extent Plaintiff means to suggest that any defect in Acting Secretary Su's authority nevertheless tainted the 2024 Rule, Plaintiff "cite[s] no authority—nor could [it]—for [a] root-to-branch theory" that the Rule is unlawful. *United States v. Smith*, 962 F.3d 755, 765-66 (4th Cir. 2020); *see also United States v. Gomez*, 2024 WL 1620392, at *4 (D.V.I. Apr. 15, 2024) (characterizing the argument that, given a defect in the appointment of the Acting Secretary of Homeland Security, "no decision by a single member of [DHS's sub-agencies] should have any force or effect," as "nonsensical"). Plaintiff's arguments about Acting Secretary Su's authority therefore provide no basis for invalidating the 2024 Rule.

### 2.    Acting Secretary Su's appointment is lawful.

Even if Acting Secretary Su's authority were somehow relevant to the validity of the 2024 Rule, she lawfully performs the duties of the Secretary under 29 U.S.C. § 552. Section 552 provides that the office of the Deputy Secretary "shall be filled by appointment by the President, by and with the advice and consent of the Senate," and that, when the office of the Secretary is vacant, the Deputy Secretary "shall perform … the duties of the Secretary until a successor is appointed." In 2021, consistent with the Appointments Clause and with § 552, Acting Secretary Su was nominated by the President and confirmed by the Senate as Deputy Secretary. 167 Cong. Rec. S4843 (daily ed. July 13, 2021). After Secretary Marty Walsh resigned in March 2023, Acting Secretary Su began duly performing the duties of the Secretary—just as Congress implicitly acknowledged that she could when confirming her as Deputy Secretary. As multiple federal courts have held, Acting Secretary Su continues to lawfully exercise this authority pursuant to 29 U.S.C.

§ 552, because a Secretary has not yet been appointed. *See Su v. WiCare Home Care Agency, LLC*, 2024 WL 3598826, at *17 (M.D. Pa. July 31, 2024); *Su v. Starbucks Corp.*, 697 F. Supp. 3d 1078, 1082 (W.D. Wash. 2023); *cf. Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1128-29 (D. Mont. 2020) (noting, in contrast, that "[t]he agency's statute provides no independent means to temporarily fill the role") (cited at PMSJ 33).

Section 552 conflicts with neither the Federal Vacancies Reform Act nor the Appointments Clause. *Contra* PMSJ 32-33. The FVRA expressly "retain[s]" other statutory provisions, including § 552, S. Rep. No. 105-250, at 16 (1998), that "designate[] an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1). Section 552 does just that: it allows the Deputy Secretary to act as Secretary "until a successor is appointed." Plaintiff's supposition that the Department intends for Acting Secretary Su to serve "indefinitely," PMSJ 32, is an effort to engraft specific time limits on § 552 that its text does not contain. Even if the FVRA's time limits were applicable, Acting Secretary Su was renominated for Secretary on January 8, 2024, *see* 170 Cong. Rec. S1011 (daily ed. Feb. 27, 2024), and so the Rule's issuance just two days later, *see* 89 Fed. Reg. 1638-01, easily fell within the FVRA's time limits, *see* 5 U.S.C. § 3346(b)(2)(B). Nor does § 552 violate the Appointments Clause: "the Supreme Court has held and subsequently reaffirmed that an official designated to perform the duties of a principal office temporarily, on an acting basis, need not undergo Senate confirmation." *Guedes v. ATF*, 356 F. Supp. 3d 109, 148 (D.D.C. 2019) (collecting over a century of precedent). Given that Acting Secretary Su *was* confirmed to her position as Deputy Secretary and is performing the duties of that position as authorized by Congress, her service is plainly lawful.

33

**III.    To the extent Plaintiff is entitled to any relief, the Court should either remand the matter to the Department without vacatur or enter a limited injunction.**

Even if the Court rules for Plaintiff on any of its claims, the Court should decline to grant Plaintiff's request for the extraordinary relief of universal vacatur of the entire 2024 Rule. *Contra* PMSJ 33-34. As an initial matter, § 706(2) of the APA (which Plaintiff cites) does not even mention, let alone authorize, a remedy called "vacatur." *Contra* PMSJ 33. Section 706(2) does not address remedies at all. Rather, § 706(2) is properly understood as a rule of decision directing the court to disregard unlawful "agency action, findings, and conclusions" in resolving the case before it. Universal vacatur is therefore not an available remedy under the APA. *See United States v. Texas*, 599 U.S. 670, 693-702 (2023) (Gorsuch, J., concurring in the judgment).

To the extent vacatur is available, it is not appropriate here. As Plaintiff notes, the Tenth Circuit treats "vacatur" as "a form of injunctive relief" governed by equitable principles. *N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1029 (D.N.M. 2020) (quoting *WildEarth Guardians v. BLM*, 870 F.3d 1222, 1239 (10th Cir. 2017)), *aff'd*, 30 F.4th 1210 (10th Cir. 2022). Plaintiff also concedes that remand without vacatur is appropriate "where the agency could 'substantiate its decision on remand' and vacatur would be 'quite disruptive.'" PMSJ 33 (quoting *N.M. Health Conns. v. HHS*, 340 F. Supp. 3d 1112, 1177 (D.N.M. 2018)).

At most, remand without vacatur or a limited injunction is appropriate in this case (if the Court rules for Plaintiff). Although Plaintiff asserts that the 2024 Rule is unsalvageable because it is "contrary to law," a careful review of Plaintiff's APA claims reveals that they all deal with purported deficiencies in how the Department explained its reasoning: e.g., how the Department articulated its decision to withdraw the 2021 Rule, *see* PMSJ 13-19, its explanation of the economic reality factors, *see id.* at 19-23, and how it assessed the costs of the 2024 Rule, *see id.*

at 23-25, 26-31. "When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied-Signal* counsels remand without vacatur." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009). Vacating the 2024 Rule while the Department corrects any errors would also be disruptive for employers and workers nationwide.

Regardless of the specific form of relief, a federal court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," and so "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 72-73 (2018). That principle has two implications in this case. First, the Court should give effect to the 2024 Rule's severability clause, *see* 29 C.F.R. § 795.115; 89 Fed. Reg. at 1724-25, and the "strong presumption of severability," *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625 (2020) (plurality), by severing any unlawful provisions from the remainder of the 2024 Rule and from the Department's independent decision to rescind the 2021 Rule. Second, the Court should only enjoin the Department from applying the relevant provisions of the 2024 Rule to Plaintiff, which is all that is needed to "redress" Plaintiff's "particular injury." *Gill*, 585 U.S. at 72-73. To do any more would "sweep up nonparties who may not wish to receive the benefit of the court's decision" and encroach upon the authority of the other courts considering the 2024 Rule. *Texas*, 599 U.S. at 702-03 (Gorsuch, J., concurring in the judgment); *see supra* note 1. In any event, the 2024 Rule is lawful in all respects.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for summary judgment and dismiss this case or, in the alternative, enter judgment for the Department.

Dated: August 30, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ John T. Lewis*
JOHN T. LEWIS (D.C. Bar No. 1033826)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2024, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ John T. Lewis*
John T. Lewis