IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

COLT & JOE TRUCKING LLC,

    Plaintiff,

v.                                          Case No. 1:24-cv-00391-KWR-GBW

U.S. DEPARTMENT OF LABOR, *et al.*,

    Defendants.

**BRIEF OF AMICI CURIAE NATIONAL EMPLOYMENT LAW PROJECT AND PUBLIC CITIZEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Christopher Benoit  
New Mexico Bar No. 15097  
Benoit Legal PLLC  
311 Montana Avenue, Ste. B  
El Paso, TX 79902  
(915) 532-5544  
chris@coylefirm.com

Adam R. Pulver  
DC Bar No. 1020475  
(*pro hac vice* motion forthcoming)  
Public Citizen Litigation Group  
1600 20th Street NW  
Washington, DC 20009  
(202) 588-1000  
apulver@citizen.org

*Attorneys for Amici Curiae*

September 3, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

INTERESTS OF AMICI CURIAE ................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

    I.   Worker misclassification is a persistent, serious problem. .................................................. 4

    II.  The 2024 Rule is a reasonable, lawful step to eliminate the increased risk of worker misclassification created by the 2021 Rule. ........................................................................ 7

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Jani-King of Oklahoma, Inc.*,
  905 F.3d 1156 (10th Cir. 2018) ................................................................................... 1, 11

*Baker v. Flint Engineering & Construction Co.*,
  137 F.3d 1436 (10th Cir. 1998) ......................................................................................... 1

*Dolan v. U.S. Postal Service*,
  546 U.S. 481 (2006) .......................................................................................................... 7

*Dole v. Snell*,
  875 F.2d 802 (10th Cir. 1989) ..................................................................................... 2, 11

*Doty v. Elias*,
  733 F.2d 720 (10th Cir. 1984) ........................................................................................... 8

*Encino Motorcars, LLC v. Navarro*,
  584 U.S. 79 (2018) ............................................................................................................ 8

*Johnson v. Unified Government of Wyandotte County/Kansas City*,
  371 F.3d 723 (10th Cir. 2004) ................................................................................. 1, 2, 11

*Kenney v. Helix TCS, Inc.*,
  939 F.3d 1106 (10th Cir. 2019) ......................................................................................... 7

*Nationwide Mutual Insurance Co. v. Darden*,
  503 U.S. 318 (1992) ..................................................................................................... 1, 4

*Oestman v. National Farmers Union Insurance Co.*,
  958 F.2d 303 (10th Cir. 1992) ....................................................................................... 8, 9

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947) .......................................................................................................... 4

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308 (11th Cir. 2013) ....................................................................................... 11

*Secretary of Labor v. Lauritzen*,
  835 F.2d 1529 (7th Cir. 1987) ......................................................................................... 12

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
  471 U.S. 290 (1985) .......................................................................................................... 6

*United States v. Brown*,
   974 F.3d 1137 (10th Cir. 2020) ................................................................................... 7

*United States v. Ko*,
   739 F.3d 558 (10th Cir. 2014) ..................................................................................... 7

*United States v. Rosenwasser*,
   323 U.S. 360 (1945) ................................................................................................ 1, 4

*Usery v. Pilgrim Equipment Co.*,
   527 F.2d 1308 (5th Cir. 1976) ............................................................................. 11, 12

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947) ..................................................................................................... 8

**Statutes**

29 U.S.C. § 202(a) ............................................................................................................ 4, 6

29 U.S.C. §§ 203(g), (e) ....................................................................................................... 4

**Rules and Regulations**

29 C.F.R. §§ 795.105(c)–(d) (2021) .................................................................................... 2

29 C.F.R. § 795.110 ............................................................................................................ 2

Department of Labor, Final Rule, Employee or Independent Contractor Classification Under the Fair Labor Standards Act,
   89 Fed. Reg. 1638 (Jan. 10, 2024) ...................................................... 2, 4, 5, 6, 7, 8, 9, 10, 11, 12

Department of Labor, Final Rule, Independent Contractor Status Under the Fair Labor Standards Act,
   86 Fed. Reg. 1168 (Jan. 7, 2021) ............................................................................. 1, 2, 10, 11

**Other Authorities**

Comments on RIN 1235-AA43, Employee or Independent Contractor Classification Under the Fair Labor Standards Act:

   Center for Law & Social Policy and Governing for Impact, Comments Regarding DOL's Notice of Proposed Rulemaking on the Employee or Independent Contractor Classification Under the Fair Labor Standards Act, RIN 1235-AA43
      (Dec. 12, 2022),  https://www.regulations.gov/comment/WHD-2022-0003-53600 ............... 9

International Ass'n of Machinists & Aerospace Workers, AFL-CIO, Comments on RIN 1235-AA43, Employee or Independent Contractor Classification Under the Fair Labor Standards Act (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53353 ............................................................................................................................ 6

Lawyers' Committee for Civil Rights Under Law and the Washington Lawyers' Committee for Civil Rights and Urban Affairs, Comments on RIN 1235-AA43: Employee or Independent Contractor Classification under the Fair Labor Standards Act (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-52420 ..................................... 8, 10

National Employment Law Project, Comments on RIN 1235-AA43: Employee or Independent Contractor Classification Under the Fair Labor Standards Act (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53881 ........................................ 5, 7

Signatory Wall & Ceiling Contractors Alliance, Comments on Proposed Rule Regarding "Employee or Independent Contractor Classification Under the Fair Labor Standards Act" (RIN 1235-AA43) (Nov. 4, 2022), https://www.regulations.gov/comment/WHD-2022-0003-15886 ............................................................................................................................. 5, 9

United Brotherhood of Carpenters & Joiners of America, Comments, Employee or Independent Contractor Classification Under the Fair Labor Standards Act (RIN 1235-AA43) (Dec. 1, 2022), https://www.regulations.gov/comment/WHD-2022-0003-44589 ........................................... 9

Françoise Carré, Economic Policy Institute, *(In)Dependent Contractor Misclassification*, (Jun. 8, 2015), https://files.epi.org/pdf/87595.pdf ............................................................................... 6

Department of Labor, Wage & Hour Division, "Low Wage, High Violation Industries," https://www.dol.gov/agencies/whd/data/charts/low-wage-high-violation-industries .................. 5

Treasury Inspector General for Tax Administration, *Additional Actions Are Needed to Make the Worker Misclassification Initiative with the Department of Labor a Success*, 2018-IE-R002 (Feb. 20, 2018), https://www.tigta.gov/sites/default/files/reports/2022-02/2018IER002fr.pdf . 6

**INTRODUCTION**

The Fair Labor Standards Act (FLSA) provides vital minimum wage, overtime, and other protections to "employees" and vests authority in the Wage and Hour Administrator, a Department of Labor (DOL) official, to administer the law. Since the FLSA's enactment in 1938, disputes have arisen over whether certain workers are "employees," who are protected by the statute, or are instead "independent contractors," who are not. In resolving such disputes, courts, including the Supreme Court, have relied on the fact that the statutory definition of the term "employee" under the FLSA is one of "striking breadth"—indeed, broader than the definition of that term under other statutes and the common law. *See*, *e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *United States v. Rosenwasser*, 323 U.S. 360, 362, 363 n.3 (1945).

Recognizing the breadth of the term "employee," both the courts and DOL for decades agreed that whether a worker is an employee or an independent contractor should be analyzed using a holistic assessment of the "economic realities" and considering a non-exhaustive list of factors, without placing a thumb on the scale for any particular factor. *See*, *e.g.*, *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1159–60 (10th Cir. 2018) (collecting cases and recognizing "well settled" framework); *Johnson v. Unified Gov't of Wyandotte Cnty./Kan. City, Kansas*, 371 F.3d 723, 729 (10th Cir. 2004) (identifying factors and recognizing that "[n]one of the factors is to be considered dispositive; the test is instead based on the totality of the circumstances"); *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998) (similar).

In 2021, DOL issued a new interpretation that departed from this longstanding approach and, in doing so, created employer confusion and risked worsening the problem of worker misclassification. *See* DOL, Final Rule, Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1168 (Jan. 7, 2021). The 2021 Rule, confusingly and for the first time,

1

divided the relevant factors into "core" factors and "other" factors to be considered. *Id.* at 1246–47 (29 C.F.R. §§ 795.105(c)–(d) (2021)). While stating that these factors were "not exhaustive, and no single factor [was] dispositive," DOL stated that the "core" factors—"[t]he nature and degree of control over the work," and "[t]he individual's opportunity for profit or loss"—were "most probative" and suggested that, "if they both point towards the same classification," it was "highly unlikely" other factors were relevant. *Id.* at 1246 (29 C.F.R. §§ 795.105(c)–(d)(1) (2021)).

In 2024, after a notice-and-comment process, DOL turned away from this "core"/"other" framework and returned to the holistic approach that it and courts had taken for decades—finding such an approach more consistent with the statute. *See* DOL, Final Rule, Employee or Independent Contractor Classification Under the Fair Labor Standards Act, 89 Fed. Reg. 1638 (Jan. 10, 2024), *codified at* 29 C.F.R. parts 780, 788, 795. The 2024 Rule identifies six non-exhaustive factors that "should guide an assessment of the economic realities of the working relationship and the question of economic dependence" as part of a "totality-of-the-circumstances analysis," with "no one factor or subset of factors … necessarily dispositive" and where "the weight to give each factor may depend on the facts and circumstances of the particular relationship." *Id.* at 1742 (29 C.F.R. § 795.110(a)(2)). This approach is consistent with the courts' and DOL's longstanding view that, to determine employee status under the FLSA, "the focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself.'" *Johnson*, 371 F.3d at 729 (cleaned up; quoting *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989)); *see also* 89 Fed. Reg. at 1715 (discussing case law and the agency's historical approach).

DOL's decision to return to a standard consistent with the statutory text, and with precedent from the Supreme Court, Tenth Circuit, and other courts, was a reasoned approach to the well-

documented problem of worker misclassification and to concerns that the 2021 Rule would worsen that problem. As DOL explained, the 2021 Rule allowed employers to make cosmetic changes to remove workers from the scope of the FLSA and its protections, without actually altering the economic realities. Moreover, as confirmed by comments submitted during the rulemaking and by Plaintiff's own declaration, employers misunderstood, and thus were misapplying, the 2021 Rule, as a result of which workers were wrongfully deprived of statutory protections. For these reasons, the 2024 Rule is neither arbitrary and capricious, nor contrary to law.

## INTERESTS OF AMICI CURIAE

Amicus curiae National Employment Law Project (NELP) is a non-profit legal organization with over fifty years of experience advocating for the employment rights of workers in low-wage industries. NELP seeks to ensure that all employees receive the workplace protections guaranteed in our nation's labor and employment laws, and that all employers comply with those laws, including the child labor, minimum wage, and overtime protections of the FLSA. NELP has litigated directly on behalf of workers misclassified as "independent contractors," submitted amicus briefs in numerous independent contractor cases, testified to Congress regarding the importance and scope of the FLSA's employment coverage, and is an expert in independent contractor misclassification, its magnitude, and its impacts. NELP submitted comments in the rulemaking at issue in this case, and also in the rulemaking that led to the 2021 Rule.

Amicus curiae Public Citizen, a non-profit organization with members in all fifty states, appears before Congress, agencies, and courts on a wide range of issues. Among other things, Public Citizen works for enactment and enforcement of laws to protect workers, consumers, and the public, including by supporting federal agency efforts to administer and enforce worker

protection statutes such as the FLSA. Public Citizen frequently appears as amicus curiae to address issues of statutory interpretation and administrative law.

## ARGUMENT

Because the 2021 Rule risked exacerbating worker misclassification and stripping low-paid workers of the bedrock wage protections afforded by the FLSA, DOL had good reason to rescind the 2021 Rule and restore the established understanding of this important law.

**I.    Worker misclassification is a persistent, serious problem.**

Congress enacted the FLSA to combat "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). It did so by providing minimum standards that govern employment, and by adopting broad definitions as to the scope of the covered relationship—defining "employ" as "to suffer or permit to work," *id.* § 203(g), and an "employee" as "any individual employed by an employer," *id.* §203(e)(1). These definitions, borrowed from child labor laws, reflect a "striking breadth" that "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Darden*, 503 U.S. at 326 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)); *see also Rosenwasser*, 323 U.S. at 362 ("A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame."); 89 Fed. Reg. at 1640 (discussing the breadth of the statutory definition).

Despite the breadth of the statutory text and the statute's purpose, many employers have misclassified workers as "independent contractors." 89 Fed. Reg. at 1656 (citing studies and data); *id*. ("The misclassification of employees as independent contractors is occurring with increased frequency as workplaces fissure, and firms outsource bigger and bigger portions of their

4

workforces to other entities and to workers themselves." (quoting comment; cleaned up)). Opponents of the 2024 Rule, including employer representatives, conceded this much, "acknowledg[ing] that 'independent contractor status can be abused'" and "that worker misclassification is a pressing issue to be solved at the Federal level." *Id.* at 1657 (quoting comments).

Misclassification both harms workers themselves, denying them the minimum wage, child labor, and overtime protections of the FLSA, and creates competitive advantages over businesses that provide their workers with the benefits Congress directed they provide. *Id.* at 1647, 1657. Workers misclassified as "self-employed" earn significantly less than their employee counterparts and are also more likely to be the victims of wage theft.[1] DOL has found that wage theft is prevalent in the agricultural, retail, food service, hotel, construction, janitorial, landscaping, and beauty and nail salon industries where misclassification is common.[2] *See also* 89 Fed. Reg. at 1656–57 (discussing comments as to prevalence of misclassification in certain industries). One construction employer group, for example, estimated that 20 percent of construction workers are misclassified, resulting in a loss of "close to $1 billion in wages annually."[3] Misclassified workers are also wrongfully denied FLSA-mandated break time to pump breast milk and face a variety of other consequences beyond those directly related to the statute, including "decreased access to

---

[1] NELP, Comments on RIN 1235-AA43: Employee or Independent Contractor Classification Under the Fair Labor Standards Act, at 4 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53881 (citing sources).

[2] DOL, Wage & Hour Div., "Low Wage, High Violation Industries," https://www.dol.gov/agencies/whd/data/charts/low-wage-high-violation-industries.

[3] Signatory Wall & Ceiling Contractors All. (SWACCA), Comments on Proposed Rule Regarding "Employee or Independent Contractor Classification Under the Fair Labor Standards Act" (RIN 1235-AA43), at 8 (Nov. 4, 2022), https://www.regulations.gov/comment/WHD-2022-0003-15886 (quoted in 89 Fed. Reg. at 1657).

5

employment benefits such as health insurance or retirement benefits, inability to access paid sick leave, unemployment insurance, and worker's compensation, a lack of ability to take collective action to improve workplace conditions, and a lack of anti-discrimination protections under various civil rights laws." 89 Fed. Reg. at 1657. Misclassification is particularly pervasive in low-wage, labor-intensive industries, where workers of color and immigrants are overrepresented. *Id.*

Misclassification of employees as independent contractors also places law-abiding businesses at a competitive disadvantage, in direct contravention of the statute's purpose to combat unfair competition, 29 U.S.C. § 202(a).[4] *See Tony & Susan Alamo Fdn. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) (noting impact of misclassification of workers on competing businesses). Businesses that misclassify their employees pocket between 20 to 40 percent of the payroll costs that they would otherwise incur for unemployment insurance, worker's compensation premiums, the employer share of social security, and health insurance premiums.[5] Such savings thus "create[] perverse incentives for companies to misclassify workers," leading to a "race to the bottom."[6]

Misclassification also imposes huge costs on federal and state governments, which lose billions of dollars each year in unreported payroll taxes and unemployment insurance contributions.[7]

---

[4] Treasury Inspector General for Tax Administration, *Additional Actions Are Needed to Make the Worker Misclassification Initiative with the Department of Labor a Success* at 1, 2018-IE-R002 (Feb. 20, 2018), https://www.tigta.gov/sites/default/files/reports/2022-02/2018IER002fr.pdf; *see* 89 Fed. Reg. at 1646–47.

[5] Françoise Carré, Econ. Pol'y Inst., *(In)Dependent Contractor Misclassification*, at 5 (Jun. 8, 2015), https://files.epi.org/pdf/87595.pdf.

[6] Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO (IAM), Comments on RIN 1235-AA43, Employee or Independent Contractor Classification Under the Fair Labor Standards Act, at 4 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53353 (citation omitted) (quoted in 89 Fed. Reg. at 1657).

[7] NELP Comments at 6–7.

6

**II.   The 2024 Rule is a reasonable, lawful step to eliminate the increased risk of worker misclassification created by the 2021 Rule.**

DOL explained its rescission of the 2021 Rule in part by discussing concerns that the 2021 Rule would lead to increases in worker misclassification, depriving workers of the wages Congress intended they be paid. *See*, *e.g.*, 89 Fed. Reg. at 1656–68. These concerns, supported by the record, provide an appropriate reason for DOL to shift course from the 2021 Rule, and return to the holistic test that is enshrined in well-established judicial and agency precedent, and that is consistent with the statute.

First, Plaintiff is wrong to suggest that, in returning to the holistic test, DOL improperly expanded the statute beyond a fair reading by considering the "purpose" and "intent" behind the statute. ECF 22 at 18–19. Rather, consideration of whether DOL's stated reading of the statute would advance or impede Congress's purpose reflects basic principles of statutory interpretation and administrative law; "[p]roper interpretation of a word 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedent or authorities that inform the analysis.'" *United States v. Ko*, 739 F.3d 558, 560 (10th Cir. 2014) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)); *see also United States v. Brown*, 974 F.3d 1137, 1142 (10th Cir. 2020) (looking to a "statute's structure, context, purpose, and history to discern congressional intent"); *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1112 n.3 (10th Cir. 2019) (considering FLSA's "purposes" and "goals" in analyzing statutory provision). Thus, although DOL could not rely on the FLSA's purpose to give the statutory text "anything but a fair reading," *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018), it was appropriate for DOL to look to the statutory purpose in discerning how to give meaning to the statutory phrase "suffer or permit to work."

Second, DOL's conclusion that the 2021 Rule created "an increased risk of FLSA-covered employees being misclassified as independent contractors," 89 Fed. Reg. at 1647, was well supported by the record. *See also id*. at 1657–58 (summarizing comments). By shifting the focus away from the totality of the circumstances and focusing on two narrow factors, the 2021 Rule made it easy for employers to exclude workers from coverage with minor, cosmetic changes to the employer-employee relationship—changes that would not have been enough under the broader multi-factor test long applied by courts. The 2021 Rule's focus on control in particular created opportunities for evasion; "[i]n many low-wage industries, it is common for businesses to delegate or relinquish direct or 'actual' control in order to create the illusion of independent contractor status, while maintaining authority over the important terms of the working relationship."[8] As DOL noted, "elevating the importance of control in every FLSA employee or independent contractor analysis brought the 2021 Rule closer to the common law control test that courts have rejected when interpreting the Act." 89 Fed. Reg. at 1652–53; *see also Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) ("[I]n determining who are 'employees' under the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance."); *Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984) (rejecting emphasis on control in determining whether workers were employees); *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992) (distinguishing between "economic realities" test applied under FLSA and common law "control test").

---

[8] Lawyers' Comm. for Civil Rights Under Law and the Wash. Lawyers' Comm. for Civil Rights & Urban Affs. (Lawyers' Committee), Comments on RIN 1235-AA43: Employee or Independent Contractor Classification under the Fair Labor Standards Act, at 4 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-52420; *see also* 89 Fed. Reg. at 1652 (discussing comments raising this concern).

DOL's concern was validated by stakeholders who, based on their experiences and knowledge, believed that the 2021 Rule would result in increased misclassification. Commenters identified several specific industries where the 2021 Rule posed such risks. *See* 89 Fed. Reg. at 1656–57 (discussing such comments). For one, farmworkers were particularly vulnerable to misclassification under the 2021 Rule, as their employment status is particularly dependent on "special skill" and "integral part of the putative employer's business" factors.[9] "De-emphasizing them in favor of the 'core factors,'" as the 2021 Rule did, "would make it more difficult to determine the status of farmworkers and incentivize farm operators to adopt more exploitative working arrangements like sharecropping."[10] The 2021 Rule also posed an increased risk of misclassification for construction workers, as explained by both employer and worker groups based on their knowledge of the industry, as employers were likely to seize upon the 2021 Rule's departures from the broader multi-factor test "to gain or solidify a competitive advantage."[11] In addition to these industry-specific concerns, commenters provided specific examples of workers who would be harmed by the 2021 Rule and its focus on isolated factors. Commenters also provided specific examples of workers who would be more likely to be misclassified under the 2021 Rule.[12]

---

[9] Ctr. for Law & Social Pol'y (CLASP) and Governing for Impact (GFI), Comments Regarding DOL's Notice of Proposed Rulemaking on the Employee or Independent Contractor Classification Under the Fair Labor Standards Act, RIN 1235-AA43, at 5 (Dec. 12, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53600.

[10] *Id.* (citation omitted), *cited in* 89 Fed. Reg. at 1657.

[11] SWACCA Comments at 6; *see also* United Bhd. of Carpenters & Joiners of Am., Comments, Employee or Independent Contractor Classification Under the Fair Labor Standards Act (RIN 1235-AA43), at 4–5 (Dec. 1, 2022), https://www.regulations.gov/comment/WHD-2022-0003-44589 (explaining how 2021 Rule would lead to increased misclassification in the construction industry).

[12] *See, e.g.*, Lawyers' Committee Comments at 4–5.

9

Third, DOL's conclusion that the 2021 Rule was confusing to employers is well supported by the record. As DOL explained, "[b]y elevating certain factors, devaluing other factors, and precluding the consideration of certain relevant facts," the 2021 Rule "may have led employers to believe the test no longer includes as many considerations." 89 Fed. Reg. at 1658. The employers' "confusion and misapplication of [the 2021 Rule] could deprive many workers of protections they are entitled to under the FLSA." *Id*. As DOL explained, this confusion was clear from the fact that employer commenters who were in favor of the 2021 Rule themselves expressed different understandings of what that Rule actually meant. *See id.* at 1656. For example, some commenters (incorrectly) viewed the 2021 Rule as not requiring consideration of factors other than the two factors identified by the agency as "core," except where those two factors pointed in different directions; others viewed the Rule as not requiring consideration of the other factors at all. *See id.* (discussing comments). Other commenters viewed the 2021 Rule as codifying the common-law test, contrary to the statute and despite DOL's insistence in the 2021 Rule that its "standard for employment remains broader than the common law." 86 Fed. Reg. at 1201; *see* 89 Fed. Reg. at 1656. Given that so many employer commenters did not actually understand what the 2021 Rule required, the fact that employer groups "overwhelmingly opposed [the 2021 Rule's] rescission" does not, as Plaintiff suggests, ECF 22 at 31, mean that the 2021 Rule was not confusing.

Indeed, Plaintiff itself appears to be confused by the 2021 Rule. In its declaration, Plaintiff states that, under the 2021 Rule, it could "be assured that owner-operators it hires are independent contractors if they control the key aspects of the work and have an opportunity for profit." ECF 22-1 at ¶ 8; *see also* ECF 22 at 8 (asserting that, under 2021 Rule, Plaintiff need only "ensure independent drivers it hires satisfy the two core factors"). But, on its face, the 2021 Rule did not provide any such assurances. To the contrary, the Rule specified that these two factors were not

10

dispositive, but only that, if they were satisfied, it was "highly unlikely" that a worker was an employee. 86 Fed. Reg. at 1246. That Plaintiff, represented by counsel, is under the misapprehension that the control and profit factors were dispositive under the 2021 Rule reinforces the validity of DOL's conclusion that the 2021 Rule was confusing.

Finally, Plaintiff's argument that a totality-of-the-circumstances test is too "freewheeling" and "amorphous" to apply, *see, e.g.*, ECF 22 at 2, 23–25, is undercut by decades of judicial and agency precedent. For decades, both DOL and courts have recognized that the ultimate question to be answered is whether a worker is running an independent business or is dependent on finding work in the business of another. *See Jani-King*, 905 F.3d at 1159 (summarizing "well settled" approach); *Johnson*, 371 F.3d at 729 (holding that "the focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself" (cleaned up; quoting *Dole*, 875 F.2d at 804)); 89 Fed. Reg. at 1716 (explaining that this approach "has been the approach of the courts and the Department for decades"). By the same token, courts and DOL have long recognized that specified factors are "tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976); *see, e.g., Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013) (noting courts' use of factors as a guide); 89 Fed. Reg. at 1642–43 (noting use of multi-factor analysis to determine whether a worker is economically dependent on the employer for work or is in business for themselves). Far from "freewheeling," the factors are tethered to and informed by the ultimate inquiry. *See Pilgrim Equip.*, 527 F.2d at 1311 (holding that the factors "must be applied with that ultimate notion [of economic dependence] in mind"); *Sec'y of Lab. v. Lauritzen*, 835 F.2d 1529, 1538 (7th Cir. 1987) (holding that "[e]conomic dependence is … the focus of all the other

11

considerations"). The 2024 Rule's recognition of specific, though non-exhaustive and non-dispositive, factors to guide the economic dependence inquiry is consistent with this long-standing approach. And "[t]here is no basis for the concern that the retention of a regulatory provision stating what courts, the Department, and the regulated community have understood to be part of the economic reality test under the FLSA for over 75 years will result in confusion and uncertainty as opposed to consistency and familiarity." 89 Fed. Reg. at 1716.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' opposition and cross-motion, Plaintiff's motion for summary judgment should be denied, and Defendants' cross-motion for summary judgment should be granted.

Dated: September 3, 2024                                   Respectfully submitted,

                                                           */s/ Christopher Benoit*

Adam R. Pulver                                             Christopher Benoit
DC Bar No. 1020475                                         New Mexico Bar No. 15097
(*pro hac vice* motion forthcoming)                        Benoit Legal PLLC
Public Citizen Litigation Group                            311 Montana Avenue, Ste. B
1600 20th Street NW                                        El Paso, TX 79902
Washington, DC 20009                                       (915) 532-5544
(202) 588-1000                                             chris@coylefirm.com
apulver@citizen.org

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I filed the foregoing document electronically via the Court's CM/ECF filing system, causing a copy of it to be served on all counsel of record.

/s/ *Christopher Benoit*
Christopher Benoit

September 3, 2024