# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

COLT & JOE TRUCKING LLC,

      Plaintiff,

v.                                                                      Case No. 1:24-cv-00391-KWR-GBW

U.S. DEPARTMENT OF LABOR; JULIE
SU, Acting Secretary, U.S. Department of
Labor, in her official capacity; JESSICA
LOOMAN, Administrator, Wage and Hour
Division, U.S. Department of Labor, in her
official capacity;

      Defendants.

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND REPLY <u>IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION .............................................................................................................1

ARGUMENT......................................................................................................................3

    I.   Plaintiff Has Standing to Challenge the 2024 Rule................................................3

        A.    Plaintiff Has Standing as the Object of the Regulation ...................................3

        B.    Plaintiff Alleges Concrete Injuries that Are Traceable to the 2024 Rule and
            Redressable by its Vacatur....................................................................................4

    II.  The Recission of the 2021 Rule Was Contrary to Law Because It Was Based
        on the Faulty Legal Premise that the Rule Violated the FLSA ...............................9

        A.    DOL Still Does Not Meaningfully Dispute that Control and Opportunity Are
            More Probative as a Matter of Practice and Common Sense .............................9

        B.    The FLSA's Text Does Not Prohibit DOL from Recognizing That Control and
            Opportunity for Profit Are More Probative .....................................................11

        C.    Supreme Court Precedent Does Not Prohibit DOL from Recognizing That
            Control and Opportunity Are More Probative .................................................12

        D.    Lower Court Precedent Does Not Prohibit DOL from Telling Employers That
            Control and Opportunity Are Most Probative .................................................14

        E.    DOL Improperly Relied on the FLSA's Purported Remedial Purpose .....................15

    III.  The 2024 Rule Exceeds DOL's Authority by Tilting Economic Reality
         Factors In Favor of Employee Classification ......................................................15

         A.    DOL Improperly Tilts the Control Factor to Disfavor Independent
            Contracting.............................................................................................................16

        B.    Replacing the "Integrated Unit" Factor with "Integral Parts" Is Unlawful................17

        C.    The 2024 Rule's Investment Factor Contradicts Supreme Court Precedent .............18

    IV.  The 2024 Rule Is Arbitrary and Capricious Because It Exacerbates
         Regulatory Confusion ..........................................................................................19

    V.   The 2024 Rule's Cost-Benefit Analysis Is Arbitrary and Capricious ......................22

    VI.  The Acting Secretary Was Not Properly Appointed......................................................23

    VII.  Vacatur Is the Proper Remedy ..................................................................................25

CONCLUSION................................................................................................................25

CERTIFICATE OF SERVICE .......................................................................................27

# TABLE OF AUTHORITIES

**Pages(s)**

## CASES

*Am. Farm Bureau Fed'n v. EPA,*
  792 F.3d 281 (3d Cir. 2015) ........................................................................................4

*Ass'n of Civilian Technicians v. FLRA,*
  353 F.3d 46 (D.C. Cir. 2004) ......................................................................................16

*Baker v. Flint Eng'g & Const. Co.,*
  137 F.3d 1436 (10th Cir. 1998) ......................................................................14, 18, 19

*Brock v. Superior Care, Inc.,*
  840 F.2d 1054 (2d Cir. 1988) ...............................................................................14, 16

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .....................................................................................................7

*Coal. for Workforce Innovation v. Walsh,*
  No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. March 14, 2022) ................19, 20, 22

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.,*
  779 F.3d 258 (5th Cir. 2015) ......................................................................................4

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
  144 S. Ct. 2440 (2024) ...............................................................................................25

*Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r,*
  187 F.2d 789 (3d Cir. 1951) ......................................................................................25

*Encino Motorcars, LLC v. Navarro,*
  584 U.S. 79 (2018) .....................................................................................................15

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ...................................................................................................21

*FEC v. Cruz,*
  596 U.S. 289 (2022) .................................................................................................5, 7

*Fish v. Schwab,*
  957 F.3d 1105 (10th Cir. 2020) ...................................................................................7

*Goldberg v. Whitaker House Co-op., Inc.,*
  366 U.S. 28 (1961) ...............................................................................................13, 20

*Henthorn v. Dep't of Navy,*
  29 F.3d 682 (D.C. Cir. 1994) ....................................................................................11

*Hernandez v. Plastipak Packaging, Inc.,*
  15 F.4th 1321 (11th Cir. 2021) ..................................................................................15

*Hopkins v. Cornerstone America.,*
  545 F.3d 338 (5th Cir. 2008) ................................................................................16, 21

*Interstate Nat. Gas Ass'n of Am. v. Pipeline & Hazardous Materials Safety Admin.*,
   No. 23-1173, --- F.4th ---, 2024 WL 3837458 (D.C. Cir. Aug. 16, 2024) .................................... 22, 23

*Karlson v. Action Process Serv. & Priv. Investigations, LLC*,
   860 F.3d 1089 (8th Cir. 2017) ..........................................................................................................21

*Kenney v. Helix TCS, Inc.*,
   939 F.3d 1106 (10th Cir. 2019) ........................................................................................................15

*Levorsen v. Octapharma Plasma, Inc.*,
   828 F.3d 1227 (10th Cir. 2016) ........................................................................................................11

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024) ..........................................................................................................9, 15, 22

*Louisiana v. EEOC*,
   705 F. Supp. 3d 643 (W.D. La. 2024) ................................................................................................3

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*,
   60 F.4th 956 (5th Cir. 2023) ............................................................................................................22

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................................................17

*N.M. Health Connections v. HHS*,
   340 F. Supp. 3d 1112 (D.N.M. 2018) ..............................................................................................25

*Nat'l Ass'n of Mfrs. v. SEC*,
   105 F.4th 802 (5th Cir. 2024) ..........................................................................................................22

*Nationwide Mut. Ins. Co. v. Darden*,
   503 U.S. 318 (1992) ..........................................................................................................................12

*Ndambi v. CoreCivic, Inc.*,
   990 F.3d 369 (4th Cir. 2021) ............................................................................................................11

*North Carolina Growers' Ass'n, Inc. v. United Farm Workers*,
   702 F.3d 755 (4th Cir. 2012) ............................................................................................................22

*Parrish v. Premier Directional Drilling, L.P.*,
   917 F.3d 369 (5th Cir. 2019) ......................................................................................................17, 18

*Razak v. Uber Tech. Inc.*,
   951 F.3d, 137 (3d Cir. 2020) ............................................................................................................14

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947) ..............................................................................................................12, 17, 18

*Saleem v. Corp. Transp. Grp., Ltd.*,
   854 F.3d 131 (2d Cir. 2017) ........................................................................................................18, 20

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   65 F.4th 1012 (9th Cir. 2023) ............................................................................................................7

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ............................................................................................................................21

*Sec'y of Labor. v. Lauritzen*,
  835 F.2d 1529 (7th Cir. 1987) ........................................................................... 13, 18

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ....................................................................................4

*State National Bank of Big Spring v. Lew*,
  795 F.3d 48 (D.C. Cir. 2015) .................................................................................. 5, 6

*Tennessee v. EEOC*,
  No. 2:24-cv-84, --- F. Supp. 3d ---, 2024 WL 3012823 (E.D. Ark. June 14, 2024) ...................... 3, 4

*Thibault v. BellSouth Telecomm.*,
  612 F.3d 843 (5th Cir. 2010) ................................................................................. 20, 21

*U.S. Army Corps of Eg'rs. v. Hawkes Co.*,
  578 U.S. 590 (2016) ....................................................................................................4

*United States v. Gomez*,
  No. 3:21-CR-0001, 2024 WL 1620392 (D.V.I. Apr. 15, 2024) .......................................24

*United States v. Ross*,
  848 F.3d 1129 (D.C. Cir. 2017) ....................................................................... 9, 10, 18

*United States v. Silk*,
  331 U.S. 704 (1947) .........................................................................................passim

*United States v. Smith*,
  962 F.3d 755 (4th Cir. 2020) ....................................................................................24

*United States v. Sup. Ct. of N.M.*,
  839 F.3d 888 (10th Cir. 2016) ............................................................................. 1, 7, 8

*V.I. Tel. Corp. v. FCC*,
  444 F.3d 666 (D.C. Cir. 2006) ..................................................................................25

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ...................................................................................................3

## STATUTES

29 U.S.C. § 259 ..............................................................................................................4

5 U.S.C. § 706(2)(A) .....................................................................................................25

## OTHER AUTHORITIES

Jennifer Haberkorn,
  *White House moves on from confirmation effort for Su as Labor secretary*, Politico (July 20, 2023) ...............24

*Set Aside*, Black's Law Dictionary (3d ed. 1933) ........................................................25

## REGULATIONS

*Independent Contractor Status Under the FLSA*,
  86 Fed. Reg. 1168 (Jan. 7, 2021) ......................................................................passim

*Independent Contractor Status Under the FLSA,*
   89 Fed. Reg. 1638 (Jan. 10, 2024).........................................................................................passim

## INTRODUCTION

The multi-factor economic reality test has long been a source of confusion for businesses like Plaintiff Colt & Joe Trucking LLC that hire independent contractors because the test has been articulated and applied in different ways by the federal courts. In January 2021, the Department of Labor ("DOL") promulgated a regulation to provide some measure of predictability to help parties structure their working relations. *Independent Contractor Status Under the FLSA*, 86 Fed. Reg. 1168 (Jan. 7, 2021) ("2021 Rule"). That Rule improved clarity and reduced regulatory burden on Plaintiff and other businesses that hire independent contractors by telling them that a worker's control over the work and opportunity for profit typically carry greater weight in the multi-factor analysis. DOL now reverses course to withdraw the 2021 Rule and replace it with another Rule ("2024 Rule") that reverts to the pre-2021 state of confusion by listing six economic reality factors plus a catchall factor without any guidance regarding how to balance them, while also tilting multiple factors to weigh against independent contracting. *Independent Contractor Status Under the FLSA*, 89 Fed. Reg. 1638 (Jan. 10, 2024).

The 2024 Rule injures Plaintiff by increasing its regulatory burdens and compliance costs. Plaintiff must monitor more factors when hiring independent drivers and can no longer require safety measures such as drug testing without jeopardizing their classification as such. It was designed to deter employers like Plaintiff from classifying workers as independent contractors. By elevating several factors and redefining them to weigh against independent contracting, the 2024 Rule subjects Plaintiff to enforcement and litigation risks. Indeed, the Federal Government has successfully argued in a case it brought in this Court that costly "precautions" taken in response to a new rule that vaguely defines prohibited conduct constitute cognizable injury. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 902 (10th Cir. 2016), *aff'g* 980 F. Supp.2d 1334 (D.N.M. 2013) and 2014 WL 12487697 (D.N.M. Feb. 3, 2014).

1

DOL's reasons for rescinding the 2021 Rule do not hold up. Its claims that the 2021 Rule violates the FLSA, DOL Br. 2, are based on a mischaracterization of that Rule as having improperly assigned "predetermined and invariable weight" to two core factors. But the Rule merely said those core factors "typically" carry greater weight, a principle that is supported by the outcomes of every circuit court decision applying the economic reality factors since 1975. 86 Fed. Reg. at 1168. DOL compounds its error by claiming the economic reality test's totality-of-circumstances approach requires analysis of each and every factor or fact. But the Supreme Court case that first articulated the test analyzed only facts pertaining to the 2021 Rule's two core factors—control and opportunity— before concluding that their combined probative value was sufficient to establish the truck drivers at issue as independent contractors. *United States v. Silk*, 331 U.S. 704, 719 (1947). There was no need to consult the remaining factors because they cannot outweigh the combined probative value of control and opportunity.  That is the same approach as the 2021 Rule. DOL's recission is based on a faulty legal premise that the 2021 Rule is somehow inconsistent with the FLSA.

DOL's secondary rationale for replacing the 2021 Rule—improving regulatory clarity—is nonsensical. It implausibly contends that a freewheeling multi-factor test where employers don't know *ex ante* which factors matter is less confusing than the 2021 Rule's focus on two core factors that DOL still believes to be the most probative based on practice and common sense. At best, the 2024 Rule restores the pre-2021 state of the law, which DOL found to be extremely confusing when promulgating the 2021 Rule. DOL has never explained why the 2021 emphasis on control and opportunity is not valid, and its attempt to return to that state of confusion is arbitrary and capricious.

For these and the other reasons below, the Court should grant Plaintiff's Motion for Summary Judgment, deny DOL's cross-motion, and vacate the 2024 Rule.

## ARGUMENT

I.   **PLAINTIFF HAS STANDING TO CHALLENGE THE 2024 RULE**

### A.  Plaintiff Has Standing as the Object of the Regulation

The Supreme Court recently reaffirmed that "the object of" agency regulation has standing. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). At that point, there is "little question" that the agency's action "caused" the claimed "injury" and that "a judgment preventing … the action will redress it." *Lujan*, 504 U.S. at 561-62. DOL concedes that Plaintiff is the object of the 2024 Rule and recognizes that the "'object of the action' theory of standing is the norm." DOL Br. 9 (quoting *Tennessee v. EEOC*, No. 2:24-cv-84, --- F. Supp. 3d ---, 2024 WL 3012823, at *6 (E.D. Ark. June 14, 2024), appeal filed, No. 24-2249 (8th Cir. June 20, 2024)). It relies on a single out-of-circuit district court decision that is currently being appealed to depart from that norm. *Id.* (citing *Tennessee v. EEOC*, 2024 WL 3012823, at *6).

But DOL neglected to mention that another district court reached the exact opposite conclusion as the case it cites. *Compare Tennessee v. EEOC*, 2024 WL 3012823, at *6 (denying standing to objects of regulation) *with Louisiana v. EEOC*, 705 F. Supp. 3d 643, 652 (W.D. La. 2024) (holding objects of same regulation have standing). Both cases involved state employers challenging the same EEOC regulation. *Louisiana* held that state employers had standing as the "object of the action," 705 F. Supp. 3d at 652, while *Tennessee* denied standing on that basis because the "States press[ed] no procedural challenge," 2024 WL 3012823, at *6. *Tennessee*'s reasoning is unlikely to survive on appeal because it conflicts with *West Virginia*, where the Supreme Court applied the object-of-regulation theory of standing in a substantive challenge against agency regulation. 597 U.S. at 719 (citation omitted). Moreover, *Tennessee*'s denial of standing was based on the court's finding that "[u]nlike in situations involving private employers, the EEOC cannot bring enforcement actions against state

employers." 2024 WL 3012823, at *4 (citations omitted). By contrast, nothing stops DOL (or private parties) from bringing a case against private employers like Plaintiff for violating the 2024 Rule.

DOL's unpersuasive and inapposite out-of-circuit case that is likely to be overruled on appeal does not change the conclusion that Plaintiff has standing as the object of the 2024 Rule. Because Plaintiff is directly regulated by the challenged 2024 Rule, standing is "self-evident" and "no evidence outside the administrative record is necessary for the court to be sure of it." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002).

### B. Plaintiff Alleges Concrete Injuries that Are Traceable to the 2024 Rule and Redressable by its Vacatur

Plaintiff's standing is supported by injuries traceable to the 2024 Rule and redressable by its vacatur. To start, the 2024 Rule eliminates the safe harbor created by the 2021 Rule under the Portal-to-Portal Act. *See* Pl.'s Br. 8. If a regulated employer relied in good faith on the 2021 Rule, it could use that reliance as a defense in FLSA litigation and enforcement actions. 29 U.S.C. § 259; 86 Fed. Reg. at 1246 (29 C.F.R. § 795.100). The loss of this safe harbor is a concrete injury sufficient for standing. *See U.S. Army Corps of Eg'rs. v. Hawkes Co.*, 578 U.S. 590, 597, 599 (2016) (recognizing that "legal consequences … flow" from "the denial of the safe harbor").

Next, the 2024 Rule increases Plaintiff's regulatory "compliance costs," which is "a classic injury-in-fact" even where courts "do not know precisely what form new regulations will take." *Am. Farm Bureau Fed'n v. EPA*, 792 F.3d 281, 293 (3d Cir. 2015) (citation omitted). *See also Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) (citing *Ass'n of Am. R.R.s v. Dep't of Transp.*, 38 F.3d 582 (D.C.Cir.1994)) ("An increased regulatory burden typically satisfies the injury in fact requirement."). DOL claims there are no additional compliance costs because "the 2024 Rule simply adopts 'guidance derived from the same analysis that courts have applied for decades'" prior to the 2021 Rule. DOL Br. 10 (quoting 89 Fed. Reg. at 1658). But that is an argument on the merits. At the standing stage, the Court must accept Plaintiff's argument that the 2024 Rule departs from

precedent by improperly tilting economic-reality factors toward classification as employees. *FEC v. Cruz*, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims.").

More importantly, DOL uses the wrong comparator. The question is not whether the 2024 Rule imposes greater compliance costs compared to before the 2021 Rule. DOL Br. 10. Rather, the proper comparison is between the 2024 Rule and the 2021 Rule that was rescinded. In *State National Bank of Big Spring v. Lew*, an agency rule required banks to disclose remittances while providing a safe harbor from disclosure based on the annual number of remittances. 795 F.3d 48, 53 (D.C. Cir. 2015) (citation omitted). Then-Judge Kavanaugh explained that regulated banks are injured because they "must incur costs to ensure that they are properly complying with the terms of that safe harbor." *Id.* Here, the FLSA imposes wage-and-hour requirements that employers may avoid by hiring independent contractors rather than employees—essentially a "safe harbor" from the Act's minimum wage and overtime requirements. Employers must incur costs to ensure that their independent contractors are properly classified under the economic reality test. That cost is greater under the 2024 Rule than the 2021 Rule.

Under the 2021 Rule, Plaintiff could consult the two core factors and ensure that the independent drivers it hires control key aspects of work and have an opportunity for profit based on initiative or investment. 86 Fed. Reg. at 1246 (29 C.F.R. § 795.105(c)), 1247 (29 C.F.R. § 795.105(d)). Barring "unusual cases" not typically found in the trucking industry, satisfying these two core factors created assurance that the divers are properly classified and entitled Plaintiff to a defense under the Portal-to-Portal Act. *Id.* at 1197, 1246 (29 C.F.R. § 795.100). This burden was relatively light because independent truck drivers typically control what jobs they take and have an opportunity for profit based on initiative and investment. Because both core factors are easily met, Plaintiff did not need to closely monitor the remaining economic reality factors. *Id.* By contrast, under the 2024 Rule, Plaintiff

5

must now monitor at least four additional factors to classify independent drivers: skill, comparative investment, permanence, and integrality. 89 Fed. Reg. at 1742-43 (29 C.F.R. § 795.110(b)). Being forced to monitor additional factors to avoid the FLSA's requirements is an increase in compliance costs. *See State Nat'l Bank*, 795 F.3d at 53 (finding economic injury where banks "must now monitor its remittances to stay within the [agency's] safe harbor").

What's worse, at least three factors that the 2024 Rule elevates are specifically redefined to weigh *against* truck drivers being classified as independent contractors. Drivers are not skilled professionals; they have fewer capital investments than Plaintiff despite owning their vehicles; and truck driving is an integral part of Plaintiff's trucking business. *See* 89 Fed. Reg. at 1742-43 (29 C.F.R. § 795.110(b)(2), (5), (6)). The elevation of these tilted factors means Plaintiff must grant its drivers more control or opportunity for profit than it otherwise had to ensure their proper classification as independent contractors. The elevation of the permanence factor requires Plaintiff to closely and continuously monitor its independent drivers to determine whether their work arrangement is not "indefinite in duration, continuous, or exclusive." *Id.* 89 Fed. Reg. at 1742 (29 C.F.R. § 795.110(b)(3)). That monitoring burden is an additional injury. *See State Nat. Bank*, 795 F.3d at 53.

The 2024 Rule also redefines the control factor to tilt heavily against classifying truck drivers as independent contractors and reduces Plaintiff's ability to manage its independent drivers. The 2021 Rule gave Plaintiff wide latitude in imposing road safety requirements. 86 Fed. Reg. at 1247 (29 C.F.R. § 795.105(d)(1)(i)). It specifically explained in an example that installing a device that monitors drivers to ensure compliance with federal motor-carrier regulations and local traffic laws would not jeopardize their independent contractor status. See *id.* (29 C.F.R. § 795.115(b)(1)). By contrast, the 2024 Rule states that any safety measure that exceeds the minimum legal requirement constitutes an employer's exercises of control that can prevent classification as independent contractors. 89 Fed. Reg. at 1743

(29 C.F.R. § 795.110(b)(4)). The 2024 Rule thus undermines Plaintiff's ability to implement safety requirements, including training and drug testing, for its independent drivers.

Finally, the 2024 Rule reduces regulatory clarity and thus increases burden. DOL promulgated the 2021 Rule to lighten the regulatory burden on employers that hire independent contractors by simplifying and clarifying the economic reality test, which at the time was articulated through countless cases that presented confusing and sometimes inconsistent analyses. 86 Fed. Reg. at 1172-74. For standing purposes, the Court must "accept as valid" Plaintiff's claim that the hodgepodge of pre-2021 guidance from courts was confusing, and that the 2021 Rule provided additional clarity that has now been taken away. *Cruz*, 596 U.S. at 298. DOL's claim to return to the pre-2021 guidance by rescinding the 2021 Rule necessarily means increased confusion and regulatory burden.

Plaintiff's reluctance to hire new independent drivers in response to the 2024 Rule is nothing like *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), cited at DOL Br. at 10, which concerned steps taken by individuals to avoid interception of their communication under the Foreign Intelligence Surveillance Act of 1978. As the Tenth Circuit explained, the steps in *Clapper* "did not establish standing, because the statute did 'not regulate, constrain, or compel any action on [the plaintiffs'] part'" and thus "any injury to the plaintiffs rested on a 'highly attenuated chain of possibilities.'" *Supreme Ct. of N.M.*, 839 F.3d at 902 (alteration in original) (quoting *Clapper*, 568 U.S. at 410).[1] By contrast, the 2024 Rule directly regulates Plaintiff and no attenuation is needed for DOL or a private party to sue. The Tenth Circuit further explained that *Clapper* did not disturb the rule that "reasonable efforts

---

[1] The Tenth Circuit also explained that *Clapper*'s "especially rigorous standing inquiry" is inappropriate in a case "[that] does not concern '[the] actions of the political branches in the fields of intelligence gathering and foreign affairs[.]'" *Fish v. Schwab*, 957 F.3d 1105, 1120 (10th Cir. 2020) (second alteration in original) (quoting *Clapper*, 568 U.S. at 408-09). *See also San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1025 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023) (quoting *Clapper*, 568 U.S. at 408) (rejecting request to apply *Clapper*'s "'especially rigorous' analysis" outside "[of] a national security case.").

[taken] to avoid greater injuries" supports standing. *Supreme Ct. of N.M.*, 839 F.3d at 902 (alteration in original) (*quoting Clapper*, 568 U.S. at 418).

*Supreme Court of New Mexico* is directly on point and concerned a New Mexico ethics rule that prohibited attorneys from issuing certain subpoenas unless they were "essential." *Id.* at 893. The Federal Government challenged the rule and claimed that it suffered an injury because federal attorneys licensed in New Mexico were deterred from issuing potentially unethical subpoenas under the rule. The Tenth Circuit agreed and held that "*Clapper* reinforces" the conclusion that precautions taken by federal attorneys "in order to avoid possible disciplinary investigations and sanctions from state ethics officials" constitute "cognizable injury for standing purposes." *Id.* at 902. The Federal Government apparently believes that being deterred by a vague prohibition is a cognizable injury when it is the plaintiff, but not when it is the defendant.

Just as the federal attorneys could not know *ex ante* whether certain subpoenas would be deemed non-essential and thus subject them to sanctions, Plaintiff cannot know in advance how DOL or private litigants will weigh the various economic factors because DOL rescinded its 2021 Rule explaining how to balance the factors. That is especially so because DOL has also redefined factors to tilt against Plaintiff being able to classify its drivers as independent contractors and then increased the weight of those disfavoring factors. As with the attorneys in *Supreme Court of New Mexico*, Plaintiff has taken reasonable precautions—including not hiring a new independent driver—to avoid possible investigation and enforcement, not to mention private lawsuits. *See* Pettingil Declaration (ECF 22-1).

Deterring employers like Plaintiff from classifying workers as independent contractors is the purpose of the 2024 Rule. *See* Pl.'s Br. 11. DOL's attempted denial of that intent, DOL Br. 10, is contradicted by the very next sentence confirming that DOL rescinded the 2021 Rule out of concern that it "conveyed to employers that *more* workers could be classified as independent contractors than prior to the 2021 IC Rule," *id.* at 10-11 (emphasis added) (quoting 89 Fed. Reg. at 1656). The rescission

was thus motivated to convey the opposite message, *i.e.*, that *fewer* workers could be classified as independent contractors than under the 2021 Rule. DOL cannot deliberately create an uncertain regulatory environment with the aim of deterring employers from classifying workers as independent contractor and then seek to avoid a challenge to the rule by claiming (at 10) that such deterrence is purely "subjective."

## II.   THE RECISSION OF THE 2021 RULE WAS CONTRARY TO LAW BECAUSE IT WAS BASED ON THE FAULTY LEGAL PREMISE THAT THE RULE VIOLATED THE FLSA

DOL's response (at 13) that the 2024 Rule is consistent with the FLSA is irrelevant to Plaintiff's argument that the rescission of the 2021 Rule was based on the faulty premise that it violated the FLSA. *See* Pl.'s Br. 13-19. Rather, the question is whether the 2021 Rule's core-factor approach is inconsistent with the FLSA, which is DOL's primary proffered reason for rescinding it. 89 Fed. Reg. at 1647 ("Department believes that the 2021 IC Rule did not fully comport with the FLSA's text and purpose as interpreted by the courts."). DOL is not entitled to any deference on that purely legal issue, which the Court must review *de novo* based on its "independent judgment." *Loper Bright Enters. v. Raimondo* and *Relentless v. Dep't of Com.*, 144 S. Ct. 2244, 2273 (2024). The 2021 Rule does not, as DOL repeatedly claims, assign "predetermined and invariable weight" to any economic reality factor. *See* DOL Br. 2. It merely tells employers which factors "*typically* carr[y] greater weight," 86 Fed. Reg. at 1246 (29 C.F.R. § 795.105(c) (emphasis added)). Neither the FLSA nor cases interpreting it prohibits that message. DOL rescinded the 2021 Rule because it "erroneously believes it is bound to a specific decision." *United States v. Ross*, 848 F.3d 1129, 1134 (D.C. Cir. 2017).

### A.   DOL Still Does Not Meaningfully Dispute that Control and Opportunity Are More Probative as a Matter of Practice and Common Sense

The 2021 Rule determined that, as a matter of practice and common sense, the two core factors of control and opportunity for profit were the most probative as to the ultimate inquiry of whether a worker is in business for themself. *Id.* at 1196-97, 1199. That conclusion was supported by

the result of every circuit decision applying the economic reality test since 1975. *Id.* at 1196-97. The 2024 Rule *did not* dispute the result of those cases nor the commonsense understanding of being in business for oneself. Rather, DOL rescinded the 2021 Rule based on its new belief that telling regulated employers what factors are most likely to matter violates the FLSA. 89 Fed. Reg. at 1647.

DOL now claims that it *does* dispute the 2021 Rule's conclusion that control and opportunity for profit are the most probative. DOL Br. 15. But the only argument DOL musters on this point is the 2024 Rule's assertion that the 2021 Rule's interpretation of "certain cases was flawed" because those cases "'do not, themselves, elevate these two [core] factors.'" DOL Br. 15 (quoting 89 Fed. Reg. at 1651). That simply restates the 2024 Rule's contention that the 2021 Rule's core-factor approach violates the FLSA. It does not dispute the 2021 Rule's conclusion that the two core factors are the most probative as a matter of practice and common sense.

DOL next argues that "the mere fact that control and opportunity pointed toward the ultimate result when they aligned does not demonstrate that those two factors *will always* be the most important in every case." DOL Br. 15 (emphasis added) (citing 89 Fed. Reg. at 1652). This strawman mischaracterizes the 2021 Rule, which did not assign any factor "predetermined and invariable weight" no matter how many times DOL repeats that false claim. *See id.* at 2; *id.* at 4, 5, 7, 14, 15, 16, 19. Rather, it identified factors that "*typically* carr[y] greater weight," and expressly recognized that other factors could "outweigh the combined probative value of the two core factors" in certain situations. 86 Fed. Reg. 1246 (29 C.F.R. § 795.105(c) (emphasis added)); *see also id.* at 1201 ("Even when both core factors align, they are not 'controlling' because their combined weight can still be outweighed by other considerations."). The 2021 Rule stated that it is "unlikely" for the combined weight of the two core factors to be outweighed when the align. 86 Fed. Reg. 1246 (29 C.F.R. § 795.105(c)). That is because the combined weight of those two core factors has *never* been outweighed in the post-1975 cases that DOL reviewed applying the economic reality test.

The 2021 Rule's core-factor framework simply told regulated entities which factors are most likely to have the greatest weight based on DOL's analysis of case law and the ordinary understanding of being in business for oneself. DOL does not dispute that control and opportunity generally are the most probative factors as a matter of practice and common sense. It instead claims that telling employers about their greater probative value somehow violates the FLSA.

### B. The FLSA's Text Does Not Prohibit DOL from Recognizing That Control and Opportunity for Profit Are More Probative

DOL is wrong that the FLSA's definition of employment prohibits the 2021 Rule. The Act's definitions for "employee" and "employ" are circular, unhelpful, and do not provide a self-evident scope of employment under the Act. *See Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) (citing 29 U.S.C. § 206(a)); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (citing 29 U.S.C. § 203)). In such circumstances, courts apply the ordinary meaning of those terms. *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1232 (10th Cir. 2016) (citation omitted). The ordinary meanings of "employee" and "employ" do not prevent DOL from recognizing that control and opportunity for profit are especially probative. To the contrary, they support such an approach because (1) the dictionary definition of "employee" meant one who earns "wages or salary" as opposed to profits and (2) the well-understood common-law concept of control guides the scope of FLSA's definition of employment by providing a floor. Pl.'s Br. 14-15. (quoting *Webster's New Twentieth Century Dictionary* (2d ed. 1934) (1956 reprint) 595).

DOL offers no response to Plaintiff's textual arguments. It simply asserts that the FLSA's text defines employment "broadly and inclusively." DOL Br. 13 (citations omitted). But even a broad definition has outer boundaries. The 2021 Rule's core-factor approach does not narrow those broad boundaries but rather sharpens them—the two core factors can align to give decisive weight to classification as an employee as well as independent contractor. When the Supreme Court said that the FLSA defines employment broadly, it was in comparison to the common law. *See Nationwide Mut.*

11

*Ins. Co. v. Darden*, 503 U.S. 318, 325-26 (1992) (explaining that FLSA employment is broader than the common law); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727-28 (1947) (same). The 2021 Rule satisfies that condition because it makes clear that a worker need not satisfy the common-law control test to be classified as an FLSA employee.  Pl.'s Br. 15-16 (citing 86 Fed. Reg. at 1246-47).

### C.  Supreme Court Precedent Does Not Prohibit DOL from Recognizing That Control and Opportunity Are More Probative

DOL claims that the 2021 Rule is inconsistent with *Silk* and *Rutherford* because those cases "considered all the factors in their analysis and did not suggest that any were predetermined to have greater weight." DOL Br. 16 (citing 89 Fed. Reg. at 1641). DOL once again mischaracterizes the 2021 Rule, which did not assign any factors "predetermined" weight. The text of that Rule clearly states that control and opportunity for profit each "typically carries greater weight," and that other factors could "outweigh" them in appropriate circumstances. 86 Fed. Reg. 1246 (29 C.F.R. § 795.105(c)).

DOL also mischaracterizes the Supreme Court's analysis of economic reality factors. While *Silk* listed all factors, it analyzed only a subset to conclude that the truck drivers at issue were independent contractors.

> [They] own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer. The distinction, though important, is not controlling. It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors.

331 U.S. at 719. The entire analysis was grounded in the truck drivers' control and opportunity for profit based on their initiative and investment—the precise core factors under the 2021 Rule. 86 Fed. Reg. 1246 (29 C.F.R. § 795.105(c)).[2] *Silk* did not consider any other factor before concluding that the truck drivers were independent contractors because the alignment of the two core factors was

---

[2] *Silk* considered a wider range of factors with respect to the coal unloaders in that case. This is consistent with the 2021 Rule because those unloaders control their hours as "floaters who came to the yard only intermittently" while having "no opportunity to gain or lose[.]" 331 U.S. at 706, 717. In other words, the two core factors pointed in opposite directions, and thus it was necessary to consider the full set of factors. *See* 86 Fed. Reg. at 1246-47 (29 C.F.R. § 795.105(c)-(d)).

sufficient to support their classification. 331 U.S. at 719. DOL fails to explain why the Plaintiff cannot rely on the 2021 Rule to conduct the same analysis with respect to independent truck drivers it hires.

*Rutherford* likewise did not consider "all the factors," as DOL claims (at 16). The Court did not analyze skill, permanence, or importance to the business at all. 331 U.S. 722. Aside from observing that the boners at issue "work[ed] as a part of the integrated unit of production," *id.*, at 729—a consideration that the 2024 Rule expressly repudiates—*Rutherford* found the boners were employees because they lacked control over the work and their profits were not based on initiative or investment:

> The premises and equipment of Kaiser were used for the work. The group had no business organization that could or did shift as a unit from one slaughter-house to another. The managing official of the plant kept close touch on the operation. While profits to the boners depended upon the efficiency of their work, it was more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor.

331 U.S. at 730–31. This analysis was based entirely on the 2021 Rule's core factors. The same is true of *Goldberg v. Whitaker House Co-op., Inc.*, which held homeworkers were employees because "[t]hey are regimented under one organization, manufacturing what the organization desires and receiving the compensation the organization dictates." 366 U.S. 28, 32-33 (1961).

Each of the three Supreme Court cases applying the economic reality test fits the same pattern: the Court listed the factors that may be relevant and then resolved the case by focusing on the most probative factors: the workers' control and opportunity for profit through initiative or investment. That is what the 2021 Rule did. Such an approach does not ignore the totality of circumstances.

The totality of circumstances, by definition, "encompasses millions of facts." *Sec'y of Labor. v. Lauritzen*, 835 F.2d 1529, 1539 (7th Cir. 1987) (Easterbrook, J., concurring). But not every fact or factor must be considered in every case, as DOL suggests (at 16). *Silk* did not somehow violate its own totality-of-circumstances test by analyzing only facts relating to control and opportunity for profit because such facts were sufficient to establish the truck drivers as independent contractors. 331 U.S.

at 719. Neither did the 2021 Rule ignore the totality of circumstances by recognizing that the alignment of the same two factors can be sufficient in many cases.

### D. Lower Court Precedent Does Not Prohibit DOL from Telling Employers That Control and Opportunity Are Most Probative

DOL fails to show that circuit precedent prohibits the 2021 Rule. Plenty of circuit decisions do not analyze every factor when applying the economic reality test, and instead limit analysis to facts concerning control and opportunity for profit. *See* Pl's Br. at 16-17 (citing *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139–140 (2d Cir. 2017) and *Razak v. Uber Tech. Inc.*, 951 F.3d, 137, 145–47 (3d Cir. 2020)). *Saleem*, for instance, did not depart from Second Circuit precedent conducting a factor-by-factor approach, *e.g.*, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059-61 (2d Cir. 1988), because that approach is not binding. Neither is DOL bound to use "the same six-factor test" that courts sometimes discuss mechanically on a factor-by-factor basis. *See* DOL Br. 17 (citing *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998)). While *Baker* reviewed the district court's "factual findings … with respect to the six factors," 137 F.3d at 1441-43, its "final" analysis synthesizing those findings gave decisive weight to facts relating to control and opportunity for profit, *id.* at 1443-44.

DOL claims *Baker* instructs that "[n]one of the factors alone is dispositive," so "the court must employ a totality-of-the-circumstances approach." DOL Br. 17 (quoting *Baker*, 137 F.3d at 1440-44). So does the 2021 Rule, which states: "These factors are not exhaustive, and no single factor is dispositive." 86 Fed. Reg. at 1246 (29 C.F.R. § 795.105(c)). And as explained above, a totality-of-the-circumstances approach does not require analysis of each and every factor when a subset is sufficient to establish the presence or absence of an employment relationship. *See Silk*, 331 U.S. at 719.

DOL next contends that "*Baker* never suggested that any of the factors were automatically entitled to greater weight[.]" DOL Br. 17. Once again, the 2021 Rule does not "automatically" assign greater weight to any factor. It stated that the core factors "*typically* carr[y] greater weight," 86 Fed. Reg. at 1246 (29 C.F.R. § 795.105(c) (emphasis added)), while recognizing that they could be

14

outweighed "in unusual cases," *id.* at 1197. As Plaintiff points out, the 2021 Rule's emphasis on the core factors is supported by *Baker*'s "final" analysis that gave greater and indeed decisive weight to control and opportunity. Pl.'s Br. 16-17 (citing *Baker*, 854 F.3d at 1443-44). DOL responds that *Baker* "did so based on the facts before it in that case." DOL Br. 17. That is because federal courts' jurisdiction is limited to a specific case or controversy. By contrast, agencies such as DOL are tasked with articulating general rules. Nothing in *Baker* nor other decisions precludes DOL from saying which factors are "typically" most important. 86 Fed. Reg. at 1246 (29 C.F.R. § 795.105(c)).

### E. DOL Improperly Relied on the FLSA's Purported Remedial Purpose

DOL confirms that it relied on the Act's purported remedial purpose and argues that *Encino Motorcars, LLC v. Navarro*'s, 584 U.S. 79 (2018) (*Encino II*), repudiation of that interpretive principle does not apply. DOL Br. 17-18. That is wrong. *Encino II*'s repudiation of that interpretive principle extends to the FLSA in full, including the definition of employment. *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1329-30 (11th Cir. 2021) (recognizing that *Encino II* applies to the FLSA in full). DOL's cited case, *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106 (10th Cir. 2019), does not compel a different result. That case did not mention *Encino II* nor the appropriateness of relying on the Act's remedial purpose. Rather, it merely held that the "FLSA's definition of employee" is "purposefully expansive" and includes an employee of a marijuana dispensary. *Id.* at 1111. *Kenney* does not allow DOL to rely on the FLSA's remedial purpose to give that expansive definition an even more expansive reading, as DOL admits having done in the 2024 Rule. *See* 89 Fed. Reg. 1668 n.221.

### III. THE 2024 RULE EXCEEDS DOL'S AUTHORITY BY TILTING ECONOMIC REALITY FACTORS IN FAVOR OF EMPLOYEE CLASSIFICATION

DOL's claim that the 2024 Rule's characterization of the economic reality factors is "consistent with the [FLSA] and relevant precedent" presents a purely legal question, and therefore is not entitled to any deference. *See Loper Bright*, 144 S. Ct. at 2262. "Where an agency interprets and applies judicial precedent … [courts] review its decision de novo. This is because an agency has no

special competence or role in interpreting a judicial decision." *Ass'n of Civilian Technicians v. FLRA*, 353 F.3d 46, 50 (D.C. Cir. 2004) (citation omitted). DOL's arguments fail *de novo* review.

### A.  DOL Improperly Tilts the Control Factor to Disfavor Independent Contracting

The 2024 Rule's characterization of control introduces three defects. *First*, it "improperly elevates 'reserved right or authority to control workers' under a contract to the same importance as 'actual practice.'" Pl.'s Br. 19 (cleaned up). DOL's response that "reserved control can be indicative of an employment relationship," DOL Br. 19, misses the point because neither Plaintiff nor the 2021 Rule dispute that reserved control can be probative to some extent. *See* 86 Fed. Reg. 1247 (29 C.F.R. § 795.110). Rather, the issue is whether reserved-but-never-exercised control is *as* probative as the actual exercise of control. The answer must be "no" because actual practice is more probative than what is theoretically possible. DOL's cited case, *Brock*, does not support a contrary conclusion because the employer there "exercise[d] control" during occasional "visits to the job sites," 840 F.2d at 1060.

*Second*, the 2024 Rule improperly expands the object of control to include the nebulous phrase "economic aspects of the working relationship." Pl.'s Br. 20. DOL claims that phrase is "a common formulation throughout the case law" and cites the 2024 Rule as "collecting cases." DOL Br. 19 (citing 89 Fed. Reg. at 1693). But the only case the 2024 Rule "collects" is *Hopkins v. Cornerstone America.*, 545 F.3d 338, 343 (5th Cir. 2008) (*cited* at 89 Fed. Reg. at 1693 nn. 360-62), which does not mention economic aspects of the *working relationship*. Rather, it considered the "economic aspects of *the business*," referring to the supposedly independent business that the sales workers in that case operated. *Id.* at 343-44. That concept is fully captured in controlling "key aspects of the performance of the work." The 2024 Rule's expansion of control into "economic aspects of the working relationship" remains unsupported by precedent and introduces needless confusion.

*Third*, the 2024 Rule improperly classified legal and safety compliance requirements as indicating employee classification. DOL responds that the 2024 Rule contains a carve out for

requirements "for the sole purpose" of legal compliance. DOL Br. 20 (quoting 89 Fed. Reg. at 1694, 1743). But that means going an inch beyond the minimum legal requirement would undermine a worker's classification as an independent contractor, which is plainly contradicted by precedent. The mandatory safety training and drug protocol at issue in *Parrish v. Premier Directional Drilling, L.P.*, were not adopted for the sole purpose of satisfying a generic OSHA regulation requiring workplaces to be "free from recognized hazards." 917 F.3d 369, 382 (5th Cir. 2019) (quoting 29 U.S.C. § 654). The company had an independent and obvious reason to require specific safety training and drug testing for workers "working at an *oil-drilling site*." *Id.* Yet the safety training and drug testing measures still did not indicate employee status. *Id.*

Redefining safety measures that are not adopted "for the sole purpose" of legal compliance to jeopardize independent contractor classification not only contradicts precedent, but it is perverse and irrational. DOL neither explains the benefit of discouraging regulated entities from implementing safety measures nor considers the cost of reduced safety. Ignoring such matters is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41–43 (1983).

### B.  Replacing the "Integrated Unit" Factor with "Integral Parts" Is Unlawful

The 2021 Rule included a factor asking "[w]hether the work is part of an integrated unit of production," 86 Fed. Reg. at 1247 (29 C.F.R. §795.105(d)(2)(iii)), which came directly from *Rutherford*, 331 U.S. at 726. *See* Pl.'s Br. 21. The 2024 Rule replaced that factor with an inquiry into whether the work performed is an "integral part"—*i.e.*, a "critical, necessary, or central" part—of the company's business." 89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(5)). That revision contravenes Supreme Court precedent and is wholly unreasoned—DOL simply parroted certain courts' dicta referring to the factor with no accompanying explanation or justification.

Analysis by some circuits—including the Tenth Circuit—of the integral part factor is not binding because such analysis was not necessary for the decision. That factor played no part in *Baker*'s

"final" and decisive analysis into economic dependence. 137 F.3d at 1443-44. The Supreme Court never used the "integral part" factor to analyze a worker's FLSA classification.[3] The Fifth Circuit does not analyze it. *See Parrish*, 917 F.3d at 381. While the Second Circuit listed that factor in a footnote in *Saleem*, 854 F.3d at 139 n.19, it did not analyze it. These decisions did not depart from the economic reality test simply because they did not analyze whether the work performed was an "integral part" of the business. DOL's belief that it is bound by precedent to use "integral part" is a faulty legal premise that renders the 2024 Rule arbitrary and capricious. *See Ross*, 848 F.3d at 1134.

DOL also fails to respond to Plaintiff's argument that the "integral part" factor, as defined in the 2024 Rule, is useless in determining employee status. Asking whether the work performed is important provides no reasonable basis for distinguishing between employees and anyone else that contributes services to a business. Pl.'s Br. 21. The factor "has neither significance nor meaning" because *"[e]verything* the employer does is 'integral' to its business—why else do it?" *Lauritzen*, 835 F.2d at 1541 (Easterbrook, J., concurring). Because it is easy to show that a service that a company pays for is an "integral part" of the business, DOL's change to this factor tilts the scales heavily in favor of employee classification.

### C. The 2024 Rule's Investment Factor Contradicts Supreme Court Precedent

As the 2021 Rule explained, "investment is a pathway to opportunity for profit or loss," 86 Fed. Reg. at 1186, and Tenth Circuit agrees that investment "is interrelated to the profit and loss consideration." *Baker*, 137 F.3d at 1442. *Silk* analyzed those two considerations together, 331 U.S. at 717-18. DOL offers no reasoning for separating these factors except non-binding dicta. DOL Br. 21.

Moreover, by comparing workers' investment to that of businesses that hire them, DOL creates a factor that will almost always favor employee status at the expense of legitimate independent

---

[3] While *Silk*—a Social Security case—used the phrase "integral part" in passing, *see* DOL Br. 20, that decision did not elaborate on how the phrase is to be understood. *Rutherford*, by contrast, explained that "work[ing] alongside admitted employees" toward "a common objective" indicates employee status. 331 U.S. at 726.

contracting relationships. DOL cites Tenth Circuit dicta comparing relative investment. DOL Br. 21 (citing *Baker*, 137 F.3d at 1441-42). But other circuits, and more importantly, the Supreme Court, do not make such comparisons. *Silk* concluded that truck drivers' investment in their vehicles favored their status as independent contractors, even though coal companies that hired them had much larger capital investments. 331 U.S. at 719. To the extent lower courts' dicta conflicts with the Supreme Court's approach, DOL must follow the Supreme Court.

## IV.   THE 2024 RULE IS ARBITRARY AND CAPRICIOUS BECAUSE IT EXACERBATES REGULATORY CONFUSION

DOL has no response to Plaintiff's argument that focusing on two core factors is simpler and clearer than a freewheeling six-or-more factor test where the employer can never know *ex ante* which factors matter and why. Pl.'s Br. 14. It instead criticizes the 2021 Rule as being "novel." DOL Br. 24. But the 2021 Rule lists the same factors courts are familiar with, and it is "consistent with the existing case law" because it states "[t]hese factors are not exhaustive, and no single factor is dispositive." *Coal. for Workforce Innovation v. Walsh*, No. 1:21-cv-130, 2022 WL 1073346, at *16-17 (E.D. Tex. March 14, 2022), *vacated as moot on other grounds*, No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) ("*CWI*") (quoting 86 Fed. Reg. at 1246).[4] In any event, novelty is not the opposite of clarity. Agencies, including DOL, routinely promulgate new regulations to clarify and streamline disputed areas of law.

DOL further argues that the 2024 Rule restores "the multifactor economic reality test that the Supreme Court and other courts have applied for decades." DOL Br. 23. As explained above, the Supreme Court has *never* conducted a factor-by-factor analysis of each factor as the 2024 Rule requires. Rather, its approach aligns with the 2021 Rule. Where control and opportunity factors aligned, as was the case in *Goldberg*, 366 U.S. at 32-33, and *Silk*, 331 U.S. at 719, the Court limited its analysis to facts

---

[4] *CWI* held that DOL's first rescission of the 2021 Rule without notice and comment was unlawful. That holding was vacated as moot because DOL subsequently rescinded the 2021 Rule again through notice-and-comment rulemaking, *i.e.*, the 2024 Rule.

concerning those factors and did not analyze others. Again, that is *not* because the Supreme Court ignored the totality of circumstances, but rather because the remaining circumstances could not outweigh the combined weight of the two most probative factors.

That leaves DOL's claim that the 2024 Rule restores the pre-2021 *status quo ante* based on circuit precedent. Its claim that such precedent provided clear guidance is a sharp departure from the 2021 Rule's conclusion that pre-2021 analysis was a source of significant confusion, explaining in its Need for Rulemaking section that "inconsistency cloud[ed] the application of 'economic dependence,' the touchstone of the economic reality test," 86 Fed. Reg. at 1172; there was "lack [of] clear, generally applicable guidance about how to balance the multiple factors and the countless facts encompassed therein," *id.* at 1173; and "extensive overlaps [of factors] may lead to inefficiency and confusion for the regulated community," *id.* at 1174. DOL's suggestion of some uniform body of circuit court precedent regarding the analysis of economic reality factors is illusory. Some courts listed all the factors but then analyzed them in ways DOL found troubling, for example, by focusing on dependence on the employer as a source of income or wealth as opposed to source of work. *Thibault v. BellSouth Telecomm.*, 612 F.3d 843 (5th Cir. 2010) (cited at 86 Fed. Reg. at 1173). Others referenced the factors in passing but then correctly focused on what matter most, *i.e.*, control and opportunity. *Saleem*, 854 F.3d at 139, (cited at 86 Fed. Reg. at 1173). "Simply put, due to the courts' varied approaches to applying the economic realities test, there has been confusion among businesses and workers as to whether an employment relationship exists." *CWI*, 2022 WL 1073346, at *16.

DOL's new position in the 2024 Rule that a return to pre-2021 analysis would reduce confusion is arbitrary and capricious unless it is accompanied by "a reasoned explanation … for disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). The 2024 Rule does not even address, let alone repudiate, the state of confusion found in the 2021 Rule's Need for Rulemaking discussion. DOL's

attempt to rehabilitate pre-2021 inconsistencies in *its brief* is improper *post hoc* rationalization. *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

DOL's new position is also wrong because variations among courts were not "minor distinctions," as DOL claims (at 23 n.5). For instance, some courts compared investments while others did not. *See* 86 Fed. Reg. at 1187-88. *Compare Hopkins*, 545 F.3d at 344 ("[W]e compare each worker's *individual* investment to that of the alleged employer.") *with Karlson v. Action Process Serv. & Priv. Investigations, LLC*, 860 F.3d 1089, 1096 (8th Cir. 2017) ("[C]omparing the amount Karlson spent on [investments] with Foster's total expenses in operating [her business] has little relevance[.]"). DOL must at least concede that distinction is not minor given its vociferous defense of comparing investments. *See* DOL Br. 21.

DOL's response to contradictory results in two seemingly identical cases involving cable splicers hired by the same company to perform post-Katrina repairs reinforces the need for clarity prior to the 2021 Rule. According to DOL, "the Fifth Circuit distinguished its decision in *Thibault* from its decision in *Cromwell* based on the facts before it." DOL Br. at 23 n.5 (citing *Thibault*, 612 F.3d at 849). The distinguishing facts were that Thibault ran an unrelated business, raced cars professionally, and managed rental properties. *Thibault*, 612 F.3d at 849. Employers cannot make *ex ante* arrangements if FLSA classification turns on workers' dynamic side hustles that are unrelated to the services for which they are hired. The 2024 Rule is arbitrary and capricious because DOL "failed adequately to explain its decision to disregard its prior factual finding" that varied approaches to the economic reality test prior to the 2021 Rule was a source of significant confusion. *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 811 (5th Cir. 2024) (citing *Fox Television*, 556 U.S. at 516).

## V.     THE 2024 RULE'S COST-BENEFIT ANALYSIS IS ARBITRARY AND CAPRICIOUS

DOL implausibly asserts that the *only* cost of the 2024 Rule was reading it, *i.e.*, "rule familiarization." 89 Fed. Reg. at 1733-34. While an agency has leeway regarding *how* to weigh costs and benefits, it may not simply ignore compliance costs. *See Interstate Nat. Gas Ass'n of Am. v. Pipeline & Hazardous Materials Safety Admin.*, No. 23-1173, --- F.4th ---, 2024 WL 3837458, at *3 (D.C. Cir. Aug. 16, 2024) (vacating regulation where agency "did not consider the costs it imposed.") ("*IGNA*"); *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 973 (5th Cir. 2023) (same).

DOL responds that the 2024 Rule imposes zero compliance costs because it is simply an interpretive rule that "does not create new laws or impose new rights or duties." DOL Br. 26 (cleaned up) (quoting *Sorenson Commc'ns, Inc. v. FCC*, 567 F.3d 1215, 1222 (10th Cir. 2009)). Whether agency action creates new rights or duties—and is therefore substantive rather than interpretive—is a question of law entitled to no deference. *Loper Bright*, 144 S. Ct. at 2263. A court already held that the 2021 Rule "affected existing individual rights and obligations," and thus its rescission is likewise substantive. *CWI*, 2022 WL 1073346, at *6. DOL's "own conduct" in promulgating the 2024 Rule through notice and comment confirms that it affects substantive rights. *See North Carolina Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 765 (4th Cir. 2012).

DOL's claim that the 2024 Rule does not change the law is nonsensical. DOL Br. 26. The stated purpose of the 2024 Rule is to replace a prior rule that DOL believes to be inconsistent with the law with one that is consistent. 89 Fed. Reg. at 1647. That obviously requires a change in duties and obligations. The 2024 Rule offers a narrower definition than the 2021 Rule because it redefines facts that did not undermine a worker's classification as an independent contractor (such as safety rules that exceed minimum legal requirements and performing a service that is an integral part of the putative employer's business) to undermine such classification. DOL cannot pretend that the law has been the same all along when reversing its prior position.

The changes in DOL's legal interpretation impose obvious compliance costs. Under the 2021 Rule, most businesses—including Plaintiff—can classify workers as independent contractors by focusing on ensuring that two core factors weigh in favor of independent contractor status. Now, they must consult additional factors, many of which are recharacterized to make classification as an independent contractor more difficult. In *INGA*, the D.C. Circuit vacated a regulation where the agency "did not recognize [a] requirement as new and therefore did not consider the costs it imposed." 2024 WL 3837458, at *3. Here, DOL likewise failed to recognize that the 2024 Rule changes the law by adding new requirements *as compared to the 2021 Rule*, and thus failed to consider their costs. DOL violated the APA and RFA by failing to consider regulatory compliance costs.

DOL also failed to consider costs to independent contractors. Pl.'s Br. 29-30. DOL was concerned the 2021 Rule "conveyed to employers that *more* workers could be classified as independent contractors than prior to the 2021 IC Rule." DOL Br. 10-11 (emphasis added) (quoting 89 Fed. Reg. at 1656). It rescinded that Rule to convey that *fewer* workers could be classified as independent contractors than under the 2021 Rule. DOL's insistence that no reduction would take place and refusal to consider costs associated with such reduction is arbitrary and capricious.

## VI.   THE ACTING SECRETARY WAS NOT PROPERLY APPOINTED

DOL's argument that Ms. Su may "perform the duties of [the Secretary] *temporarily*, on an acting basis," DOL Br. 33 (quoting *Guedes v. ATF*, 356 F. Supp. 3d 109, 148 (D.D.C. 2019)), is irrelevant because Plaintiff disputes her ability to serve *indefinitely*. DOL's cases affirming Su's authority under § 552 are also inapposite because none address her indefinite service. *See id.* DOL tellingly does not deny that Su is serving indefinitely as Acting Secretary of Labor and instead accuses Plaintiff of seeking to "engraft specific time limits on § 552." *Id.* There is no need to identify a specific limit because Su's over 550 days in acting status far exceeds what is permissible and she clearly intends to serve at least until the end of the President's term. And in any event, the White House confirmed that

it "plans to leave her—indefinitely—as acting secretary" after it became clear that the Senate would not confirm Su. Jennifer Haberkorn, *White House moves on from confirmation effort for Su as Labor secretary*, Politico (July 20, 2023).[5] That is an attempt to circumvent the Constitution's unwaivable advice-and-consent requirement. Su's renomination does not cure the defect. Otherwise, a president can bypass the Senate simply by repeatedly renominating the same unacceptable official. Because Su's indefinite service is thus not authorized by § 552, she cannot exercise the Secretary's powers.

Nor can she delegate those powers to Administrator Looman. *See* DOL Br. 31-32. DOL's reliance on *United States v. Smith*, 962 F.3d 755, 765-66 (4th Cir. 2020), and *United States v. Gomez*, No. 3:21-CR-0001, 2024 WL 1620392 (D.V.I. Apr. 15, 2024), is misplaced. In *Smith*, the alleged unlawful appointment of the Acting Attorney General had nothing to do with the prosecution of a suspect because the U.S. Attorney had independent statutory authority to act and there was no evidence that the Acting Attorney General "affected or influenced his criminal proceeding in any manner." 962 F.3d at 766. Similarly, in *Gomez*, a Department Head's "purportedly unlawful appointment had no effect" on Coast Guard officers' decision to interdict a vessel because they "act[ed] under authority expressly provided to the officers by statute," and the interdiction "did not require approval or review by the Secretary of DHS[.]" 2024 WL 1620392 at *4. By contrast, no statute authorizes Administrator Looman to independently promulgate the 2024 Rule, which Acting Secretary Su reviewed and approved. Administrator Looman could exercise power delegated by the Secretary only if Su could have delegated the Secretary's powers in the first place. Su could not exercise the Secretary's powers because she was serving indefinitely—as opposed to temporarily—as Acting Secretary. She therefore could not have lawfully delegated rulemaking powers she did not have.

---

[5] https://www.politico.com/news/2023/07/20/white-house-confirmation-su-labor-00107485.

## VII.  VACATUR IS THE PROPER REMEDY

DOL's assertion that the APA merely authorizes the court to "disregard" rather than vacate unlawful agency action is wrong. *See* DOL Br. 34. The APA provides that a "reviewing court shall … hold unlawful and set aside [unlawful] agency action, findings, and conclusions." 5 U.S.C. § 706(2)(A). "'Set aside' usually means 'vacate.'" *V.I. Tel. Corp. v. FCC*, 444 F.3d 666, 671 (D.C. Cir. 2006). In fact, when Congress adopted the APA, "set aside" meant "to cancel, annul, or revoke." *Set Aside*, Black's Law Dictionary 1612 (3d ed. 1933). Just five years after the APA's enactment, the Third Circuit explained that section 706(2) "affirmatively provides for vacation of agency action." *Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*, 187 F.2d 789, 790 (3d Cir. 1951). More recently, this Court correctly stated that the "APA's text indicates that vacatur is the mandatory remedy for arbitrary and capricious agency action." *N.M. Health Connections v. HHS*, 340 F. Supp. 3d 1112, 1175 (D.N.M. 2018).

There is no reason to depart from this mandatory remedy. DOL's request for remand under *Allied Signal* is improper because the recission of the 2021 Rule was based on a faulty legal premise. And DOL redefined economic reality factors in violation of the FLSA, as interpreted by courts. No amount of explanation would allow DOL to change the law to prohibit the 2021 Rule or unlawfully redefine factors. DOL's alternative request to limit relief to just Plaintiff is likewise meritless. Tellingly, none of DOL's citations are to APA cases. As Justice Kavanaugh recently explained, "equitable relief is ordinarily limited to the parties in a specific case. Therefore, nationwide injunctions would be permissible only if Congress authorized them. But in the APA, Congress did in fact depart from that baseline and authorize vacatur." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2467 (2024) (Kavanaugh, J., concurring). That means setting aside the 2024 Rule nationwide.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Summary Judgment, deny Defendants' cross-motion, and vacate the 2024 Rule.

Dated: September 20, 2024.

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By */s/ Eric R. Burris*
    Eric R. Burris
    Debashree Nandy
    201 Third Street NW, Suite 1800
    Albuquerque, New Mexico 87102-4386
    Telephone:  (505) 724-9563
    Facsimile:  (505) 244-9266
    Email:  eburris@bhfs.com; rnandy@bhfs.com

*/s/ Sheng Li*
Sheng Li (*pro hac vice*)
John J. Vecchione (*pro hac vice*)
NEW CIVIL LIBERTIES ALLIANCE
1225 19th St. NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Email: sheng.li@ncla.legal; john.vecchione@ncla.legal

*Attorneys for Plaintiff*

26

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 20, 2024, I electronically filed a true and correct copy of the foregoing **PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND REPLY MOTION FOR SUMMARY JUDGMENT** with the Court pursuant to CM/ECF procedure for the District of New Mexico, which will send notification of such filing and cause the parties to be served via electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Eric R. Burris
Eric R. Burris