## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| COLT & JOE TRUCKING LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR, et al.,<br><br>*Defendants*. | No. 1:24-cv-391-KWR-GBW<br><br>Judge Kea W. Riggs<br><br>Chief Magistrate Judge Gregory B. Wormuth |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

JOHN T. LEWIS (D.C. Bar No. 1033826)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... ii

Introduction ................................................................................................................... 1

Argument ........................................................................................................................ 2

I.     The Court should dismiss this case for lack of subject-matter jurisdiction. ...................... 2

II.    In the alternative, the Court should enter judgment for the Department. .......................... 8

      A.     The Department properly decided to align its interpretive guidance with federal court precedent interpreting the FLSA. .................................................................. 8

      B.     The 2024 Rule correctly interprets the economic-reality factors ......................... 14

      C.     The Department reasonably concluded that the 2024 Rule would ameliorate regulatory confusion. ....................................................................................... 17

      D.     The Department's cost-benefit analysis was reasonable. .................................... 19

      E.     Acting Secretary Su's appointment has no bearing on the 2024 Rule ................. 22

      F.     Plaintiff abandoned its remaining challenges. ..................................................... 24

III.   To the extent Plaintiff is entitled to any relief, the Court should either remand the matter to the Department without vacatur or enter a limited injunction. ..................................... 24

Conclusion ..................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Flint Eng'g & Const. Co.*,
  137 F.3d 1436 (10th Cir. 1998) ................................................................... *passim*

*Baystate Alt. Staffing, Inc. v. Herman*,
  163 F.3d 668 (1st Cir. 1998) ................................................................................. 15

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ............................................................................................... 20

*Citizen Ctr. v. Gessler*,
  770 F.3d 900 (10th Cir. 2014) ................................................................................ 7

*Coal. for Workforce Innovation v. Walsh* (*CWI*),
  Case No. 1:21-CV-130, 2022 WL 1073346 (5th Cir. Mar. 14, 2022) ..................... 21

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
  91 F.4th 342 (5th Cir.); *cert. pending*, Case No. 23-1323 (2024) ........................... 2

*Ctr. for Auto Safety v. Peck*,
  751 F.2d 1336 (D.C. Cir. 1985) .............................................................................. 22

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................. 6

*Encino Motorcars, LLC v. Navarro*,
  584 U.S. 79 (2018) .................................................................................................. 14

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ............................................................................................ 8, 18

*Goldberg v. Whitaker House Co-op., Inc.*,
  366 U.S. 28 (1961) ............................................................................................ 13, 15

*Harris v. Diamond Dolls of Nevada, LLC*,
  No. 3:19-cv-00598-RCJ-CBC, 2022 WL 4125474 (D. Nev. July 26, 2022) ........... 21

*Hinsdale v. City of Liberal*,
  19 F. App'x 749 (10th Cir. 2001) ........................................................................... 24

*Hoctor v. U.S. Dep't of Agric.*,
   82 F.3d 165 (7th Cir. 1996) .......................................................................... 22

*Hopkins v. Cornerstone America*,
   545 F.3d 338 (5th Cir. 2008) ........................................................................ 15

*Karlson v. Action Process Serv. & Priv. Investigations, LLC*,
   860 F.3d 1089 (8th Cir. 2017) ...................................................................... 19

*Kobach v. U.S. Election Assist. Comm'n*,
   772 F.3d 1183 (10th Cir. 2014) .......................................................... 9, 14, 18, 22

*Little Sisters of the Poor v. Pennsylvania*,
   591 U.S. 657 (2020) ....................................................................................... 8

*Louisiana v. EEOC*,
   705 F. Supp. 3d 643 (W.D. La. 2024) ............................................................. 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................... 2, 4

*N.M. Health Connections v. HHS*,
   340 F. Supp. 3d 1112 (D.N.M. 2018) ........................................................... 25

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
   417 F.3d 1272 (D.C. Cir. 2005) ...................................................................... 3

*Parrish v. Premier Directional Drilling, L.P.*
   917 F.3d 369 (5th Cir. 2019) ........................................................................ 16

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ....................................................................................... 20

*Sawyers v. Norton*,
   962 F.3d 1270 (10th Cir. 2020) .................................................................... 24

*Scantland v. Jeffry Knight, Inc.*,
   721 F.3d 1308 (11th Cir. 2013) .................................................................... 16

*Shultz v. Mistletoe Exp. Serv., Inc.*,
   434 F.2d 1267 (10th Cir. 1970) .................................................................... 16

*State Nat'l Bank of Big Spring v. Lew,*
  795 F.3d 48 (D.C. Cir. 2015) ................................................................ 4

*State Farm v. Ruiz,*
  36 F. Supp. 2d 1308 (D.N.M. 1999) ...................................................... 24

*Thibault v. Bellsouth Telecomm., Inc.,*
  612 F.3d 843 (5th Cir. 2010) ................................................................ 19

*U.S. Army Corps of Eng'rs v. Hawkes,*
  578 U.S. 590 (2016) ............................................................................... 5

*U.S. v. Silk,*
  331 U.S. 704 (1947) ..................................................................... 12, 13, 16

*United States v. Ross,*
  848 F.3d 1129 (D.C. Cir. 2017) ............................................................. 9

*United States v. Sup. Ct. of N.M.,*
  839 F.3d 888 (10th Cir. 2016) ............................................................ 3, 4

*Van Buren v. United States,*
  593 U.S. 374 (2021) ............................................................................. 11

*Verma v. 3001 Castor, Inc.,*
  937 F.3d 221 (3d Cir. 2019) ................................................................. 15

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
  435 U.S. 519 (1978) ............................................................................. 22

*West Virginia v. EPA,*
  597 U.S. 697 (2022) ............................................................................... 2

*White v. York Int'l Corp.,*
  45 F.3d 357 (10th Cir. 1995) ................................................................. 5

*WildEarth Guardians v. BLM,*
  870 F.3d 1222 (10th Cir. 2017) ........................................................... 25

**Statutes, Regulations, and Rules**

5 U.S.C.
  § 704 ....................................................................................................... 5
  § 3346 ................................................................................................... 24

App. 1 ................................................................................................................ 23

28 U.S.C. § 508 ................................................................................................. 23

29 U.S.C.
   § 203 ................................................................................................... 11, 14
   § 259 ........................................................................................................ 5
   § 552 ...................................................................................................... 23
   § 204 ...................................................................................................... 23
   § 209 ...................................................................................................... 23
   § 211 ...................................................................................................... 23
   § 259 ...................................................................................................... 23

42 U.S.C. § 902 ................................................................................................. 23

29 C.F.R.
   § 775.1 ................................................................................................... 20
   § 795.100 ............................................................................................... 20
   § 795.105(b) .......................................................................................... 14
   § 795.105(c) .......................................................................................... 10
   § 795.110(a)(2) ..................................................................................... 10
   § 795.110(b)(2) ............................................................................... 17, 19
   § 795.110(b)(4) ............................................................................... 14, 15
   § 795.110(b)(5) ..................................................................................... 16
   § 795.115 ............................................................................................... 25

79 Fed. Reg. 77527-01 (Dec. 24, 2014) ........................................................... 23

86 Fed. Reg. 1246 (Mar. 12, 2021) ................................................................... 10

89 Fed. Reg. 1638 (Jan. 10, 2024) ............................................................ *passim*

Fed. R. Civ. P. 56(e) ........................................................................................... 4

## INTRODUCTION

In this case, Plaintiff Colt & Joe Trucking LLC seeks to invalidate interpretive guidance issued by the Department of Labor that simply reiterates the test that courts have used to determine employee or independent contractor classification under the Fair Labor Standards Act for decades. *See* Defs.' Answering Br., ECF No. 29 ("DMSJ"). The Court should dismiss this case for lack of standing because Plaintiff fails to produce evidence demonstrating that it will be harmed by the 2024 Rule. But if the Court reaches the merits, it should uphold the 2024 Rule.

Unlike the 2021 Rule, the 2024 Rule provides for consideration of the individual economic-reality factors based on the facts and circumstances present in a given case, rather than categorically assigning greater weight to a subset of factors *ex ante*. Indeed, that is the very reason Plaintiff claims to prefer the 2021 Rule—that, under the 2021 Rule, Plaintiff purportedly did not even need to *consider* the other factors. *See, e.g.*, Pl.'s Combined Opp. & Reply 3, 23, ECF No. 46 ("P. Reply"). But the Tenth Circuit, like the Supreme Court and every other federal circuit court, has prescribed the same totality-of-the-circumstances approach as the 2024 Rule, and analyzed the individual factors in the same ways as the Department does in the 2024 Rule. *See, e.g.*, *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440-41 (10th Cir. 1998). Plaintiff complains that these cases are "confusing," P. Reply 2, 7, or dismisses their statements of the governing legal test as "dicta," *id.* at 17-19, but the Department can hardly be faulted for adopting the analysis that courts have laid out for decades. Plaintiff cannot show that any of the Department's interpretations were incorrect, let alone so deficient as to be arbitrary or capricious.

For these reasons, the Court should deny Plaintiff's motion for summary judgment and dismiss this case or, in the alternative, enter judgment for the Department.

## ARGUMENT

**I.    The Court should dismiss this case for lack of subject-matter jurisdiction.**

The Department's opening brief demonstrated that, by failing to present any concrete evidence that the 2024 Rule has harmed it in any way, Plaintiff has not carried its burden to establish Article III standing. *See* DMSJ 8-11. Indeed, another district court recently found that the plaintiffs in a parallel challenge to the 2024 Rule had failed to establish standing because their "alleged future injury stem[med] solely from their subjective concerns about the 2024 Rule's fact-intensive nature," and so was merely "hypothetical and conjectural." Order 17, 20, *Warren v. U.S. Dep't of Labor*, No. 2:24-cv-7 (N.D. Ga. Oct. 7, 2024), ECF No. 42. Because the Court lacks subject-matter jurisdiction, this case should be dismissed under Rule 12(b)(1). *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

Rather than cure that deficiency, Plaintiff doubles down, reiterating its theory that merely being the object of a regulation suffices to establish standing. *See* P. Reply 1, 3-4. Plaintiff omits that *Lujan* itself recognized that there is only "*ordinarily*"—not *always*, as Plaintiff suggests— "little question" that the object of a regulation has standing. *Lujan*, 504 U.S. at 560-61 (emphasis added). Notably, the Court in *Lujan* characterized the elements of standing as an "irreducible constitutional minimum," *id.*, and, since then, courts have reaffirmed that "merely being subject to … regulations, in the abstract, does not create injury." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 350 (5th Cir.), *cert. pending*, No. 23-1323 (2024). *West Virginia v. EPA* did not hold otherwise; there, the Court concluded that the state petitioners suffered harm from a requirement "that they more stringently regulate power plant emissions," 597 U.S. 697, 718-19 (2022), which the states argued would have "injure[d]" them by making their task "more

difficult and onerous," Reply Br., *West Virginia*, No. 20-1530, 2022 WL 542394, at *20 (U.S.

Feb. 17, 2022). The Court never suggested that those subject to a regulation automatically have

standing to challenge it, even in the absence of any showing of injury.

Plaintiff's other cases further undermine its automatic-standing theory, and in fact

demonstrate why Plaintiff lacks standing at all. *See* P. Reply 3, 5, 8. In *United States v. Sup. Ct.

of N.M.*, for example, the Tenth Circuit noted that federal prosecutors in New Mexico were

subject to the New Mexico Rules of Professional Conduct. 839 F.3d 888, 896 (10th Cir. 2016).

But that fact alone did not establish standing. As the Court explained, the United States also

provided "several factual statements demonstrating how [the challenged rule] has worked to the

detriment of federal prosecutors," which "illustrate[d] the United States' alleged injury with

adequate particularity." *Id.* at 900 (citing Decl. of Sasha Siemel, *United States v. Sup. Ct. of

N.M.*, No. 1:13-cv-407 (D.N.M. June 28, 2013); ECF No. 13-2 (fifteen-page declaration laying

out harms from challenged rule)). Similarly, the district court's preliminary-injunction decision

in *Louisiana v. EEOC* did not articulate an automatic-standing rule. 705 F. Supp. 3d 643, 652

(W.D. La. 2024). To the contrary, the court discussed the plaintiffs' showing of harm at length,

noting that they had "proffer[ed] declarations evidencing that changing State policies alone will

cost the States, at minimum, an estimated $500 and 120 employee hours in training costs, legal

expenses, administrative costs, and productivity losses." *Id.* (quotation omitted).[1] And in *State

Nat'l Bank of Big Spring v. Lew*, the D.C. Circuit premised its conclusion that the bank had

---

[1]    The idea that standing is "self-evident" also does not mean that standing is automatic.
Instead, it refers to a doctrine in the D.C. Circuit that a petitioner for review of a regulation need
not adduce evidence in their *opening brief* if their standing is "self-evident," not that a petitioner
need not show standing at all. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417
F.3d 1272, 1286 (D.C. Cir. 2005).

standing on specific compliance costs and activities, not simply on the fact that the bank was a regulated entity. 795 F.3d 48, 53 (D.C. Cir. 2015) (citing Decl. of Jim Purcell, *State Nat'l Bank of Big Spring v. Geithner*, 1:12-cv-1032 (D.D.C. Feb. 27, 2013), ECF No. 27-2).

It is that sort of concrete, particularized, fact-based showing of harm that is absent in this case. "In response to a summary judgment motion, … the plaintiff can no longer rest on … 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" that demonstrate injury-in-fact. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)); *see Sup. Ct. of N.M.*, 839 F.3d at 899. Here, Plaintiff relies almost exclusively on general assertions, unsupported by any accompanying record citations; for example, "the 2024 Rule increases Plaintiff's regulatory 'compliance costs,'" P. Reply 4, or "the 2024 Rule reduces regulatory clarity and thus increases burden," *id.* at 7. That is not enough: Plaintiff was required to demonstrate, with concrete facts, how *its* costs have gone up, or how *its* business has been impacted by any reduction in clarity.

Plaintiff does not even attempt to rehabilitate the sole factual material it submitted in conjunction with its motion—the declaration of its owner, Stanley Pettingil. As the Department's opening brief explained, *see* DMSJ 9, Mr. Pettingil does not provide any facts to connect any purported increase in uncertainty from the 2024 Rule to any specific, documented, or quantifiable costs in "time and resources" to his business. *See* Pettingil Decl. ¶ 10; *see also id.* ¶¶ 11-13. The "supplemental" declaration Plaintiff submitted with its reply brief does not do so either; to the contrary, the declaration confirms that Plaintiff *was* able to engage independent contractors prior to the 2021 Rule, and presumably should still be able to do so under the 2024 Rule. *See* Supp. Decl. of Stanley Pettingil ¶ 5, ECF No. 46-1 ("Supp. Pettingil Decl."). Indeed, the only reference to either declaration in Plaintiff's brief is for the general assertion that

"Plaintiff has taken reasonable precautions" in response to the 2024 Rule. P. Reply 8. But neither declaration provides specific facts to support that assertion, and "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

Plaintiff's specific grounds for standing fare no better. As an initial matter, the 2024 Rule did not eliminate any "safe harbor." *Contra* P. Reply 4. Employers may still avail themselves of a safe harbor by demonstrating that they acted "in good faith in conformity with and in reliance" on the 2021 Rule for actions they took during any period when the 2021 Rule was in effect. 29 U.S.C. § 259. To be sure, the Department changed its interpretation of the law, and therefore changed what actions may fall within the safe harbor going forward, but that alone—without some showing of resulting harm—is insufficient to establish Article III standing. Plaintiff cites *U.S. Army Corps of Eng'rs v. Hawkes*, but that case is inapposite; *Hawkes* held that the denial of a safe harbor constituted final agency action under 5 U.S.C. § 704 and did not address standing at all. 578 U.S. 590, 597 (2016).

Nor does Plaintiff provide any concrete factual averments to support its assertion that it faces increased compliance costs. *Contra* P. Reply 4-7. Even Plaintiff seems to admit that the 2024 Rule largely "restores the pre-2021 state of the law." *Id.* at 2. But if that is the case, then the 2024 Rule simply articulates the same legal standards under which Plaintiff was able to hire independent contractors for years. *See* DMSJ 10; Supp. Pettingil Decl. ¶ 5. The 2024 Rule also parallels the Tenth Circuit's own explanation of the economic-reality factors, *see Baker*, 137 F.3d at 1440, which Plaintiff, as a New Mexico business, must already apply when determining its workers' status under the FLSA. Plaintiff cannot possibly contend that it faced lower

compliance costs under the 2021 Rule, when it had to apply and consider two different sets of legal standards—the 2021 Rule *and* Tenth Circuit precedent. Plaintiff claims that the Court is required to credit its assertions that the 2024 Rule "improperly tilt[s] economic-reality factors," P. Reply 4-5, but Plaintiff still does not identify how the 2024 Rule's treatment of those factors increases its costs. Even if it had, that showing would only afford Plaintiff standing to challenge those portions of the 2024 Rule addressing those economic-reality factors, not the Rule as a whole. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

Plaintiff objects that the relevant inquiry is whether "the 2024 Rule imposes greater compliance costs" than the 2021 Rule, P. Reply 5, but the question remains: *what costs?* Businesses must always spend "time and resources" assessing whether their workers are "properly classified as independent contractors or employees," including reviewing their contracts and the terms of their work. Pettingil Decl. ¶ 10. Plaintiff claims that, under the 2021 Rule, "satisfying the[] two core factors created assurance that [its drivers] are properly classified" as independent contractors." P. Reply 5. Leaving aside that Plaintiff's assertions about the purported certainty of the 2021 Rule are in tension with their merits arguments about how the 2021 Rule permits the consideration of other factors, *see infra* Part II.A, Plaintiff still does not identify how its practices have changed in response to the 2024 Rule. To the extent Plaintiff "must now monitor at least four additional factors," P. Reply 6, it was already required to do so under the Tenth Circuit's decision in *Baker*, 137 F.3d at 1440—nothing has changed.

Plaintiff also misconstrues how several of the economic-reality factors might apply to truck drivers. *Contra* P. Reply 6-7. As the 2024 Rule explains, the skill factor may "indicate

independent contractor status for a worker who uses truck-driving skills in connection with business-like initiative." 89 Fed. Reg. at 1712. And under the investment factor, a worker who owns their truck may be "making similar types of investments as the carrier (even if on a smaller scale) so that the driver (like the carrier) can operate independently in the industry." *Id.* at 1685. Other factors, like integrality and permanence, and whether an employer has implemented safety requirements above the legal minimum, are just individual elements of the overall economic-reality inquiry that may be overcome by other factors in any given case. *See Baker*, 137 F.3d at 1441 ("None of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach."). To the extent control or opportunity for profit or loss depending on managerial skill favor independent-contractor classification, they may still do so. *See* 89 Fed. Reg. at 1740 (explaining that the Department did not believe the 2024 Rule would result in "widespread reclassification"). Plaintiff's brief also suggests that the 2024 Rule's treatment of the economic-reality factors may force Plaintiff to undertake various measures in response, like "grant[ing] its drivers more control or opportunity" or "monitor[ing]" its drivers. P. Reply 6. Tellingly, however, Plaintiff does not adduce any actual evidence demonstrating that it has in fact done any of these things in the five months since the 2024 Rule took effect, or that its arrangements with its drivers have changed in any way.

Plaintiff's assertions about how a purported lack of clarity has chilled its business activities encounter the same problems. *Id.* at 7-8. Plaintiff provides no basis to dispute *Clapper*'s core insight, which the Tenth Circuit has reiterated outside the national-security context: that "allegations of a subjective 'chill'" are insufficient to establish standing. *Citizen Ctr. v. Gessler*, 770 F.3d 900, 913 (10th Cir. 2014). But leaving that aside, Plaintiff does not

demonstrate that any lack of clarity under the 2024 Rule has affected its business at all. Plaintiff alludes to its unwillingness to hire a new driver, but the relevant portion of Mr. Pettingil's declaration—that Plaintiff "has not entered into a relationship with a new independent owner-operator[] *in part* due to regulatory uncertainty and burdens created by the 2024 Rule," Pettingil Decl. ¶ 11 (emphasis added)—only raises further questions about how much of a role the 2024 Rule actually played in the decision. Plaintiff's assertion that the 2024 Rule was intended to deter employers from retaining independent contractors, P. Reply 8, is wrong, *see* 89 Fed. Reg. at 1639, but it is also irrelevant: the missing piece of Plaintiff's argument is any concrete factual indication that the 2024 Rule has proximately deterred it from retaining a new driver.

In sum, because Plaintiff has failed to adduce any concrete facts that demonstrate it has Article III standing, this case should be dismissed for lack of subject-matter jurisdiction.

## II.    In the alternative, the Court should enter judgment for the Department.

### A.    The Department properly decided to align its interpretive guidance with federal court precedent interpreting the FLSA.

If the Court reaches the merits, it should uphold the 2024 Rule. *See* DMSJ 12-29. As the Department's opening brief explained, the Department concluded that the 2024 Rule is better "aligned with the Department's decades-long approach (prior to the 2021 [] Rule) as well as with federal appellate case law, and is more consistent with the Act's text and purpose as interpreted by the courts." 89 Fed. Reg. at 1640. In contrast, the Department concluded that "leaving the 2021 [] Rule in place would have a confusing and disruptive effect on workers and businesses alike due to its departure from decades of case law." *Id.* at 1647. Because the Department provided a "satisfactory explanation" for its decision, *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 682 (2020)—one well within the "zone of reasonableness," *FCC v. Prometheus*

*Radio Project*, 592 U.S. 414, 423 (2021, established by the APA's "very deferential" arbitrary-and-capricious standard, *Kobach v. U.S. Election Assist. Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014)—the 2024 Rule should be upheld.

To start, the Department did not base the 2024 Rule on a faulty legal premise. According to Plaintiff, the Department's decision to rescind the 2021 Rule and replace it with the 2024 Rule "was based on the faulty premise that [the 2021 Rule] violated the FLSA." P. Reply 9; *see id.* (asserting that the Department thought that it was compelled to rescind the 2021 Rule, and so "erroneously believe[d] it [was] bound to a specific decision") (quoting *United States v. Ross*, 848 F.3d 1129, 1134 (D.C. Cir. 2017)); *id.* at 11 ("DOL is wrong that the FLSA's definition of employment prohibits the 2021 Rule."). Contrary to Plaintiff's assertion, the Department did not conclude that the 2021 Rule was prohibited by the FLSA; instead, it concluded that the 2024 Rule was "*more* consistent with the Act's text and purpose as interpreted by the courts" than the 2021 Rule, and therefore less likely to lead to confusion and misclassification, in light of more than 80 years of precedent. 89 Fed. Reg. at 1640 (emphasis added); *see id.* at 1648 (explaining that the 2024 Rule offers a "better framework for understanding and applying the concept of economic dependence"). That is the premise that undergirds the 2024 Rule.

The Department's conclusion that the 2024 Rule was more consistent with the FLSA and judicial precedent was reasonable, and indeed, correct. Unlike the 2021 Rule, the 2024 Rule does not give predetermined and invariable weight to two "core" factors, control and opportunity for profit or loss, above all others. "Predetermined and invariable" weight is an apt characterization; under the 2021 Rule, the two core factors receive greater weight at the outset, without regard to the facts of any given case. *Contra* P. Reply 10. As described by the 2021 Rule, the two core

factors are "the most probative"; they "typically carr[y] greater weight in the analysis than any other factor"; "if they both point towards the same classification, … there is a substantial likelihood that is the individual's accurate classification"; and the other factors "are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 86 Fed. Reg. at 1246 (29 C.F.R. § 795.105(c)). Thus, as a categorical matter, the 2021 Rule gives greater weight to the two core factors, even if that greater weight could hypothetically be outweighed.

Moreover, the premise of Plaintiff's standing arguments is that the 2021 Rule practically read the other (non-"core") economic-reality factors out of existence. Specifically, Plaintiff asserts that "satisfying the[] two core factors created assurance that [its drivers] are properly classified," such that "Plaintiff did not need to closely monitor the remaining economic reality factors." P. Reply 5; *see also* P. Reply 1 (asserting that, under the 2024 Rule, "Plaintiff must monitor more factors"). It is precisely that misimpression—the idea that FLSA classification can be reduced to a two-factor "control-and-opportunity" test, PMSJ 1—that the Department sought to correct by promulgating the 2024 Rule. Rather than putting a thumb on the scale in favor of any particular factor, the 2024 Rule explains that "the weight to give each factor" depends on the "facts and circumstances of the particular relationship." 29 C.F.R. § 795.110(a)(2).

The Department also explained why it rejected the 2021 Rule's methodology of extrapolating "core" factors from cases that did not identify the factors as such. Among other problems, the cases the 2021 Rule relied upon "do not, themselves, elevate these two factors— rather, the 2021 [] Rule made assumptions about the reasoning behind the courts' decisions that are not clear from the decisions themselves and in some cases are contrary to the decisions'

instructions that the test should not be applied in a mechanical fashion." 89 Fed. Reg. at 1651. That explanation does not, as Plaintiff asserts, "restate[] the 2024 Rule's contention that the 2021 Rule's core-factor approach *violates* the FLSA," P. Reply 10 (emphasis added)—it demonstrates, rather, that the 2024 Rule is *more consistent* with precedent interpreting the FLSA because the 2024 Rule relies on how courts themselves framed the economic-reality factors rather than second-guessing what factors might actually have been determinative. Even if control and opportunity are often more probative, Plaintiff has not and cannot identify a single case that categorically elevates, on an *ex ante* basis, those factors over the other economic-reality factors.

Indeed, none of Plaintiff's arguments support the 2021 Rule's novel attempt to narrowly reinterpret the economic-reality inquiry, or call into question the foundation of the 2024 Rule.

***Text.*** As the Department's opening brief explained, the FLSA defines "employ" to "include[] to suffer or permit to work," 29 U.S.C. § 203(d), (e)(1), (g)—language that unmistakably demonstrates Congress's intent for the FLSA to apply broadly and inclusively. *See, e.g.*, 89 Fed. Reg. at 1667; DMSJ 13-14. To reiterate, the Department did not interpret that language as "*prohibit[ing]* the 2021 Rule," P. Reply 11 (emphasis added); it simply concluded that the 2024 Rule is *more consistent* with that expansive language.

Plaintiff again complains that "[t]he Act's definitions for 'employee' and 'employ' are circular" and "unhelpful," and so the Department should have instead applied what Plaintiff characterizes as the "ordinary meaning of those terms." P. Reply 11. That is incorrect: "[w]hen a statute includes an explicit definition of a term," courts and agencies "must follow that definition, even if it varies from a term's ordinary meaning." *Van Buren v. United States*, 593 U.S. 374, 387 (2021) (quotation omitted). As Plaintiff concedes, courts have repeatedly

emphasized that the FLSA's broad definition of employment sweeps beyond "traditional common law concepts." *E.g.*, *Baker*, 137 F.3d at 1440-44. Plaintiff puzzlingly claims that the Department did not respond to its textual arguments, when the Department explained both that a focus on "wages or salary" is contrary to the Supreme Court's explication of the economic-reality test, and that the common-law concept of control does *not* "guide[]," P. Reply 11, the scope of the FLSA's definition of employment. *See* DMSJ 16-17 & n.4. By declining to give some factors categorically greater weight than others, the 2024 Rule better reflects the FLSA's broad definition of employment.

**Precedent.**    The 2024 Rule is also more consistent with judicial precedent, which has long emphasized the need to consider the totality of the circumstances in determining whether a worker is an employee or an independent contractor rather than categorically assigning any specific factor greater weight. *See, e.g.*, *U.S. v. Silk*, 331 U.S. 704, 716 (1947); *Baker*, 137 F.3d at 1441. The crux of Plaintiff's response is that courts have occasionally focused on specific factors in conducting the economic-reality analysis. P. Reply 12. But that is unsurprising—certain factors in a multi-factor test will always be more probative than others in light of the facts of a specific case—and does not lead to the conclusion that those factors are categorically entitled to greater weight in all potential future cases. The Department properly focused on what courts have actually said rather than trying to reverse-engineer any unspoken rules that courts may or may not have been applying.

Plaintiff's attempt at exegesis also oversimplifies the relevant cases. *Silk* stated that "it is quite impossible to extract from the statute a rule of thumb"; explained that none of the economic-reality factors "is controlling nor is the list complete"; and emphasized that "[i]t is the

total situation" that matters. 331 U.S. at 716-19. And the Court considered factors besides control and opportunity for profit or loss in assessing the status of both the coal unloaders and the drivers. *See id.* (noting, among other things, that the unloaders and drivers "are from one standpoint an integral part of the businesses" (integral), and that the drivers invested in "own[ing] their own trucks" (investments), sometimes worked for "any customer" (permanence), and depended on "their own initiative [and] judgment" (skill)). Similarly, the Court in *Rutherford* focused not on "isolated factors but rather upon the circumstances of the whole activity," including that the boners performed a "specialty job" (skill), maintained consistent "boning contracts" and "no business organization that could or did shift as a unit from one slaughter-house to another" (permanence), and primarily used the employer's "premises and equipment" rather than their own tools (investments). 331 U.S. at 730. Plaintiff's description of *Goldberg* likewise omits other facets of the relationship at issue that the Court considered in deeming the workers to be employees, such as the fact that the workers "are required to remain members at least a year." *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 32 (1961).

Circuit court precedent also provides Plaintiff no help. Plaintiff does not dispute that every circuit, including the Tenth Circuit, *see Baker*, 137 F.3d at 1440-44, has adopted a multi-factor test substantively identical to the analysis set forth in the 2024 Rule. *See* 89 Fed. Reg. at 1642 nn.52-53. And Plaintiff cannot identify a single case which expressly adopts the 2021 Rule's approach of categorically giving a subset of factors greater weight. Plaintiff again notes that not every case extensively discusses every factor, *see* P. Reply 14-15, but again, it is unsurprising that courts would focus on the factor or factors deemed most probative on the facts before them—an approach that is wholly consistent with the 2024 Rule. *See* DMSJ 17.

***Purpose.*** Finally, Plaintiff is simply incorrect that the 2024 Rule principally "relied on the Act's purported remedial purpose." P. Reply 15. As the Rule itself and the Department's opening brief explained, the 2024 Rule relies on the "clear *textual* indication in the Act's definitions, by the inclusion of the 'suffer or permit' language, that broad coverage under the Act was intended." 89 Fed. Reg. at 1668 n.221 (emphasis added) (quoting 29 U.S.C. § 203(g)); 29 C.F.R. § 795.105(b); *see* DMSJ 17-18. To the extent the Department invoked the FLSA's purpose to buttress its reading of the FLSA's text and precedent, it referenced only that "purpose as interpreted by [the] courts." 89 Fed. Reg. at 1639, 1640, 1647, 1649, 1661, 1663, 1725, 1726, 1739. The 2024 Rule is therefore entirely consistent with the limited holding in *Encino Motorcars, LLC v. Navarro*—that exemptions to the FLSA should be given a "fair reading," 584 U.S. 79, 89 (2018)—because the 2024 Rule is premised on a "fair reading" of the statutory text.

**B.    The 2024 Rule correctly interprets the economic-reality factors.**

Plaintiff also fails to show that the 2024 Rule's interpretation of the control, integral, or investment factors is incorrect. (Plaintiff has abandoned any challenge to the 2024 Rule's interpretation of the permanence factor. *See infra* Part II.F.) Although Plaintiff asserts that the Department is entitled to no deference on these issues because they involve the interpretation of precedent, P. Reply 15, Plaintiff's arguments repeatedly shift into arbitrary-and-capricious analysis, *see id.* at 17-18, under which the standard of review is "very deferential" indeed. *Kobach*, 772 F.3d at 1197. Regardless, Plaintiff's arguments fail under any standard of review.

***Control.*** The Department correctly explained that the control factor "considers the potential employer's control, including reserved control, over the performance of the work and the economic aspects of the working relationship." 29 C.F.R. § 795.110(b)(4); *see also* 89 Fed.

14

Reg. at 1690-1707. Plaintiff now admits that "reserved control can be probative to some extent," but disputes whether such control is "*as* probative as the actual exercise of control." P. Reply 16. But the 2024 Rule never suggested that reserved control is *always* as probative as actual control. It is the 2021 Rule that "mechanically provided that actual practice is always more relevant than reserved control," and "[b]y removing that provision," the 2024 Rule "takes the position that all relevant aspects of the working relationship, including reserved rights, should be considered, without placing a thumb on that scale." 89 Fed. Reg. at 1721.

The 2024 Rule's explication of the control factor also follows precedent in considering a potential employer's control over the "economic aspects of the working relationship," including "control over prices or rates for services and the marketing of the services or products provided by the worker." 29 C.F.R. § 795.110(b)(4). *Contra* P. Reply 16. Among other cases, the 2024 Rule cites *Hopkins v. Cornerstone America*, which considered precisely those factors—noting that the employer's control over "advertising for new recruits" and "the type and price of insurance products" both supported employee classification. 545 F.3d 338, 343 (5th Cir. 2008); *see also* 89 Fed. Reg. at 1693 & nn.360-63 (citing *Goldberg*, 366 U.S. at 32; *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 230 (3d Cir. 2019)); *id.* at 1701 n.420 (collecting additional cases). To the extent Plaintiff objects to the specific phrasing "economic aspects of the working relationship," cases have used that terminology as well. *See, e.g.*, *Baystate Alt. Staffing, Inc. v. Herman,* 163 F.3d 668, 676 (1st Cir. 1998).

Finally, the 2024 Rule appropriately treats obligations imposed "by the potential employer that go beyond compliance" with legal requirements as one indicator of control. 29 C.F.R. § 795.110(b)(4). That does not mean that "going an inch beyond the minimum legal

requirement" would lead to employee classification, P. Reply 17; rather, it means only that such obligations "may in some—but not all—cases be relevant to the analysis of a potential employer's control if it is probative of a worker's economic dependence." 89 Fed. Reg. at 1694; *see also id.* at 1695 (emphasizing that "this is merely one aspect of one factor of a multifactor test"). In articulating its nuanced approach, the Department explicitly identified cases that support it, and grappled with practical concerns raised by commenters. *See* 89 Fed. Reg. at 1693-94 & n.370 (citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013); *Shultz v. Mistletoe Exp. Serv., Inc.*, 434 F.2d 1267, 1271 (10th Cir. 1970)). *Parrish v. Premier Directional Drilling, L.P.* is not to the contrary; in that case, the court noted that the company's "safety training and drug testing" regimen were "required for safe operations" and "consistent with the Occupational Safety and Health Act." 917 F.3d 369, 382 (5th Cir. 2019).

   ***Integral.***   By asking whether a worker is an "integral part" of the enterprise, i.e., "critical, necessary, or central to the potential employer's principal business," 29 C.F.R. § 795.110(b)(5), the 2024 Rule conforms to precedent, including *Silk*, 331 U.S. at 716, *Baker*, 137 F.3d at 1440, 1443, and the decisions of every other circuit that addresses integrality. 89 Fed. Reg. at 1707. Plaintiff's principal response—that all of these decisions are "dicta"—is untenable. P. Reply 17-18. *Silk*, which was decided with *Rutherford* and has been treated as a seminal precedent on classification, held that the coal unloaders at issue were employees in part because they were "an integral part of the business[] of retailing coal." 331 U.S. at 716. And *Baker* explicitly relied on the fact that the rig welders at issue were an "integral[] component of oil and gas pipeline construction work." 137 F.3d at 1443. Nor is the integral part factor "useless in determining employee status," P. Reply at 18, given that courts have readily been able to

distinguish between work that is integral to a company's business and work that is more

peripheral. 89 Fed. Reg. at 1707 & n.468 (describing the integral factor and citing to cases).

    ***Investment.***    The 2024 Rule also reasonably followed precedent in listing

"investments" and "opportunity for profit or loss" as separate factors. 29 C.F.R. § 795.110(b)(2).

The Department explicitly acknowledged that the two factors are interrelated in certain

circumstances, but nonetheless enumerated them separately, as nearly every court, including the

Tenth Circuit, has done. 89 Fed. Reg. at 1679. Plaintiff again complains that those decisions are

merely "dicta," P. Reply 18, but that is how these courts have framed the governing legal test

undergirding their decisions. Plaintiff's response to the 2024 Rule's decision to follow precedent

in comparing investments is more of the same: all "dicta." *Id.* at 19. But *Baker* explicitly relied

on a comparison of investments as part of the basis for its decision. 137 F.3d at 1441-42. The

2024 Rule's treatment of investments is also consistent with *Silk*'s reliance on comparatively

smaller investments as indicative of independent contractor status: as the 2024 Rule emphasizes,

"the focus should be on comparing the investments to determine whether the worker is making

similar *types* of investments as the potential employer (even if on a smaller scale) to suggest that

the worker is operating independently." 29 C.F.R. § 795.110(b)(2).

    **C.**    **The Department reasonably concluded that the 2024 Rule would ameliorate regulatory confusion.**

    The Department's opening brief also explained why returning to decades of precedent

would dispel the confusion engendered by the 2021 Rule. *See* DMSJ 22-25. Plaintiff does not

address several critical elements of the Department's rationale: that, to apply the 2021 Rule,

courts would have needed to discern what its utterly novel interpretation meant and whether to

apply it or their own precedent; that these questions could have taken years of litigation in

different circuits to sort out, forcing businesses to familiarize themselves and endeavor to apply multiple standards; and that, in fact, no court has applied the 2021 Rule's novel analysis, and several have rejected it. *Id.* at 23-24 (citing 89 Fed. Reg. at 1654-56 & nn.150-52). Plaintiff therefore faces a steep hill in showing that the Department's reasoning fell outside the "zone of reasonableness," *Prometheus*, 592 U.S. at 423, as Plaintiff must to prevail under the "very deferential" arbitrary-and-capricious standard, *Kobach*, 772 F.3d at 1197.

Plaintiff cannot show that any aspect of the 2024 Rule was unreasonable. Plaintiff begins by reiterating its mistaken belief that the 2021 Rule's decision to categorically confer greater weight on two factors was more consistent with the FLSA's text and precedent. *See* P. Reply 19-21. Yet Plaintiff then turns to *criticizing* that precedent on the grounds that it was purportedly inconsistent and led to confusion—noting that the 2021 Rule elected to deviate from certain cases because it found them "troubling." *Id.* at 20. Plaintiff is wrong on both fronts: it is the 2024 Rule that properly synthesizes—rather than discards as "troubling"—how decades of precedent have characterized the economic-reality analysis, thereby supplying clearer guidance to the public than the 2021 Rule's novel approach. *See* 89 Fed. Reg. at 1649-53.

Contrary to Plaintiff's assertions, the 2024 Rule fully addressed the "state of confusion" purportedly identified by the 2021 Rule. P. Reply 20. Specifically, the Department explained that the 2024 Rule's "discussion of how courts and the Department's previous guidance apply the factors brings the multifactor test into focus, reduces confusion as to the overlapping factors, and provides a more consistent basis for understanding how the test has the flexibility to be applied to changes in the modern economy." 89 Fed. Reg. at 1648. The Department therefore "no longer views the concerns articulated in the 2021 [] Rule as impediments to using the economic reality

test formulated by the courts and the Department's longstanding guidance." *Id.* Plaintiff may not like how the Department addressed these points, but that is a far cry from not addressing them at all—and Plaintiff's policy disagreement is not a basis for invalidating a federal agency rule.

Plaintiff's failure to identify any material inconsistencies between circuit cases confirms the Department's conclusion that precedent frames the economic-reality test in consistent terms (as reflected in the 2024 Rule). *Contra* P. Reply 21. *Karlson*, for example, held that the district court "did not abuse its discretion in deciding it would permit questions addressing the *nature* of the parties' relative investments but would not allow [the worker] to 'billboard large numbers' that would create the danger of unfair prejudice," 860 F.3d 1089, 1096 (8th Cir. 2017) (emphasis added)—an approach that is (contrary to Plaintiff's assertion) consistent with both *Hopkins* and the 2024 Rule's emphasis on type versus amount of investments. *See* 29 C.F.R. § 795.110(b)(2). Plaintiff also takes issue with how the Fifth Circuit in *Thibault* distinguished its earlier decision in *Cromwell*, but misrepresents what *Thibault* actually found: that the worker had a temporary, project-by-project relationship with the company and was generally "in business for himself." 612 F.3d 84, 848-49. To be sure, some variation is natural in a system of regional appellate circuits. But minor differences in how circuit courts have articulated the economic-reality factors do not refute the Department's conclusion that precedent is generally consistent across the circuits, nor do they show that synthesizing that precedent is more likely to lead to confusion than the 2021 Rule's decision to formulate a novel and unprecedented weighting system.

### D.    The Department's cost-benefit analysis was reasonable.

Finally, the Department's opening brief explained how it conducted a reasonable cost-benefit analysis of the 2024 Rule which, as an interpretive rule, does not by its own force impose

any new legal duties or compliance costs. *See* DMSJ 25-29. Plaintiff seems to concede that assessing the costs of the 2024 Rule turns on whether it is substantive or interpretive, as only substantive rules "create[] new rights or duties." P. Reply 22-23. After all, if the Department's website misstated the law, nobody would think that, by simply updating the website to correct the misimpression, the Department had thereby imposed new duties or costs on the public. Any such duties or costs would flow instead from the governing law: the FLSA.

The 2024 Rule is an interpretive rule. As opposed to "legislative rules," which carry the "force and effect of law," *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979), "the critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quotation omitted). As 29 C.F.R. § 795.100 (emphasis added) explains, Part 795—which contains the 2024 Rule—"contains the Department['s] … *general interpretations* for determining whether workers are employees or independent contractors." It continues: "[t]hese *interpretations* are intended to serve as a 'practical guide to employers and employees,'" and "[t]he Administrator … will use these *interpretations* to guide the performance of their duties under the Act." Part 795 is also contained within Subchapter B of the chapter relating to the Wage and Hour Division ("Statements of General Policy or Interpretation Not Directly Related to Regulations"), which explicitly states that "[a]dvisory interpretations announced by the Administrator serve only to indicate the construction of the law which will guide the Administrator," 29 C.F.R. § 775.1, rather than Subchapter A ("Regulations").

The 2024 Rule's preamble further evinces the Department's intent to promulgate not substantive rules but interpretive guidelines. The Department explained that the 2024 Rule would

"provide more consistent guidance" to employers and workers by drawing on decades of precedent interpreting the FLSA. *Id.* at 1734. That is the hallmark of an interpretive rule: rather than imposing new legal requirements separate from or in addition to the statute, the 2024 Rule simply "advise[s] the public of the agency's construction of" the FLSA. *Perez*, 575 U.S. at 97; *see also Harris v. Diamond Dolls of Nevada, LLC*, 2022 WL 4125474, at *2 (D. Nev. July 26, 2022) (noting that "DOL's regulations," including the "Independent Contractor Regulations," "are generally not binding but merely interpretative").

Plaintiff's argument that the 2024 Rule is legislative in nature is largely based upon a single district court decision, *CWI*, which addressed the 2021 Rule. P. Reply 22-23; *see* 2022 WL 1073346. But that decision—which was vacated by the court of appeals as moot, would not in any event have been controlling on this court, and did not even involve the 2024 Rule—should not be relied upon here. *Cf. Harris*, 2022 WL 4125474, at *2 (rejecting reliance on *CWI*).

The conclusions of the district court in *CWI* are also unpersuasive. Contrary to that court's conclusion, merely changing how the Department interprets the FLSA does not alter "existing individual rights and obligations." *Id.* at *6. Those rights and obligations remain set by the FLSA, not by the Department's interpretive guidelines which, like all interpretive rules, "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez*, 575 U.S. at 97. In other words, the interpretations espoused in the 2024 Rule (or the 2021 Rule) could never by their own force change rights and obligations, which would instead be determined by a court interpreting the FLSA in the context of a specific case.

The *CWI* court (and Plaintiff) also wrongly concluded that the Department's decision to solicit comment suggested that the Department thought notice and comment was required. 2022

WL 1073346, at *6. But "there is nothing in the Act to forbid an agency to use the notice and comment procedure in cases in which it is not required to do so." *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 171-72 (7th Cir. 1996); *see Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) (agencies are "free to grant additional procedural rights in the exercise of their discretion"). In promulgating the 2024 Rule (as well as the 2021 Rule and its withdrawal), the Department *chose* to solicit comment to obtain the public's views.

However the 2024 Rule is characterized, the Department also considered the issues that Plaintiff asserts it should have. *See* P. Reply 22-23. The Department reasonably concluded that the interpretive guidance in the 2024 Rule would not induce "widespread reclassification," and that "most workers who were properly classified as independent contractors before the 2021 [] Rule will continue to retain their status as independent contractors." 89 Fed. Reg. at 1740. Plaintiff fails to identify any evidence in the record to dispute these conclusions, and to the extent Plaintiff asserts that it must itself "consult additional factors" or reclassify its workers as employees, Plaintiff has still failed to adduce evidence demonstrating that it has actually done so. *See infra* Part I. Plaintiff's *ipse dixit* provides no basis for setting aside cost-benefit analyses "most appropriately entrusted to the expertise of an agency." *Ctr. for Auto Safety v. Peck*, 751 F.2d 1336, 1342 (D.C. Cir. 1985) (cleaned up); *see Kobach*, 772 F.3d at 1197. The 2024 Rule's cost-benefit analyses therefore comply with both the Administrative Procedure Act (and the Regulatory Flexibility Act, to the extent such a claim has been preserved, *see infra* Part II.F).

## E.    Acting Secretary Su's appointment has no bearing on the 2024 Rule.

Plaintiff's challenge to Acting Secretary Su's appointment fares no better. *See* DMSJ 30-33. *Contra* P. Reply 23-24. First, Administrator Looman, rather than Acting Secretary Su,

promulgated the 2024 Rule. Plaintiff has no cogent response to the Department's showing that the 2024 Rule rests on Administrator Looman's own authority to administer and enforce the FLSA, which includes the authority to issue interpretive rules. *See* DMSJ 31 (citing 29 U.S.C. §§ 204, 209, 211, 259).[2] Acting Secretary Su herself has not delegated, and did not need to delegate, any authority to Administrator Looman. Plaintiff also suggests that the 2024 Rule is invalid because "Acting Secretary Su reviewed and approved" it, P. Reply 24, but provides no support for that theory nor any cases that recognize it. Acting Secretary Su's appointment is therefore irrelevant to the lawfulness of the 2024 Rule.

Regardless, Acting Secretary Su's service is lawful. Plaintiff's challenge is based on nothing more than speculation that the President intends for Acting Secretary Su to serve indefinitely—speculation that does not amount to a legal violation. As the Senate-confirmed Deputy Secretary, Acting Secretary Su lawfully serves under 29 U.S.C. § 552, which, Plaintiff concedes, authorizes her to "perform the duties of the Secretary until a successor is appointed." *See also* DMSJ 32-33 (collecting cases upholding Acting Secretary Su's appointment). Plaintiff asserts that the length of Acting Secretary Su's service "far exceeds" what is permissible, P. Reply 23, but numerous statutes authorize acting service without articulating a specific time restriction. *See*, *e.g.*, 28 U.S.C. § 508; 42 U.S.C. § 902(b)(4). And even if the time limits of the Federal Vacancies Reform Act were applicable, Acting Secretary Su's service would not "far

---

[2] The Reorganization Plan of 1950 generally transferred authority existing within the Department to the Secretary, *see* Reorg. Plan No. 6 of 1950, § 1, 64 Stat. 1263 (codified at 5 U.S.C. App. 1), and the Secretary has delegated authority back to the Wage and Hour Division Administrator, as seen, for example, in the most recent Secretary's Order from 2014, Sec'y's Order 01-2014, § 5(A)(1), 79 Fed. Reg. 77527-01 (Dec. 24, 2014). The lawfulness of Acting Secretary Su's appointment does not and could not have any bearing on the validity of a delegation of authority to the Administrator that predates her service by years.

exceed[]" them; the Act allows for a second nomination to toll its time restrictions, *see* 5 U.S.C. § 3346(b)(2), and Acting Secretary Su's second nomination was, and still is, pending. Thus, Acting Secretary Su would have had the authority to promulgate the 2024 Rule, had she actually done so.

**F.    Plaintiff abandoned its remaining challenges.**

Finally, in its consolidated opposition to the Department's dispositive motion and reply in support of its own, Plaintiff failed to renew its due process and Regulatory Flexibility Act claims, *see* PMSJ 25-31, as well as its argument that the Department incorrectly interpreted the "permanence" factor, *see id.* at 22-23, and has thereby abandoned these contentions. *See, e.g.*, *Hinsdale v. City of Liberal*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming judgment on claim that plaintiff "abandoned … by failing to address it in his response to defendants' motion for summary judgment"); *State Farm v. Ruiz*, 36 F. Supp. 2d 1308, 1312 (D.N.M. 1999) (explaining that "fail[ure] to pursue [an] argument" in response to a summary-judgment motion means that "the argument has been abandoned").[3] These claims also fail on the merits. *See* DMSJ 21-22, 25-30. Judgment should therefore be entered for the Department on all claims.

**III.   To the extent Plaintiff is entitled to any relief, the Court should either remand the matter to the Department without vacatur or enter a limited injunction.**

The Court should either dismiss this case or enter judgment for the Department. But if the Court disagrees, it should not take the extraordinary step of vacating the entire 2024 Rule nationwide. *See* DMSJ 34-35. Even assuming that vacatur is authorized by the APA, it is not

---

[3]   Plaintiff's single throwaway reference to the Regulatory Flexibility Act in its brief, *see* P. Reply 23, is insufficient, because the waiver rule "applies equally to arguments" presented "only in a perfunctory manner." *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020).

"mandatory," and Judge Browning's decision in *N.M. Health Connections v. HHS* did not hold otherwise; as he recognized, the Tenth Circuit treats "vacatur [as] a form of injunctive relief" governed by equitable principles. 340 F. Supp. 3d 1112, 1175-76 (D.N.M. 2018) (quoting *WildEarth Guardians v. BLM*, 870 F.3d 1222, 1239 (10th Cir. 2017)). *Contra* P. Reply 25.

Those principles compel either remand without vacatur or an injunction limited to the parties in this case and to any portions of the 2024 Rule that the Court concludes are unlawful. Even if Plaintiff is right that the 2024 Rule relies on a "faulty legal premise," *id.*, in that the Department erroneously believed that it was "bound" to a specific decision, *id.* at 9 (quotation omitted), the proper remedy would be to remand to the Department to allow it to exercise its policy discretion without relying on that premise. And the manner in which the Department purportedly "redefined economic reality factors," *id.* at 25, would not provide a basis for invalidating anything other than the 2024 Rule's treatment of those specific factors, given the Rule's severability provisions. *See* 29 C.F.R. § 795.115; 89 Fed. Reg. at 1724-25. Finally, Plaintiff's back-of-the-hand dismissal of the equitable concerns with nationwide vacatur, *see id.*, conflicts with the Tenth Circuit's binding instruction that vacatur is a "form of injunctive relief" governed by equitable considerations rather than a wholly separate remedy. *See WildEarth Guardians*, 870 F.3d at 1239. The Court should not spark nationwide confusion by wholesale invalidation of a rule that simply conforms the Department's interpretation of the FLSA to how courts have interpreted the FLSA for decades.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for summary judgment and dismiss this case or, in the alternative, enter judgment for the Department.

Dated: October 10, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ John T. Lewis*
JOHN T. LEWIS (D.C. Bar No. 1033826)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2024, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ John T. Lewis*
John T. Lewis